**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **Willie M. Williams,** | |
| Petitioner, | |
| - *against* - | 12 Civ. 8164 (KMK) (LMS) |
| **Supt. Thomas LeVally,** | **REPORT AND** |
| Respondent. | **RECOMMENDATION** |

**TO: THE HONORABLE KENNETH M. KARAS, U.S.D.J.[1]**

      In fall 2012, Petitioner Willie Williams, proceeding pro se, filed a petition, pursuant to 28 U.S.C. § 2254, for a writ of habeas corpus (hereinafter "the Petition") in which he challenges the constitutionality of his 2004 New York state court conviction of one count of attempted murder in the second degree (New York Penal Law (hereinafter "Penal Law") §§ 110.00, 125.25), one count of reckless endangerment in the first degree (Penal Law § 120.25), two counts of criminal contempt in the first degree (Penal Law § 215.51), two counts of assault in the second degree (Penal Law § 120.05), one count of attempted assault in the second degree (Penal Law §§ 110.00, 125.05), one count of unlawful imprisonment in the first degree (Penal Law § 135.10), and one count of aggravated criminal contempt (Penal Law § 215.52).  The State opposes the Petition.  Docket Entry #11.  By affidavit dated May 21, 2013, Petitioner moves for either summary judgment on certain claims which the State did not address in its opposition to the Petition, or to amend the Petition to include over twenty new claims.  Docket Entries #28, 29.  For the following reasons, I conclude, and respectfully recommend that Your Honor should

---

    [1] This matter has been referred to me pursuant to 28 U.S.C. § 636 for habeas corpus purposes.  Docket Entry #7, Order Referring Case to Magistrate Judge.

conclude, that (1) Petitioner's motion for summary judgment should be denied, and (2) Petitioner's motion to amend the Petition should be granted in part and denied in part.

## I.   Background

### A.   The Crime

Petitioner and Jasmine Gilleo were engaged in a romantic relationship when, on August 16, 2002, Jasmine gave birth to Petitioner's daughter, Mionna.  The two ended the romantic aspect of their relationship in February, 2003, after Petitioner physically abused Jasmine. Although Jasmine did not press criminal charges over the incident, she obtained an order of protection against Petitioner.

Jasmine lived with her mother, Virginia Gilleo, her brother, and Mionna in an apartment complex in Peekskill, New York.  On Saturday, June 21, 2003, Jasmine returned home from an errand to find Petitioner's car parked outside of her apartment building.  Petitioner lured Jasmine into the car and drove her to a deserted lot near the Hudson River.  When Petitioner stopped the vehicle, Jasmine tried to escape, but Petitioner bit her face, threw her in the back seat of the car, and attempted to strangle her.  Petitioner eventually ceased the attack, but told Jasmine that he had dug a grave for her, and drove her to a cemetery in Ossining.  At the cemetery, Petitioner directed Jasmine to get out of the car.  As Jasmine collected her belongings, she brandished a pocketknife to protect herself, but Petitioner wrested it from her grasp.  Jasmine then fled the car, and Petitioner chased her, grabbed her by the hair, dragged her back to the car, and kicked her in the face.  Suddenly, Petitioner ceased the attack, gave Jasmine the knife, and instructed her to kill him.  Jasmine refused, and Petitioner took her home.

When Petitioner and Jasmine arrived at the apartment, Virginia stated that Petitioner needed to leave the apartment, leading to an argument between the three.  Petitioner picked up

Mionna, and then he pulled out a knife. Dangling Mionna out of the window of the seventh-floor apartment, Petitioner stated that if Jasmine did not leave with him, he would drop the baby out of the window. Virginia called the police and then watched as Petitioner threw the baby out of the window. Petitioner then pushed Jasmine and Virginia out of his way and fled the apartment. Outside, Petitioner found Mionna alive in a pile of mulch; her fall had been broken by tree branches. Petitioner took the child to a hospital, where he was arrested.

### B.        Pre-Trial Proceedings and the Trial

The following day, Petitioner was arraigned on a felony complaint in Peekskill City Court (Maher, J.), and the court assigned J.P. Kiely of the Legal Aid Society to represent Petitioner. At the proceeding, Petitioner informed the Court that he desired a preliminary hearing on the complaint pursuant to New York Crim. Proc. L. (hereinafter "C.P.L.") § 180.80.[2] Docket Entry #2, Exh. B, Trans. at 3. In pertinent part, C.P.L. § 180.80 provides:

> Upon application of a defendant against whom a felony complaint has been filed with a local criminal court, and who, since the time of his arrest or subsequent thereto, has been held in custody pending disposition of such felony complaint, and who has been confined in such custody for a period of more than one hundred twenty hours or, in the event that a Saturday, Sunday or legal holiday occurs during such custody, one hundred forty-four hours, without either a disposition of the felony complaint or commencement of a hearing thereon, the local criminal court must release him on his own recognizance unless:

> 1. The failure to dispose of the felony complaint or to commence a hearing thereon during such period of confinement was due to the defendant's request, action or condition, or occurred with his consent; or

> 2. Prior to the application:

>> (a) The district attorney files with the court a written certification that an

---

[2] Petitioner and the Peekskill City Court judge refer to the preliminary hearing as a "felony hearing." See Docket Entry #2, Exh. B., Trans. at 3. For purposes of C.P.L. § 180.80, such terms of interchangeable.

indictment has been voted; or

>    (b) An indictment or a direction to file a prosecutor's information charging an offense based upon conduct alleged in the felony complaint was filed by a grand jury . . .

Kiely stated, however, that he did not endorse Petitioner's request for such a hearing, and, therefore, it was made pro se. Docket Entry #2, Exh. B, Trans. at 3-4. Petitioner concurred that he made the request pro se. Id. at 4. When the city court judge reminded Petitioner that, unless and until the Legal Aid Society was removed from his case, he was represented by counsel, Petitioner responded: "I would like him removed from my case" because "he is not doing what I ask him to do." Id. at 7-13. After a conference at sidebar, the city court judge relieved the Legal Aid Society as counsel, rendering Petitioner pro se, and scheduled a preliminary hearing for June 30, 2003, at 2:00 PM. Id. at 5-6. Petitioner asked for a legal advisor, and the city court judge stated that Petitioner would be appointed a legal advisor after one was found from the panel of pro bono attorneys. Id. Some time after this initial proceeding, but before the June 30, 2003, court appearance, Kevin Griffin was appointed as Petitioner's legal advisor.

On June 24, 2003, the State served Griffin with notice of its intent to present evidence of Petitioner's crimes to a grand jury on June 27, 2003, and of Petitioner's right to testify before that grand jury. Docket Entry #11, Exh. 1, Grand Jury Notice. Petitioner served no notice of his intent to testify before the grand jury, and, following the presentment, the grand jury indicted Petitioner for crimes relating to the events of June 21, 2003, as well as burglary and related crimes occurring on June 19, 2003.

On June 30, 2003, Petitioner appeared in Peekskill City Court (Maher, J.) for the preliminary hearing, but, prior to commencement of the hearing, the State filed a Certificate of Indictment with the court. See Docket Entry #2, Exh. C, Trans. at 5-6. On July 18, 2003,

4

Petitioner was arraigned on the indictment.  Upon Petitioner's request, Griffin was duly appointed to represent him.  Petitioner later retained counsel, Bruce Bendish and Peter Goodrich, to represent him at trial.  The matter thereafter went to trial in County Court, Westchester County (Lange, J.), and, at its conclusion, the jury convicted Petitioner of one count of attempted murder in the second degree, one count of reckless endangerment in the first degree, two counts of criminal contempt in the first degree, two counts of assault in the second degree, one count of attempted assault in the second degree, one count of unlawful imprisonment in the first degree, and one count of aggravated criminal contempt.  The contempt convictions stemmed from Petitioner's actions in violation of the order of protection.

On June 25, 2004, the trial court sentenced Petitioner as a second felony offender to the following terms: (1) a determinate term of twenty-five years in prison and five years postrelease supervision on the count of attempted murder in the second degree, (2) an indeterminate term of three-and-one-half to seven years in prison on the count of reckless endangerment in the first degree, (3) an indeterminate prison term of two to four years on one count of criminal contempt in the first degree, (4) a determinate term of seven years in prison and five years postrelease supervision for one count of assault in the second degree, (5) an indeterminate prison term of two to four years on the count of unlawful imprisonment in the first degree, (6) a determinate term of seven years in prison and five years postrelease supervision for the second count of assault in the second degree, (7) an indeterminate term of two to four years in prison on the count of attempted assault in the second degree, (8) an indeterminate prison term of three-and-one-half to seven years on the count of aggravated criminal contempt, and (9) an indeterminate term of two to four years in prison on the second count of criminal contempt in the first degree. The sentences for counts (1) through (4) were to run concurrently to one another, as were the

sentences for counts (5) through (9); the sentences for counts (5) through (9) were to run

consecutive to those for counts (1) through (4), resulting in an aggregate total prison term of

thirty-two years.  See June 25, 2004, Trans. at 29-33.

### C.    Post-Trial State Court Proceedings

Petitioner filed a timely notice of appeal.  However, prior to perfecting his appeal,

Petitioner filed two motions to vacate the judgment of conviction pursuant to C.P.L. § 440.10,

which were denied on July 1, 2005, and November 22, 2005, respectively.  Docket Entry #11,

Exhs. 3, 5, 6.   The State affirms that Petitioner submitted a third motion to vacate during the

pendency of his appeal which is not relevant to the instant Petition.  Docket Entry #10, 17 n 15.

Petitioner perfected his direct appeal from the judgment of conviction on August 29,

2008.  Docket Entry #11, Exh. 7.  Therein, he claimed that (1) there was not legally sufficient

evidence in the record to support the conviction for attempted murder in the second degree

because there was no evidence to show that he intended to cause Mionna's death, or that such

conviction was against the weight of the evidence, see id. at 21-30; (2) there was not legally

sufficient evidence in the record to support the conviction for reckless endangerment in the first

degree or that such conviction was against the weight of the evidence, see id. at 30-35; (3) the

trial court improperly amended the indictment when it instructed the jury that the attempted

murder charge related to Petitioner's act of throwing his child out of a window, whereas the

reckless endangerment charge related to Petitioner's act of dangling his child out of a window,

see id. at 35-41; and (4) the trial court erred in admitting a 9-1-1 tape recording related to the

incident because it was not properly authenticated.  See id. at 42-47.  On June 2, 2009, the

Second Department of the New York State Supreme Court, Appellate Division, affirmed the

judgment of conviction.  People v. Williams, 63 AD3d 762 (2d Dept. 2009).  Petitioner

thereafter moved for leave to appeal from the order of affirmance, and, on October 29, 2009, the New York State Court of Appeals denied such motion. People v. Williams, 13 NY3d 840 (2009).

On April 27, 2010, Petitioner filed a petition for a state writ of habeas corpus. Docket Entry #2, Petition at 15-16. On July 21, 2010, Supreme Court, Clinton County (Richards, J.), dismissed the petition, stating that Petitioner's bases for relief either had or could have been previously raised on direct appeal or in a motion to vacate the judgment of conviction. Docket Entry #2, Attach., July 21, 2010 Order. Although the Court does not have a copy of the state habeas petition, the order of dismissal indicates that Petitioner challenged his detention on the grounds that (1) the indictment was defective because it was not signed by the grand jury foreperson or prosecutor; (2) his appellate counsel was ineffective for failing to challenge on appeal the validity of the indictment; and (3) at Petitioner's initial appearance, the trial court improperly excluded Petitioner from a bench conference although he had been granted leave to appear pro se. Id.

### 1.      Petitioner's First Application for a Writ of Error Coram Nobis

On November 4, 2010, Petitioner filed an application for a writ of error coram nobis. Docket Entry #11, Exh. 14. In such application, Petitioner asserted that he had received ineffective assistance of appellate counsel because his appellate attorney failed to argue on appeal that (1) Petitioner's trial counsel was ineffective for not challenging the city court judge's failure to conduct a preliminary hearing, id. at 10; (2) Petitioner's trial counsel was ineffective for not moving to dismiss the indictment on the ground that Petitioner did not receive proper notice of the grand jury proceedings, id.; (3) Petitioner's trial counsel was ineffective for not moving to dismiss the indictment on the ground that the indictment had not been signed by the

7

grand jury foreperson or the prosecutor; (4) the trial court improperly failed to advise Petitioner of his right, as stated in People v. Antommarchi, 80 NY2d 247 (1992), to be present during side-bar conferences with venirepersons concerning their qualifications to serve on the jury; (5) at the arraignment on the felony complaint, the city court judge deprived Petitioner of his right to counsel because the judge failed to ensure that Petitioner knowingly and intelligently waived such right prior to letting him proceed pro se; (6) Petitioner was deprived of the effective assistance of counsel when his trial counsel, Bendish, went on vacation during jury deliberations, and substitute counsel failed to ensure that certain testimony was read back to the jury; (7) the trial court judge improperly permitted jurors to ask questions of witnesses at trial; (8) the trial court judge deprived Petitioner of his right to present a defense by excluding evidence that a relative of Jasmine and Virginia had thrown a baby from the window of the same apartment building approximately a decade before the events in question, id. at 38; (9) the trial court judge failed to protect Petitioner's right to the effective assistance of counsel when Bendish was allowed to go on vacation during jury deliberations; and (10) the trial court judge improperly instructed the jury on the charge of attempted murder.  Id. at 41-42.

The State opposed the application.  Docket Entry #11, Exh. 15.  Thereafter, Petitioner submitted a "Supplemental Affidavit and Supplemental Memorandum of Law," in which he further claimed that his appellate attorney acted ineffectively when he failed to argue on appeal that (11) Petitioner's right to counsel was denied at his initial appearance in Peekskill City Court when the Legal Aid Society was removed and a replacement attorney was not immediately secured; (12) the Peekskill City Court judge failed to sufficiently warn Petitioner of the dangers of proceeding pro se; (13) Petitioner's court-appointed attorney, Griffin, provided ineffective assistance of counsel when he failed to move to dismiss the contempt charges relating to

Petitioner's violation of the order of protection; (14) Petitioner's retained trial counsel, Bendish, failed to provide him with effective legal assistance because he did not correct prior counsel's various errors in a variety of ways;[3] (15) the trial court judge improperly admitted the tape recording and transcript of two 9-1-1 calls because the technician who spliced the two calls together did not testify at trial, and because the introduction of the transcript violated the best evidence rule; (16) the trial court judge improperly sentenced Petitioner to a longer sentence after trial than the judge had offered to him (and he had rejected) as part of a plea bargain prior to trial, and the imposition of such longer sentence was an act of retaliation against Petitioner because he proceeded to trial. See Docket Entry #11, Exh. 16. In addition, Petitioner argued that his retained appellate counsel failed to provide him with effective legal assistance because counsel refused to file a motion to vacate the judgment of conviction unless Petitioner paid him a fee in addition to what Petitioner was paying for counsel to handle the direct appeal. See id. at 26-29.

On April 19, 2011, the Second Department of the New York State Supreme Court, Appellate Division, succinctly denied the application, holding that Petitioner had "failed to establish that he was denied the effective assistance of appellate counsel." People v. Williams, 83 AD3d 971, 971 (2d Dept. 2011). Petitioner thereafter moved at the New York State Court of

_____

[3] Petitioner alleges that Bendish failed to render effective legal assistance by failing to (a) impeach Virginia with apparent inconsistencies between her statements to a social worker and her trial testimony, (b) move to exclude certain 9-1-1 tapes on the grounds that they usurped the jury's fact-finding function and violated the best evidence rule, (c) obtain Jasmine's cell phone records, which Petitioner claims would have rebutted some of her testimony; (d) move to reduce the charges at sentencing on the ground that the trial court judge had failed to read back certain testimony requested by the jury; and (e) move to reduce the charges at sentencing on the basis that Petitioner's prior drug abuse may have contributed to his violent acts. See Docket Entry #11, Exh. 16 at 12-22.

Appeals for leave to appeal from the Appellate Division's denial of his application, but the court denied such motion.  People v. Williams, 17 NY3d 823 (2011).

### 2.    Petitioner's Second Application for a Writ of Error <u>Coram</u> <u>Nobis</u>

On December 19, 2011, Petitioner submitted a second application for a writ of error <u>coram</u> <u>nobis</u>.  Docket Entry #11, Exh. 20.  Therein, Petitioner claimed that he had received ineffective assistance of appellate counsel in four ways.

First, Petitioner argued that his appellate attorney failed to challenge various aspects of his initial arraignment.  Docket Entry #11, Exh. 20 at 21.  Petitioner argued that counsel should have contended that Petitioner was deprived of his right to counsel at the June 23, 2003, initial appearance when Petitioner's disagreement with the court-assigned counsel "forced" him to proceed <u>pro</u> <u>se</u> until after the filing of the Certificate of Indictment.  <u>Id.</u>

Second, Petitioner alleged that he received ineffective assistance of appellate counsel when his attorney failed to argue that trial counsel was ineffective because he did not move to dismiss the indictment on the basis that the State effectively failed to provide Petitioner with notice of the grand jury proceedings, as required by C.P.L. § 190.50(5)(a).  See <u>id.</u> at 29.  Petitioner essentially argues that the city court judge deprived him of the right to counsel at the arraignment on the felony complaint, and, therefore, the notice thereafter served on Petitioner's legal advisor, while Petitioner was <u>pro</u> <u>se</u>, was insufficient.  Petitioner raised this claim in both his first and second <u>coram</u> <u>nobis</u> applications.

Third, Petitioner averred that his appellate counsel failed to provide him with effective legal assistance because counsel did not argue that Petitioner's right to a fair trial was violated when the trial court judge purportedly failed to answer several of the jury's questions during deliberations.  See <u>id.</u> at 32.  On the afternoon of Friday, April 23, 2004, during its deliberations,

the jury submitted a note to the trial court judge, requesting a read-back of the testimony of Jasmine and Virginia that concerned Virginia's location in the apartment at the time that Petitioner threw Mionna out of the window. Id. at 33.  On the consent of both counsel, the trial court judge suspended jury deliberations until the following Monday to allow the court reporter time to find the testimony in question. Id.  The following Monday, April 26, 2004, the jury made an additional request for the court to read back the testimony of Jasmine and Virginia concerning whether Petitioner was holding a knife as he dangled Mionna out of the window. Id. at 34.  In response to this latter request, the trial court informed the jury that there was no such testimony. Id.  According to Petitioner, the trial court erred when it did not immediately read back the testimony concerning Virginia's position before suspending jury deliberations for the weekend. Id. at 35.  Petitioner claimed, further, that the trial court acted improperly failed to respond to either of the read-back requests by the jury on the following Monday. Id. at 36.

Fourth, Petitioner argued that his appellate counsel should have challenged the sufficiency or the weight of the evidence supporting the conviction for assault in the second degree related to injuries that Petitioner inflicted on Jasmine at the cemetery. Id. at 41-47. Petitioner claimed that the evidence adduced at trial was insufficient to show that he had caused physical injury to Jasmine at the cemetery because the "physical injury" supporting this charge, Petitioner's biting of Jasmine's face, occurred at a different location, and, even if it had occurred at the cemetery, it did not constitute a "physical injury."

On May 30, 2012, the Second Department of the New York State Supreme Court, Appellate Division, denied the application, utilizing the same summary language it employed in rejecting the first application. People v. Williams, 95 AD3d 1362, 1363 (2d Dept. 2012).  On September 28, 2012, the New York State Court of Appeals denied Petitioner's motion for leave

11

to appeal from the Appellate Division's denial of his application.  People v. Williams, 19 NY3d 1029 (2012).

### D.    Federal Post-Conviction Proceedings

On October 7, 2012, following the denial of Petitioner's motion for leave to appeal to the New York State Court of Appeals, he filed the instant Petition.[4]  The Petition sets forth the same four claims of ineffective assistance of appellate counsel contained in his second application for a writ of error coram nobis.  In addition to incorporating by reference his second coram nobis application, Petitioner details his claims and their supporting facts in a seven-page attachment to the Petition.  See Docket Entry #2, Attach.  Also attached to the Petition are copies of the second application for a writ of error coram nobis, as well as the Appellate Division order denying such application.  As exhibits to the Petition, Petitioner includes, among other things, various

---

[4] Petitioner filed a previous federal habeas petition challenging the same state-court judgment of conviction in July, 2012.  Williams v. Smith, 12 Civ. 5983 (LAP).  Therein, he raised the same four grounds of ineffective assistance of appellate counsel that he set forth in his second coram nobis application.  Chief Judge Preska, however, denied that petition without prejudice as "prematurely filed," noting that Petitioner's motion for leave to appeal from the New York State Supreme Court, Appellate Division's rejection of his second coram nobis application was still pending at the New York State Court of Appeals.  12 Civ. 5983, Docket Entry #5, Order of Dismissal at 3.  Chief Judge Preska informed Petitioner that he could file his habeas petition after he had exhausted his state court remedies.  Id.  Petitioner thereafter filed this Petition.

Some confusion surrounds the precise date on which Petitioner submitted the instant Petition for mailing.  In the Petition, Petitioner includes a signature page, apparently from the petition he had submitted in July, 2012, stating that he had given his petition to the prison authorities for mailing on July 5, 2012.  Docket Entry #2, Petition at 15.  However, he also includes a "Certificate of Service," stating that he gave Petition to prison authorities for mailing on October 19, 2012.  Docket Entry #2, Attach. 1 at 84.  The Petition itself was postmarked November 1, 2012, and was received by the Clerk's Office on November 7, 2012.  Although the State does not allege that the Petition was untimely filed, it does imply that Petitioner included the July 5, 2012, signature page to deliberately mislead the Court.  Giving Petitioner the benefit of the doubt, the fact that he included an October 19, 2012, signature page as well, however, suggests that the inclusion of the July 5, 2012, page was merely an oversight, and not evidence of any abusive tactics.

transcripts from the underlying criminal proceedings, his brief and reply brief to support his direct appeal to the Appellate Division of the New York State Supreme Court, the Appellate Division's Decision and Order affirming Petitioner's judgment of conviction, the Order of the New York State Court of Appeals denying his motion for leave to appeal from the Appellate Division Order affirming the judgment of conviction, and the State's papers in opposition to his second application for a writ of error coram nobis.

The State thereafter filed its opposition to the Petition. Docket Entries #10-11. In an affidavit dated May 21, 2013, Docket Entry #30, Petitioner claims that, in addition to the claims first raised in his second application for a writ of error coram nobis, his Petition in fact included the four claims that he raised on direct appeal, even though he made no mention of such claims in that portion of his submission listing his grounds for habeas relief. He asserts that he raised such claims simply by including the brief from his direct appeal in the hundreds of pages of attachments and exhibits that accompany the Petition. Petitioner also argues that his Petition somehow incorporated the additional claims contained in his first application for a writ of error coram nobis, even though Petitioner did not include a copy of that application with his Petition and only referred to those claims in the procedural history section of the Petition.

The State, in its opposition to the Petition, only answered the four claims of ineffective assistance of appellate counsel specifically listed by Petitioner as grounds for habeas relief. Now, however, Petitioner argues that the State's failure to oppose the claims made in his appellate brief and in his first coram nobis application should lead this Court to grant him summary judgment on those claims. In the alternative, Petitioner requests he be granted leave to amend his Petition to incorporate those claims. He includes an "Amended Application for Habeas Relief" setting forth such claims. Docket Entry #29. The State opposes the motion.

13

Docket Entry #32, Letter in Opp.

## II.  Discussion

### A.  Standard of Review

"Habeas review is an extraordinary remedy." <u>Bousley v. United States</u>, 523 U.S. 614,

621 (1998) (citing <u>Reed v. Farley</u>, 512 U.S. 339, 354 (1994)).  To be granted a writ of habeas

corpus from a federal district court, a petitioner must fully and carefully comply with the

provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA"),

28 U.S.C. § 2254.  Under AEDPA, all state remedies must be exhausted before a federal court

may consider a state prisoner's petition for a writ of habeas corpus.  28 U.S.C. § 2254(b)(1)(A);

<u>see also</u> <u>Picard v. Connor</u>, 404 U.S. 270, 275 (1971).  In the interests of comity and expeditious

federal review, "'[s]tates should have the first opportunity to address and correct alleged

violations of [a] state prisoner's federal rights." <u>See</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 731

(1991); <u>see also</u> <u>Daye v. Attorney General of the State of New York</u>, 696 F.2d 186, 190-91 (2d

Cir. 1982).  The exhaustion requirement of AEDPA is set forth in 28 U.S.C. § 2254:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> > (A) the applicant has exhausted the remedies available in the courts of the
> > State; or
> >
> > (B)(i) there is an absence of available State corrective process; or
> >
> > > (ii) circumstances exist that render such process ineffective to protect
> > > the rights of the applicant . . .
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the
> courts of the State, within the meaning of this section, if he has the right under the
> law of the State to raise, by any available procedure, the question presented.

The Second Circuit has adopted a two-stage inquiry to determine whether a habeas

petitioner has sufficiently exhausted a claim. See Klein v. Harris, 667 F.2d 274, 282 (2d Cir. 1981). First, the petitioner must have "fairly presented" his or her federal constitutional claim to the appropriate state courts. Picard, 404 U.S. at 275-76. "A claim has been 'fairly presented' if the state courts are apprised of 'both the factual and the legal premises of the claim [the petitioner] asserts in federal court.' " Jones v. Vacco, 126 F.3d 408, 413 (2d Cir. 1997) (quoting Daye, 696 F.2d at 191). In other words, the claim must have been presented in a way that is "likely to alert the court to [its] federal nature." Daye, 696 F.2d at 192. The fair presentation requirement is satisfied if the state court brief contains phrases, such as "under the Due Process Clause" or "under the Constitution," that point to the petitioner's reliance on the United States Constitution as his or her legal basis for relief. Klein, 667 F.2d at 282 (internal citations omitted). A claim may be considered "presented" even if the federal grounds were not explicitly asserted before the state courts if the petitioner, in asserting his or her claim before the state court, did one of the following: (1) relied on pertinent federal cases that employ constitutional analysis, (2) relied on pertinent state cases that apply constitutional analysis in similar factual situations, (3) asserted his or her claim in terms so particular as to call to mind specific constitutionally-protected rights; or (4) alleged a fact pattern that falls within the mainstream of constitutional litigation. See Daye, 696 F.2d at 186; Irving v. Reid, 624 F. Supp. 787, 789 (S.D.N.Y. 1985). Second, having fairly presented his or her federal constitutional claim to the appropriate state court and having been denied relief, the petitioner must appeal his or her conviction to the highest state court. See Klein, 667 F.2d at 282.

A petitioner who fails to raise a claim on direct appeal may however satisfy the exhaustion requirement by utilizing available state methods to raise that claim through a collateral attack on his or her state conviction. See id.; see also Johnson v. Metz, 609 F.2d 1052,

15

1055-56 (2d Cir. 1979) (instructing habeas petitioner who did not fairly present claim in the course of his direct appeals in New York state courts to proceed by filing a motion to vacate judgment pursuant to C.P.L. § 440.10).  If collateral relief is denied, the petitioner may satisfy the exhaustion requirement by employing the state appellate procedures available for review of such denial.  Klein, 667 F.2d at 282-83.

Generally, a state prisoner has one year from the date that his or her conviction becomes final to file a federal habeas petition.  28 U.S.C. § 2244(d)(1).  This limitations period ordinarily begins to run on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A). However, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  28 U.S.C. § 2244(d)(2).  The limitations period may also be equitably tolled if a petitioner can show that "extraordinary circumstances prevented him [or her] from filing his [or her] petition on time."  Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000).

After a petitioner has met the threshold requirements, a federal district court generally may hear "an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court" only if such custody was the result of a "violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  When a state court has decided a claim on its merits, the federal court must apply AEDPA's deferential standard of review.  See Torres v. Berbary, 340 F.3d 63, 67-68 (2d Cir. 2003).  Under AEDPA,

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant
> to the judgment of a State court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings unless the adjudication of

16

the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if [it] arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). An "unreasonable application" of Supreme Court precedent is one that "identifies the correct governing legal principle from the [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. While "it is clear that the question is whether the state court's application of clearly established federal law was objectively unreasonable, the precise method for distinguishing objectively unreasonable decisions from merely erroneous ones is less clear." Torres, 340 F.3d at 68-69 (internal quotation marks and citations omitted); see Williams, 529 U.S. at 409. "[A]n unreasonable application of federal law is different from an incorrect application of federal law." Id., at 410. Therefore, to establish the objective unreasonableness of a holding, a petitioner "must identify some increment of incorrectness beyond error." Torres, 340 F.3d at 68-69 (internal quotation marks and citations omitted). When evaluating whether a decision is "based on an unreasonable determination of the facts in light of the evidence," 28 U.S.C. § 2254(d)(1), the factual findings of state courts are presumed to be correct. Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997). The petitioner must rebut this presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**B.    Petitioner's Motion for Summary Judgment**

Petitioner's motion for summary judgment should be denied. Petitioner failed to provide

17

the State or the Court with notice that he sought to raise any claims besides the four allegations of ineffective assistance of appellate counsel specifically labeled as grounds for habeas relief in his Petition.

A natural reading of the entirety of the Petition suggests that Petitioner included his appellate brief as an exhibit solely as background material, just as he did with copies of various transcripts and state court decisions, and that Petitioner listed the claims in his first coram nobis application solely in response to the prompt for a procedural history contained in the standard habeas petition provided to pro se prisoners. Although I am mindful of my obligation to construe pro se submissions liberally, the Petition provides no indication whatsoever that Petitioner intended to raise in the Petition any claims aside from the four claims of ineffective assistance of appellate counsel raised in his second coram nobis application.

Petitioner characterizes his Petition as being "put together 'on the fly,' by attaching a copy of my appellate counsel's brief and my coram nobis application to the to the [instant] habeas application with specific notations in the 'grounds' raised section of my habeas application to incorporate them." Docket Entry #30, Affid. at 2. Petitioner's argument that he meant to include those additional claims but did so ineptly is belied by the fact that he was able to clearly incorporate the claims raised in his second coram nobis application by reference, and that he restated such arguments and their supporting facts in a detailed attachment, which appears to have been prepared specifically to support the Petition. Petitioner listed only four claims in the Petition, and he specifically noted that he had raised them in the state courts through the second application for a writ of error coram nobis. An examination of the Petition reveals that Petitioner's assertion that he made "specific notations in the 'grounds' raised section of my habeas application to incorporate," id., the claims from his appellate brief or first application for

18

a writ of error <u>coram</u> <u>nobis</u> to be false.  Thus, as Petitioner never asserted in the Petition the claims upon which he now seeks "summary judgment," his motion for such relief is inappropriate.  I therefore conclude, and respectfully recommend that Your Honor should conclude, that Petitioner's motion for summary judgment on those claims not expressly labeled as grounds for habeas relief in the Petition should be denied.

### C.   Petitioner's Motion to Amend the Petition

### 1.   The Standard for a Motion to Amend

A motion to amend a habeas corpus petition is governed by the Federal Rules of Civil Procedure.  <u>Littlejohn v. Artuz</u>, 271 F.3d 360, 363 (2d Cir. 2001).  Fed.R.Civ.P. 15(a) provides that leave to amend should be "freely give[n] when justice so requires."  Fed.R.Civ.P. 15(a).  "The purpose of Rule 15 . . . 'is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities."  <u>Fama v. Comm'r of Corr. Servs.</u>, 235 F.3d 804, 815 (2d Cir. 2000) (internal quotation marks and citation omitted).  However, leave to amend may be denied where amendment is "futile."  <u>Jones v. New York State Div. of Military and Naval Affairs</u>, 166 F.3d 45, 50 (2d Cir. 1999).  An amendment is futile if the proposed amended claims would not withstand a motion to dismiss for failure to state a claim upon which relief could be granted.  <u>Lucente v. International Business Machines Corp.</u>, 310 F.3d 243, 258 (2d Cir. 2002); <u>Dougherty v. Town of North Hempstead Bd. of Zoning Appeals</u>, 282 F.3d 83, 87-88 (2d Cir. 2002); <u>Littlejohn</u>, 271 F.3d at 363.

In addition, if a habeas petitioner seeks to amend his or her petition after the expiration of AEDPA's one-year statute of limitations, he or she must establish that the claim to be added "relates back" to one or more of the claims in the original petition, or the claim is time-barred.  <u>Fama</u>, 235 F.3d at 816.  Fed. R. Civ. P. 15(c)(1) states, insofar as is relevant, that "[a]n

19

amendment to a pleading relates back to the date of the original pleading when . . . (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." The Supreme Court has explained that, in the habeas context, a new claim does not arise out of the same "conduct, transaction, or occurrence" as a claim in the original petition simply because it stems from the same trial, conviction, or sentence challenged by the original petition. Mayle v. Felix, 545 U.S. 644, 664 (2005). To relate back to the original, timely petition, the new claim and the original petition must be "tied to a common core of operative facts." Id. If the claim "asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth," it does not relate back to a claim in the petition. Id. at 650. "In determining whether the claim arises out of the same conduct or occurrence, the pertinent inquiry is whether the original complaint gave the defendant fair notice of the newly alleged claims." Fama, 235 F.3d at 815 (internal quotation marks, brackets, ellipses, and citation omitted).

### 2.    Petitioner's Proposed Amended Petition

Petitioner seeks to amend his Petition to include, among other things, claims that he originally raised on direct appeal and in his first application for a writ of error coram nobis. His motion, however, comes more than one year after the expiration of AEDPA's one-year statute of limitations. Petitioner's conviction became final on January 27, 2010, ninety days after the New York State Court of Appeals denied his motion for leave to appeal from the Appellate Division's October 29, 2009, affirmance of his conviction. See Pratt v. Greiner, 306 F.3d 1190, 1195 n 1 (2d Cir. 2002) ("A conviction becomes final for purposes of 28 U.S.C. § 2244(d) upon expiration of the ninety-day period to petition for a writ of certiorari to the United States Supreme Court."). Therefore, unless the limitations period was tolled, Petitioner's habeas petition would have been

20

due by January 27, 2011.

The limitations period ran for 90 days, from January 27, 2010, to April 27, 2010, which is when Petitioner filed his state habeas corpus application. The limitations period was then tolled from April 27 until August 20, 2010, while Petitioner's state habeas corpus application was pending.[5] The limitations period ran for another 76 days, until November 4, 2010, when Petitioner filed his first application for a writ of error coram nobis. The limitations period tolled from November 4, 2010, to August 11, 2011, while the coram nobis application was pending. The limitations period then ran for 129 days, until December 19, 2011, which is when Petitioner filed his second coram nobis application. The period was tolled from December 20, 2011, to September 28, 2012, while the application was pending. The limitations period began to run again on September 29, 2012, and it would have expired in December, 2012, but Petitioner timely filed the Petition before the expiration of the statute of limitations, on October 19, 2012.[6] The May 21, 2013, motion to amend the Petition now before the Court comes long after AEDPA's one-year statute of limitations had expired. Further, Petitioner has shown no "extraordinary circumstances," Smith, 208 F.3d 17, to excuse the delay. Therefore, to be timely, the proposed new claims must relate back to those in the Petition, pursuant to Fed. R. Civ. P. 15(c).

Petitioner seeks to amend the Petition to include approximately two dozen new claims.

---

[5] Supreme Court, Clinton County (Richards, J.), denied Petitioner's application for a state writ of habeas corpus and dismissed the petition on July 21, 2010. His time to file a notice of appeal from such order expired thirty days thereafter, on August 20, 2010. See New York Civil Practice Law and Rules § 5513(a). The Court will include Petitioner's time to appeal the order in the tolling period.

[6] Adding the various tolling periods together leads to a limitation date of December 8, 2012.

21

The State, recognizing that the motion comes after the expiration of AEDPA's statute of limitations, argues that the claims labeled Points 1-4 do not relate back to the claims in the Petition and, therefore, are untimely. The State asks the Court to deny the motion insofar as Petitioner seeks to amend the Petition to include what Petitioner has labeled in his motion as Points 5-8, 11, and 12 on the basis that his attempt to include such claims would be unfair and prejudicial to the State. Docket Entry #32, Letter in Opp. at 3. For the reasons state below, I conclude, and respectfully recommend that Your Honor should conclude, that the motion to amend the Petition should be granted in part and denied in part.

### a.    Proposed Amended Claims 1-4 Do Not Relate Back to the Petition

The first four claims Petitioner seeks to add are those that he previously raised on direct appeal, which challenged the sufficiency and weight of the evidence in support of his convictions for attempted murder and reckless endangerment, portions of the trial court's jury instructions, and the admission of a 9-1-1 tape into evidence. Docket Entry #11, Exh. 7. The claims in the Petition allege ineffective assistance of appellate counsel for failure to raise unrelated claims on appeal.[7] The claims raised in Petitioner's appellate brief (proposed claims 1-4) are therefore markedly different in "time and type" from those in the Petition, and they do not arise out of a common core of operative facts. Mayle, 545 U.S. at 650, 664. Therefore, they do not relate back to the Petition and, thus, are time-barred. Because such claims are untimely, their inclusion in the Petition would be futile. Therefore, I conclude, and respectfully recommend that Your Honor should conclude, that insofar as Petitioners's motion seeks to amend the Petition to

---

[7] The claim in the Petition that is the nearest to those in Points 1-4 is that the contention that Petitioner's conviction for assault in the second degree was not supported by sufficient evidence in the record.

include Points 1-4, the motion should be denied.

     **b.**      **Proposed Amended Claim 5 Lacks Merit**

In what he labels Point 5, Petitioner seeks to amend the Petition to include claims that his appellate counsel was ineffective for failing to argue that (1) Petitioner had received ineffective assistance of counsel at his June 23, 2003, arraignment on the felony complaint, Docket Entry #29 at 34-35, and (2), the Peekskill City Court judge deprived Petitioner of his Sixth Amendment right to counsel at the preliminary hearing. Id. at 35-41. These proposed claims of constitutional violations were fairly presented to New York state courts in Petitioner's first application for a writ of error coram nobis and, upon its denial, 83 AD3d at 971, properly brought to the New York State Court of Appeals. 17 NY3d 823 (2011). Both courts appear to have denied such claims on the merits. Therefore, Petitioner has properly exhausted the claims.[8] Further, the proposed claims appear to relate back to the first claim in the Petition, which also concerns failures of court-appointed counsel and the Peekskill City Court judge at the arraignment on the felony complaint. Therefore, the claims are timely. However, as set forth below, the claims lack merit, and, consequently, any amendment of the Petition to include them therein would be futile. Accordingly, I conclude, and respectfully recommend that Your Honor should conclude, that, insofar as Petitioner seeks to amend his Petition to include such claims, the motion should be denied.

Petitioner seeks to amend his Petition in Point 5 to include an assertion that his appellate counsel was ineffective when he did not argue that Petitioner's court-appointed counsel at the

---

     [8] Petitioner did not have to seek Supreme Court review of the adverse state court decisions in order to have fully exhausted his claims. See Lawrence v. Florida, 549 U.S. 327, 333 (2007) (citing Fay v. Noia, 372 U.S. 391, 435-38 (1963)).

initial arraignment was ineffective because he "refused to participate" in Petitioner's defense at

the June 23, 2003, appearance.  The Sixth Amendment guarantees a criminal defendant "the

Assistance of Counsel for his [or her] defence."  U.S. Const. amend VI.  The Supreme Court has

concluded that, when a state authorizes appeals of criminal convictions, it must provide indigent

defendants with the effective assistance of counsel for any first appeal as of right.  McMann v.

Richardson, 397 U.S. 759, 771 n 14 (1970); Douglas v. California, 372 U.S. 353, 358 (1963).

"[T]he critical legal inquiry compares the arguments ignored by Appellate Counsel with the

arguments that were raised and focuses on whether the appellate lawyer's representation fell

below the objective standard of reasonableness and whether there is a reasonable probability that

the outcome would have been different but for that lawyer's error."  Grady v. Artuz, 931 F.Supp.

1048, 1060 (S.D.N.Y. 1996).

Petitioner's claim that he did not receive effective legal assistance at the arraignment on

the felony complaint is without merit.  Petitioner's assertion that counsel refused to participate in

his defense at the arraignment on the felony complaint appears to relate to counsel's refusal to

request a preliminary hearing.  At Petitioner's June 23, 2003, arraignment in Peekskill City

Court, Petitioner requested that the court schedule a preliminary hearing in the matter, which the

court scheduled for June 30, 2003.  Docket Entry #2, Exh. B, Trans. at 3.  As noted above,

Petitioner's court-appointed counsel made clear that he did not agree with Petitioner's request,

and, therefore, it was made pro se.  See id. at 4.  The court asked if Petitioner wished to have the

Legal Aid Society removed and proceed pro se with the request.  See id.  Petitioner responded

that he would like to discharge the Legal Aid Society, adding that "[i]f I don't have a lawyer on

[the hearing] date, I would like to proceed with my felony hearing pro se."  Id.  Petitioner asked

the court to appoint him a legal advisor if he was to proceed pro se at the hearing, and the court

agreed to appoint such an advisor in time for the hearing.  See id. at 5.

Counsel's refusal to request a preliminary hearing had no substantive impact on the arraignment or on Petitioner's rights.  Under C.P.L. § 180.80, a criminal defendant held on a felony complaint must receive a preliminary hearing or be indicted prior to the expiration of the 144-hour period, or he or she may demand release.  It is not the criminal defendant's duty to request such a hearing, only to demand release if C.P.L. § 180.80 is not otherwise satisfied. Therefore, counsel's refusal to request a preliminary hearing in no way waived Petitioner's entitlement to such at the relevant time.  Thus, counsel's actions had no effect on Petitioner's rights, and there is no reasonable probability that any argument on appeal to the contrary would not have been successful.

Petitioner also seeks to amend his Petition to include an argument that his appellate counsel failed to provide him with effective legal assistance when he did not argue on appeal that, at the arraignment on the felony complaint, the Peekskill City Court judge failed to ensure that Petitioner knowingly and intelligently waived his right to counsel before allowing him to proceed pro se.  Specifically, he claims that appellate counsel should have argued that the city court judge did not sufficiently warn Petitioner of the perils of proceeding pro se.  Petitioner asserts that such failure resulted in a deprivation of his Sixth Amendment right to counsel at a critical step of the matter, the preliminary hearing.

The preliminary hearing was scheduled for 2:00 P.M. on June 30, 2003.  At 11:00 A.M., Petitioner was produced in Peekskill City Court (Maher, J.), and the judge stated:

> Mr. Williams, I had your brought out now because I had a conference with Mr.
> Griffin, your advisor . . .  I had an application from [the media] for cameras to be
> permitted to video tape the proceeding which was scheduled for this afternoon,
> relative to your case.  The case is scheduled for a 2 p.m. felony hearing.  Mr. Griffin
> ha[s] advised me you have no objection to the cameras video taping the proceeding

25

at 2 o'clock; is that correct?

Docket Entry #2, Exh. C, Trans. at 3.  Petitioner responded, "Sir, yes, Sir."  Id.

When Petitioner's case was called at 2:00 PM, the State handed up to the judge a Certificate of Indictment, which indicated that Petitioner had been indicted on June 27, 2003. See id. at 5.  Petitioner claims that the preliminary hearing actually commenced when he first appeared before the court at 11:00 A.M.  He argues that, because the hearing commenced prior to the filing of a Certificate of Indictment, it should have been fully carried out.  Petitioner argues that, had he been represented by effective counsel at such time, counsel would have made such argument, ensuring that Petitioner received the hearing.

Petitioner's argument completely misconstrues the facts.  At the prior arraignment on the felony complaint, the city court judge scheduled the preliminary hearing for 2:00 P.M. on July 30.  Docket Entry #2, Exh. B, Trans. at 5-6.  Petitioner was produced before the court at 11:00 A.M. merely to inquire as to his position on the presence of cameras in the courtroom.  Thus, the State's filing of a Certificate of Indictment at the beginning of the 2:00 P.M. appearance came prior to commencement of the preliminary hearing.  The grand jury had indicted Petitioner three days prior to the scheduled hearing, and, thus, the State would likely have filed the Certificate of Indictment in the morning session if that was when the hearing had actually commenced. Regardless of whether Petitioner had been represented by counsel at the June 30, 2003, court appearance, the State's filing of a Certificate of Indictment prior to the commencement of the preliminary hearing rendered the hearing moot.  Therefore, Petitioner was not deprived of the right to counsel at a preliminary hearing, and there no reasonable probability that an appellate argument to the contrary would have resulted in a different outcome.

In sum, amendment of the Petition to include such claims would be futile.  Accordingly, I

26

conclude, and respectfully recommend that Your Honor should conclude, that insofar as
Petitioner moves to amend the Petition to include the claims set forth in Point 5, the motion
should be denied.

### c.       Proposed Amended Claims 6-7 Relate Back Only in Part

In what he labels Points 6 and 7 of the Amended Application, Petitioner essentially seeks
to amend the Petition to include the claims that he originally set forth in his first application for a
writ of error coram nobis.  See Docket Entry #29 at 42-53.  Petitioner properly exhausted such
claims in state court when he raised them in his that coram nobis application,  83 AD3d 971, the
denial of which he appealed to New York's highest court, 17 NY3d 823, and it appears that both
state court decisions addressed the merits of the claims.  Further, Petitioner fairly presented the
claims in constitutional terms to the state courts because the applications contended that
Petitioner was deprived of the effective assistance of appellate counsel, a right which is
commonly understood to derive from the Sixth and Fourteenth Amendments.  Several of the
arguments set forth in Points 6 and 7 relate back to claims in the Petition and are therefore
timely, while the remainder of the arguments do not relate back, and should not be permitted in
the Petition.

### i.       Claims in Point 6 that Relate Back to the Petition

The following claims set forth in Point 6, which Petitioner seeks to amend the Petition to
include, relate back to claims in the Petition: (1) Petitioner's appellate counsel was ineffective
because he did not argue that Petitioner was denied the right to counsel when his court-appointed
attorney refused at the initial arraignment to ask for a preliminary hearing, forcing Petitioner to
proceed pro se during the grand jury proceedings, Docket Entry #29 at 42-43; (2) Petitioner's
appellate counsel failed to provide effective legal assistance when he did not argue that

27

Petitioner's second court-appointed counsel, Griffin, acted ineffectively because he did not move to dismiss the indictment for insufficient notice of grand jury proceedings, id. at 43, and lack of original signatures on the indictment, id. at 44; and (3) Petitioner's appellate counsel was ineffective for failing to claim that his retained trial counsel, Bendish, failed to render effective legal assistance when he went on vacation during the jury's deliberations, and substituted counsel failed to ensure that the trial court provided read-backs requested by the jury. Id. at 48, 51-52.

The first two claims that Petitioner wishes to include relate back to those claims in the Petition that allege that Petitioner received ineffective legal assistance on appeal because his appellate counsel failed to raise arguments (1) challenging various aspects of the arraignment on the felony complaint and (2) that the State did not give Petitioner proper notice of the grand jury proceedings. Because these proposed claims that Petitioner seeks to include through amendment and the aforementioned claims in the Petition both concern the actions of the City Court judge, court-appointed counsel, and the State at the arraignment and the grand jury proceedings, the new claims and the original petition are "tied to a common core of operative facts." Mayle, 545 U.S. at 664. Petitioner's proposed claim concerning his retained counsel going on vacation during jury proceedings echoes a claim in the Petition, and, therefore, the State had fair notice of such argument. See Fama, 235 F.3d at 815. As a result, it also relates back to the same claim in the Petition. Because the Court will have to address the aforementioned claims in the Petition, it would be easiest to address these three proposed claims in the context of the full Petition. Therefore, I conclude, and respectfully recommend that Your Honor should conclude, that insofar as Petitioner moves to amend the Petition to include these three claims, which are set forth in Points 6 of the Amended Application, the motion should be granted.

ii.     **Claims in Points 6 and 7 that do not Relate Back**

The remainder of the proposed claims set forth in Points 6 and 7, however, do not relate back to claims set forth in the Petition and are therefore untimely.  First, Petitioner seeks to amend the Petition to include a claim that his appellate attorney was ineffective because he did not argue that trial counsel acted ineffectively when he did not move to dismiss the indictment on the basis that it was premised on perjured testimony.  Docket Entry #29 at 44.  Although the Petition contains claims concerning appellate counsel's effectiveness and the circumstances surrounding the grand jury proceedings, the Petition sets forth no claims concerning the substance of the grand jury proceedings, and, therefore, this proposed claim does not arise from the same transaction or occurrence as any claim in the Petition.  Therefore, it does not relate back to the Petition and, consequently, is untimely.

Petitioner also wishes to amend the Petition to include a claim that his appellate counsel was ineffective because he did not argue that his retained trial counsel, Bendish, failed to provide him with effective legal assistance because Bendish did not use certain evidence to impeach the testimony of Jasmine or Virginia.  See id. at 46.  No claim in the Petition concerns the credibility of Jasmine or Virginia, or Bendish's failure to properly cross-examine witnesses.  Therefore, the proposed claim does not share a common core of operative facts with any issue raised in the Petition.  Accordingly, the proposed claim does not relate back to the Petition and, as a result, is untimely.

In addition, Petitioner seeks to amend the Petition to include a claim that his appellate counsel was ineffective because he did not argue that trial counsel was ineffective when he did not move to dismiss certain claims on the ground of insufficient evidence.  Id. at 47-48.  Such claim is similar to those arguments set forth in Points 1-4 of the instant motion and, for the same reasons, it does not relate back to the Petition.  Therefore, it is untimely.

29

Petitioner also seeks to include in his Petition claims that appellate counsel was ineffective for failing to argue that trial counsel made several mistakes at sentencing, particularly that he should have moved for a reduction of the charges and of the sentence. Id. at 49-50. However, no claim in the Petition concerns trial counsel's actions at sentencing, and, therefore, the claim does not relate back to any argument in the Petition. Therefore, such proposed claim is untimely.

Finally, Petitioner seeks to include claims that his appellate counsel failed to provide him with effective legal assistance because he did not challenge the effectiveness of trial counsel on the basis of trial counsel's failure to move to preclude the 9-1-1 tapes and transcripts thereof from being introduced into evidence on several grounds. Id. at 46-47, 53-54. The Petition contains no claims concerning the introduction of or preclusion of such tapes or transcripts. Therefore, the claim does not relate back to any "conduct, transaction, or occurrence," Mayle, 545 U.S. at 664, that forms the basis of a claim in the Petition. Accordingly, the claim is untimely.

Because such claims do not relate back to the Petition under Fed. R. Civ. P. 15(c), and because they are otherwise untimely, I conclude, and respectfully recommend that Your Honor should conclude, that, insofar as Petitioner's motion seeks to amend the Petition to include such claims, it should be denied.

### d.   Proposed Amended Claim 8 Relates Back to the Original Petition

In what he labels Point 8, Petitioner claims that his appellate attorney failed to provide him with effective legal assistance because he did not argue on appeal that Petitioner was deprived of his right to counsel at the arraignment on the felony complaint, leading to a deprivation of counsel during the grand jury proceedings. See Docket Entry #29 at 55-61. This

30

claim is basically the same as the aforementioned proposed claim in Point 6, which relates back to a claim in the Petition. See supra 26-28. For the same reasons that I recommend that Petitioner's motion be granted to include such claim, I conclude, and respectfully recommend that Your Honor should conclude, that insofar as Petitioner moves to amend the Petition to include the claim set forth in Points 8, the motion should be granted.

      **e.**     **Proposed Amended Claims 9 and 10 are Duplicative of Claims in the Petition**

In Point 9, Petitioner asserts that his appellate counsel did not provide him with effective assistance of counsel when he did not assert that trial counsel was ineffective for failing to move to dismiss the indictment on the theory that Petitioner did not receive notice of the grand jury proceedings. Docket Entry #29 at 62. In Point 10, he claims that his appellate counsel failed to render effective legal assistance because, on appeal, he did not challenge the sufficiency of the evidence supporting the conviction for assault in the second degree. Id. at 63. These Points merely refer the Court back to the second application for a writ of error coram nobis, which Petitioner properly incorporated by reference in his Petition. Therefore, such claims are merely duplicative of the Petition, and amendment of the Petition to include them therein would be pointless. Accordingly, I conclude, and respectfully recommend that Your Honor should conclude, that, insofar as Petitioner moves to amend the Petition to include the claims set forth in Points 9 and 10, the motion should be denied.

      **f.**     **Proposed Amended Claim 11 Does Not Relate Back to the Petition**

In what he labels Point 11, Petitioner seeks to amend the Petition to include a claim that his appellate counsel provided him with ineffective legal assistance when counsel failed to challenge on appeal the length of the imposed prison sentence. See id. at 64-65. Petitioner claims that, prior to trial, the trial court judge offered him an aggregate prison sentence of

twenty-five years in exchange for pleading guilty to all twenty-seven counts of the indictment. See id. at 64. He asserts that the judge's imposition of an aggregate prison sentence of thirty-two years on convictions for nine counts establishes that such sentence was an act of retaliation for Petitioner taking his case to trial. See id.

Although the Petition also raises claims of ineffective assistance of appellate counsel, none of those claims challenge appellate counsel's failure to raise arguments concerning Petitioner's sentence or the sentencing proceeding. Moreover, the Petition contains no claims concerning the sentencing proceedings or the sentence imposed. Therefore, the "conduct, transaction, or occurrence," Mayle, 545 U.S. at 664, at issue here differs from that underlying any of the claims in the Petition, and, therefore, it does not relate back to any claim in the Petition. Consequently, the new claim is untimely, rendering any amendment of the Petition for its inclusion futile. Accordingly, I conclude, and respectfully recommend that Your Honor should conclude, that, insofar as Petitioner moves to amend the Petition to include the claims set forth in Point 11, the motion should be denied.

### g. Proposed Amended Claim 12 Does Not Relate Back to the Petition

The twelfth claim that Petitioner seeks to include in his Petition by way of amendment is also for ineffective assistance of appellate counsel. See Docket Entry #29 at 66. Petitioner claims that he asked his retained appellate counsel to move, pursuant to C.P.L. § 440.10 to file a motion to vacate the judgment of conviction prior to perfecting his direct appeal. See id. According to Petitioner, his appellate counsel refused to file such motion unless Petitioner paid him an additional amount above and beyond his initial retainer.

This claim does not relate back to any claim in the Petition. Superficially, the claim appears similar to those in the Petition in that it challenges the legal effectiveness of appellate

32

counsel.  However, it shares no common transaction or occurrence with any claim in the Petition; no argument in the Petition concerns communications between Petitioner and appellate counsel over the filing of a motion pursuant to C.P.L. § 440.10, appellate counsel's billing, or Petitioner's desire to file a motion pursuant to C.P.L. § 440.10.  Therefore, the proposed claim does not relate back to the Petition, and, as a result, it is untimely.  Its inclusion in the Petition would thus be futile.   Accordingly, I conclude, and respectfully recommend that Your Honor should conclude, that, insofar as Petitioner moves to amend the Petition to include the claims set forth in Point 12, the motion should be denied.

## III.    Conclusion

Petitioner's motion to amend the Petition includes several claims that are fully exhausted, relate back to the Petition, and are best addressed in the context of the Petition.  The remainder of the proposed claims, however, are untimely or without merit.  Therefore, as more fully explained above, I conclude, and respectfully recommend that Your Honor should conclude, that Petitioner's motion to amend the Petition should be granted in part and denied in part.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(e), or a total of seventeen (17) days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation.  Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Kenneth M. Karas at the Hon. Charles L. Brieant Jr. Federal Building and Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later

appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Karas, and should not be made to the undersigned.

Dated: February 27, 2014
White Plains, NY

Respectfully submitted,

Lisa Margaret Smith
United States Magistrate Judge
Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

Honorable Kenneth M. Karas, U.S.D.J.

Willie M. Williams
04-A-3775
Sullivan Correctional Facility
P. O. Box 116
Fallsburg, NY 12733-0116

Lisa Denig
Westchester County District Attorney's Office
111 Dr. Martin Luther King, Jr., Blvd.,
White Plains, NY 10601