UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT

ORIGINAL 

WILLIE WILLIAMS,
        Petitioner, Pro se,

                      Index No.: 7:12-CV-08164 KMKLMS

       -against-

STATE OF NEW YORK,
        Respondent.

AMENDED APPLICATION FOR HABEAS RELIEF

28 U.S.C. § 2254

Rule 15 (B) of the F.R.C.P.

Rule 15 (C) of the F.R.C.P.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7-6-17

TABLE OF CONTENTS

Page No:

WRIT SUMMARY .................................................... 1

QUESTIONS PRESENTED ............................................ 2

ARGUMENT ........................................................ 3

POINT 1   Was appellant counsel ineffective for failing to raise
that appellant was deprived of the right to the
assistance of counsel during the period of his initial
arraignment and at the grand jury proceedings?   ........ Exh. A

POINT 2   Was appellate counsel ineffective for failing to raise
trial counsel's ineffectivenessfor failing to move to
dismiss the indictment in violation of appellant's
right to be notified of grand jury action, and denial
right violated the due process and equal protection
clause of the fourteenth amendment?   ................... Exh. A

POINT 3   Was appellate counsel ineffective for failing to raise
that appellant was denied his due process right to
trial by jury and fair trial when the trial court
completely failed to respond, not once but twice, to
jury's substantive inquiries?   ........................ Exh. A

POINT 4   Was appellate counsel ineffective for failing to raise
on direct appeal that the evidence at trial was
insufficient as a matter of law to sustain a conviction
of Assault in the Second Degree?   ..................... Exh. A

POINT 5   Was petitioner's appellate counsel ineffective for
failing to to argue that petitioner was denied his due
process right to counsel at the initial arraignment in
accordance with CPL §180.10 (3),(4); and the 6th
Amendment of the United States Constitution?   .......... 3

POINT 6   Was petitioner's appellate counsel ineffective for
failing to argue that petitioner's second court
appointedcounsel, Griffin, acted ineffectively by not
moving to dismiss the indictment because petitioner did
not receive proper notice of the grand jury proceedings? .. 14

POINT 7   Was petitioner's appellate counsel ineffective for
failing to argue that trial counsel was ineffective
when he went on vacation during jury deliberations and
substitute counsel was unable to protect petitioner's
rights at trial?   .................................... 18

Page  No:

<u>POINT 8</u>   Was petitioner's appellate counsel ineffective for
failing to argue that petitioner was denied his right
to counsel during the grand jury proceedings?  ............  21

<u>POINT 9</u>   Was petitioner's CPL §440.20 improperly denied which
claims that petitioner was improperly sentenced
beyond the statutory guidelines when the imposition
of post release supervision exceeds the term of
sentencing allowable by law?  ........................  Exh. B

<u>POINT 10</u>  Petitioner request that judicial notice be taken
regarding the issue raised previously to this Court
regarding his claim that the indictment was a nullity
because it was not authenticated by the signature of
the grand jury foreman; an issue which petitioner has
not received an Order on regarding its consideration
on this writ.  ......................................  23

CONCLUSION  .......................................................  23

ii

## WRIT  SUMMARY

This is an Amended Application for Habeas Corpus relief by permission of this Court. Points 1-4 raised in the Original Petition alleging ineffective assistance of appellate counsel for failing to raise four claims that trial counsel was ineffective are already properly before the Court. See, Original Petition (D.E. #29); Civil Docket Entry #42 (Order adopting the Report and Recommendation dated 2/27/14 [D.E. #39]).

Said Order granted petitioner leave to submit this amended application to incorporate these four points of ineffective assistance of appellate counsel which petitioner exhausted through his second application for a writ of error coram nobis (D.E.#42). For brevity purposes petitioner attaches a conformed copy of these arguments from the coram nobis application as Exhibit 'A'.

The Order also granted petitioner leave to submit the parts of his Sixth claim in his first proposed amended Habeas Corpus petition that the Report and Recommendation found relate back to the Original Petition. See, R&R (D.E.#39) at pages 27-28. For clarity purposes these arguments are raised herein as **Points 5,6 and 7.**

The Order (D.E.#42) further granted petitioner leave to submit the Eighth claim in his first proposed amended Habeas Corpus petition. See, R&R (D.E.#39) at pages 30-31. For clarity purposes this argument is raised herein as **Point 8.**

Petitioner was granted further leave to amend his petition by letter from this Court to include the sentencing issues raised in his CPL §440.20. For the purpose of brevity and conformity petitioner has attached a copy of his §440.20 argument as Exhibit 'B' and lists this herein as **Point 9.**

1

## QUESTIONS  PRESENTED

POINT  1   Was appellate counsel ineffective for failing to raise that appellant was deprived of the right to the assistance of counsel during the period of his initial arraignment and at the grand jury proceedings?

POINT  2   Was appellate counsel ineffective for failing to raise trial counsel's ineffectiveness for failing to move to dismiss the indictment in violation of appellant's right to be notified of grand jury action, and denial right violated the due process and equal protection clause of the fourteenth amendment?

POINT  3   Was appellate counsel ineffective for failing to raise that appellant was denied his due process right to trial by jury and fair trial when the trial court completely failed to respond, not once but twice, to jury's substantive inquiries?

POINT  4   Was appellate counsel ineffective for failing to raise on direct appeal that the evidence at trial was insufficient as a matter of law to sustain a conviction of Assault in the Second Degree?

POINT  5   Was appellate counsel  ineffective for failing to argue that petitioner was denied his due process right to counsel at the initial arraignment in accordance with CPL §180.10 (3), (4); and the 6th Amendment of the United States Constitution?

POINT  6   Was petitioner's appellate counsel ineffective for failing to argue that petitioner's second court appointed counsel, Griffin, acted ineffectively by not moving to dismiss the indictment because petitioner did not receive proper notice of the grand jury proceedings?

POINT  7   Was petitioner's appellate counsel ineffective for failing to argue that trial counsel was inerfective when he went on vacation during jury deliberations and substitute counsel was unable to protect petitioner's rights at trial?

POINT  8   Was petitioner's appellate counsel ineffective for failing to argue that petitioner was denied his right to counsel during the grand jury proceedings?

POINT  9   Was petitioner's CPL §440.20 improperly denied which claims that petitioner was improperly sentenced beyond the statutory guidelines when the imposition of post release supervision exceeds the term of sentencing allowable by law?

POINT 10   Petitioner request that judicial notice be taken regarding the issue raised previously to this Court regarding his claim that the indictment was a nullity because it was not authenticated by the signature of the grand jury foreman; an issue which petitioner has not received an Order on regarding its consideration on this writ.

2

### POINT 5

Petitioner's appellate counsel was ineffective for
failing to argue that petitioner was denied his Due
Process right to counsel at the initial arraignment
in accordance with CPL §180.10 (3), (4); and the 6th
Amendment of the United States Constitution.


On June 21, 2003, petitioner was arrested for Attempted Murder in the
Second Degree and other various felonies. A felony complaint was lodged against
petitioner. Once this accusatory instrument was lodged against petitioner his
right to counsel attached indelibly. **U.S. Wade** 338 US 218 (1967); **In re Bauer**
3 NY3d 158, 160 (2004).

On June 23, 2003, petitioner was arraigned in city court on the felony
complaints. This arraignment has been determined by the courts of this state
as a "critical stage" of the proceedings. **Hurrell-Harring v. State of New York**
15 NY3d 8 (2010); see also, **Hamilton v. Alabama** 368 US 52 (1961). Furthermore,
the statutory language of CPL §180.10 (3) explicitly puts the arraigning court
on notice, stating:

> " The defendant has a right to the aid of counsel at the
> arraignment and at every subsequent stage of the action..."
> (emphasis added).

And if the defendant appears without counsel he has the additional right
"to have counsel assigned by the court...". CPL §180.10 (3)(c). The statutory
provision further obligates the court, not the defendant, to "take such
affirmative action as is necessary to effectuate" this right to counsel. See,
CPL §180.10 (4).

3

When petitioner appeared at the arraignment attorney Kiely was present to represent him as assigned counsel. Petitioner, however, requested a preliminary hearing be conducted as his right. Kiely took an adverse position against this request despite having no information about the case circumstances or even discussing the matter with petitioner. Kiely informed the court that petitioner's request was, therefore, made pro-se, since he did not agree with the request.

Petitioner explained to the court that he had had the same problem with the same attorney on a previous case and requested that Kiely be relieved as his counsel and someone else assigned. Petitioner also explained to the court that the last time he had this problem with Kiely that he "had to get another lawyer". See, Exhibit 'A' at page 22. Petitioner further stated to the court that "If I don't have a lawyer on that date (preliminary hearing date), I would like to proceed with my felony hearing pro-se". See, Exhibit 'A' at page 22. The court relieved Kiely and informed petitioner "he will go pro-se". The court also informed petitioner that a legal advisor would be available to him, as opposed to another assigned counsel to represent him.

This was error which denied petioner his right to counsel at this critical stage and by doing so had the adverse effect of denying petitioner his ultimate right to a preliminary hearing. The Supreme Court has held that an accused in custody has a federal constitutional right to a prompt probable cause determination, i.e. a preliminary hearing. **County of Riverside v. McLaughlin** 500 US 44 (1991).

Petitioner's statement that he had to get another lawyer and that if he did not have a lawyer at the preliminary hearing he would proceed pro-se cannot, and should not, be interpreted as a knowing request to proceed pro-se and a waiver of counsel for the arraignment and preliminary hearing. The court simply, and arbitrarily, decided for petitioner that he was now proceeding pro-se.

4

This decision by the court without even a minimal inquiry into petitioner's ability and desire to proceed without the aid of counsel was a sua sponte denial of his right to counsel at the arraignment and subsequent thereof. Petitioner was simply given no choice in the matter and his dissatisfaction with Kiely's previous performance in a similar circumstance cannot be construed as a request to proceed pro-se. As a result petitioner did not have any counsel from June 21, 2003, when the accusatory instrument was lodged against him, all the way until his arraignment on the indictment on July 18, 2003. Due to the court failing to "effectuate" any steps to safeguard petitioner's right to counsel his right to the preliminary hearing was also improperly denied.

Clearly attorney Kiely became and adversary at the initial arraignment and his reasonable competence fell below the Baldi standard. **People v. Baldi** 54 NY2d **137 (1981).** Kiely did not provide any "meaningful representation" as required. In fact, his adversarial position coupled with his silence while witnessing clear errors of the court occur to petitioner's detriment was a total and complete abandonment by counsel of petitioner's best interests. This attitude also completely denied petitioner his right to counsel at the arraignment. Instead of providing the guiding hand of counsel he essentially offered no help and suggested to the court that petitioner go at it alone. A suggestion the court adopted and by doing so implicitly assumed Kiely's same degree of ineffectiveness and disregard for petitioner's rights. Because the preliminary hearing in CPL §180 contemplates relief beyond release and bail exoneration, the disregard of this hearing and its benefits to preparing a defense severely prejudiced petitioner. This prejudice resulted by not having the circumstances of his arrest and the charges against him fully investigated by a competent attorney, denied him the preservation of crucial **Brady** material at the hearing

5

through his right to confrontation, and denied him his Sixth Amendment right

to a fair trial as well as his Fourteenth Amendment right to Equal Protection

of the Law. Therefore, these prejudices also satisfy the prejudice prong of

**Strickland v. Washington** 466 US 668 (1984). Because this prejudice is manifest

in the record appellate counsel was ineffective for failing to raise these

claims and petitioner's second coram nobis application should have been granted.

**People v. Stultz** 2 NY3d 277 (2004).

Additionally, the arraignment court did not comply with the mandates of CPL

§180.10 (4) to "take such affirmative action as is necessary to effectuate"

petitioner's "right to a prompt hearing", one within 120 hours (CPL §180.10 (2);

§180.80); and his "right to the aid of counsel <u>at the arraignment</u>". (emphasis

added), see CPL §180.10 (3).

The court's decision to adopt Kiely's suggestion that petitioner proceed

pro-se was misguided and an abuse of discretion. New York law is clear that the

judge must conduct a "searching inquiry" of defendant's understanding of the

dangers and disadvantages of proceeding pro-se. **People v. Crampe** 17 NY3d 469

(2011); as is the federal counterparts. See. **Faretta v. California** 422 US 806

(1975). The request to proceed pro-se may be in essence a request for new

assigned counsel. **People v. Hayden** 250 AD2d 937 (3 Dept. 1988). The court, by

simply assuming that Kiely's statement to the court that the hearing request

was pro-se and was the equivalent of petitioner's waiver of counsel and desire

to proceed pro-se, failed to safeguard petitioner's right to counsel and make

a factual determination that petitioner made a knowing and voluntary waiver of

his right to counsel. Because the court did not advise petitioner of the

importance of the attorney role nor of the disadvantages of proceeding pro-se,

the implied waiver of counsel was not knowing and voluntary. **People v. Rafikian**

6

98 AD3d 1139 (2 Dept. 2012). This requirement is further delineated in CPL §180.10 (5), which states:

> "If the defendant desires to proceed without the aid
> of counsel, the court must permit him to do so <u>if it
> is satisfied that he made such decision with knowledge
> of the significance thereof</u>...".(emphasis added).

Clearly, Legislative intent made it incumbent upon the court to engage in the required "searching inquiry" to determine if petitioner was making a well reasoned and well informed choice to forego the aid of counsel. The record of the arraignment (Exhibit 'A' at pages 22-23) shows no such necessary actions being taken by the court to effectuate and safeguard his right to counse, or that a knowing and voluntary waiver took place. Therefore, since petitioner was, in all respects, faced with the dilemma of proceeding with an adversarial and ineffective attorney, Mr. Kiely, or unitelligibly proceeding without the aid of competent counsel, and involuntarily proceeded pro-se, petitioner was improperly and prejudicially denied his right to counsel at the arraignment and subsequent thereto. This error was not harmless and is of a constitutional dimension. Petitioner's defense was impaired to a significant degree thereby denying petitioner his Sixth Amendment right to a fair trial and to present a complete defense, as well as his Fourteenth Amendment right to Due Process.

Had a reasonably competent attorney been present, or assigned, they would have correctly established the requested "180.80 day" as being June 26, 2003 as the deadline for the preliminary hearings 120 hours. Since petitioner was arrested on June 21, 2003, and remained in continuous custody, the time spent in custody "since his arrest" is properly applicable towards the 120 hour mandate. See, CPL §180.80.

7

The court's scheduling of the hearing for June 30, 2003, clearly failed to comply with the statutory provision of CPL §180.10 (2) (prompt hearing), and CPL §180.80 (120 hours to hold hearing). Whether or not intentional, it is clear the court took advantage of this pro-se defendant in scheduling the preliminary hearing beyond the statutory mandates. An error that would have been corrected by competent assigned counsel. Moreover, Kiely's failure to intervene on petitioner's behalf and correct this error demonstrates his adversarial position towards petitioner and his ineffectiveness for not being reasonably competent in this regard and professionally unethical.

Additionally, had a reasonably competent attorney been reassigned at the arraignment he would have taken full advantage of the request for a preliminary hearing. Such a hearing would allow for counsel to investigate the charges and the witnesses, and to become familiar with circumstances. This would greatly aid in the preparation of a defense, grand jury appearances, pre trial motions and discover the validity of the accusations and achieve reduced or even dismissed charges. All of these important aspects were also denied to petitioner who was now his own attorney and unable to perform these tasks from the confines of a jail cell. For all intents and purposes when petitioner was remanded to the local jail, by virtue of his incarceration, petitioner's "counsel" was jailed as well, as he was his own attorney.

The Equal Protection Clause of the Fourteenth Amendment does not require a statute to be invalid on its face if in its application in a given fact situation it results in an unfair and discriminatory result. Yick Wo v. Hopkins 118 US 356 (1886); Griffin v. Illinois 351 US 12 (1956). Improper motive that results in unequal enforcement of a statute will also violate the equal protection clause. Williams v. Field 416 F2d 483 (C.A. 6th, 1969). The case

8

before the court is a classic one that deals with an issue that occurs every day, is rarely reviewed because of the fleeting nature of the proceedings, and usually has the same deficiencies as petitioner is arguing. CPL §180 imposes multiple obligations upon the Court and the People which in this case were not complied with for improper reasons. Petitioner contends that the People's reliance on CPL §180.80 (2)(a) [written certification that an indictment had been voted] as grounds for not conducting the preliminary hearing, which they "must" since petitioner exercised his right to such, was unequal enforcement of the statute and based upon improper motives. **Blackledge v. Perry** 417 US 21 (1974).

Because petitioner was proceeding pro-se and unfamiliar with the legal and technical aspects of CPL §180, petitioner asserts that the People took advantage of his status of being denied an attorney at this critical stage. And that they did so beyond the 120 hour deadline, which ended on June 26, 2003.

On June 30, 2003, the date for the scheduled preliminary hearing, the People presented the court with a Certificate of Indictment stating that petitioner was indicted on June 27, 2003, the day after what should have been the last day to afford petitioner his right to the requested preliminary hearing. Petitioner contends that the statutory language in CPL §180.80 (2)(a), "prior to the application", is of critical importance and distinguishes issues raised by petitioner and therefore the courts reliance on this provision to deny petitioner his hearing was misplaced and error.

Petitioner contends that the plain meaning of "prior to the application", viewed in the context of CPL §180.80, means prior to the application for release for failing to hold the hearing in a timely manner (i.e., a CPL §180.80 motion for release on recognizance). Petitioner never made a request for release pursuant to CPL §180.80 and therefore the People's use of the certificate of indictment (CPL §180.80 (2)(a)) should have had no force or effect to cancel

his requested preliminary hearing. Petitioner's purpose of exercising his right to the preliminary was to confront his accusers and hold the People to their burden of establishing petitioner's culpability in the alleged crime with competent evidence and the required probable cause. The People, and the lower court, have improperly applied a provision designed to prevent release as a mechanism to deny a statutorily mandated preliminary hearing. Had that provision been intended to be used as the People did it would have been incorporated in the provision addressing the preliminary hearing itself and clearly stated its purpose. Since petitioner made no such application for release under CPL §180.80 he was still entitled, and statutorily mandated by his request, to have the preliminary hearing held on June 30, 2003, despite the People's certification that an indictment had been voted. Furthermore, the subject matter jurisdiction was squarely before the local court and that court was still obligated to take all the necessary steps to effectuate petitioner's rights provided under CPL §180.10. Only the <u>filing</u> of the indictment, not the voting of, would be sufficient to divest the local court of its jurisdiction and obviate the preliminary hearing. Since the indictment was not filed until July 14, 2003, jurisdiction remained in the local court making the certification the People are attempting to rely on a nullity and denial of the preliminary hearing a fundamental error.

Because release is not the only aspect, and in some cases, as here, not the most important aspect, petitioner was entitiled to utilize the hearings benefits in furtherance of his constitutional rights and his defense. <u>Coleman v. Alabama</u> 399 US 1 (1999); <u>People v. Hodge</u> 53 NY2d 313 (1981); <u>People v. Hogan</u> 5 Misc3d 151 (City Ct. Monroe Co. 2004); <u>People v. Heredia</u> 81 Misc2d 777 (Dist. Ct. Suffolk Co. 1975). The augmentations provided by the preliminary hearing (CPL §180.60) complement petitioner's 6th and 14th Amendment rights to a fair trial

10

and his right to present a complete defense. Crane v. Kentucky 476 US 683, 690

(1986); see also, Hawkins v. Costello 460 F3d 238, 243 (2d Cir. 2006); Holmes v.

South Carolina 547 US 319, 324-325 (2d Cir. 2006). Petitioner should have been

allowed to have the preliminary hearing to exercise his fundamental constitutional

rights to confrontation and to call witnesses in his behalf. Such as those that

were denied at trial that would have established a similar family pattern as

the charged crime of Attempted Murder to prove that the baby's mother, and not

the petitioner, was the actual perpetrator and the resulting accusations against

petitioner were motivated fabrications. This type of Brady testimony would

have been preserved, under oath, for petitioner's use at the Grand Jury and at

trial for his defense. Therefore, denying the preliminary hearing on improper

motives and unequal application of the statute − CPL §180.80 (2)(a) − resulted

in the exclusion of exculpatory and favorable Brady evidence in violation of

petitioner's right to a meaningful opportunity to present a complete defense.

Holmes, supra, at 324-325; See also, Chambers v. Mississippi 410 US 284 (1973).

These prejudicial errors are the direct result of petitioner being denied

his right to counsel at the arraignment and subsequent thereto and left to the

disadvantages and dangers of unwillfully being forced to proceed pro-se.

Competent counsel could have ensured that petitioner received the full benefits

of the preliminary hearing and further ensured that the People, and the Court,

fulfilled their required obligations by law relevant to the preliminary hearing.

As eloquently stated in Hodge, supra, "...it isn't what was produced at the

preliminary hearing, but what could have been produced had it been held". See

also, Heredia, supra, [ The District Attorney may not deliberately avoid

conducting a preliminary hearing; the Court has an obligation to see that he

does it].

As stated in <u>Maine v. Moulton</u> 474 US 159, 170 (1985), "to deprive a person of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself". As evidenced by the foregoing reasons and precedential law the damages suffered by petitioner were severely prejudicial and compromised the entire proceedings resulting in a deprivation of petitioner's constitutional right to counsel and a fair trial, making the resulting conviction unreliable and requiring reversal and dismissal of the indictment.

Lastly, petitioner contends that the issues surrounding CPL §180 are not moot and should be addressed by this Court as they impact petitioner's, and other accused persons, fundamental rights provided under the 6th and 14th Amendments of the Constitution.

In <u>Matter of Hearst Corp. v. Clyne</u> 50 NY2d 707, 713 (1980), the Court of Appeals noted that "it is a fundamental principle of our jurisprudence that the power of a court to declare the law only arises out of, and is limited to, determining the rights of persons which are actually controverted in a particular case pending before the tribunal" (citations omitted). When an issue is moot, "it may not properly be decided by the court unless it is found to be within the exception to the doctrine which permits the courts to preserve for review important and recurring issues which, by virtue of their relatively brief existence, would be rendered otherwise nonreviewable". 50 NY2d at 714, citing <u>Roe v. Wade</u> 410 US 113, 125 (1973).

The Court of Appeals has identified three factors which would justify an exception to the mootness doctrine: " (1) a likelihood of repetition, either between the parties or among other members of the public; (2) a phenomenon typically evading review; and (3) a showing of significant important questions

not previously passed on, i.e., substantial and novel issues". 50 NY2d at 714-715. Where these three factors are present, this issue should be addressed by a court as an exception to the mootness doctrine. **Matter of Crystal AA** 271 AD2d 771 (3 Dept. 2000); **People ex rel Wagner v. Infante** 167 Ad2d 630, 631 (3 Dept. 1990); **People v. Mejia** 2 Misc3d 494, 496 (Crim. Ct., Kings Co. 2004).

Petitioner contends through the foregoing reasons that all three factors are present. There is a strong likelihood of repetition of this issue on a daily basis, and given the time constraints of CPL §180.10 an §180.80 (120 hours), this issue is rarely, if ever, reviewed by a court. The matter also implicates important constitutional rights to counsel and due process. The novel issue presented by this fact pattern is best stated as follows: Does a defendant that has exercised his right to a preliminary hearing with the aid of counsel, lose the right to the hearing if the People obtain an indictment, but do not file it to convey jurisdiction to a Superior Court, then assert the statutory provision of CPL §180.80 (2)(a) [declaring an indictment has been voted but not filed] which obviates a §180.80 release application, when the defendant did not request release under §180.80 but rather requested his right to a preliminary hearing under §180.10 ?

Petitioner contends that the preliminary hearing must still be conducted as a matter of "right" and due process and that an indictment does not prevent this hearing, whether it is filed or not. For even though an indictment may be obtained prior to the preliminary hearing, petitioner may discover at the preliminary hearing evidence that would ultimately lead to the dismissal of the indictment on a pre-trial motion to dismiss the indictment on insufficient and/or improper evidence before the grand jury or that the integrity of the grand jury was compromised. Therefore, a requested preliminary hearing must be held.

13

POINT 6

Petitioner's appellate counsel was ineffective for failing to argue that petitioner's second court appointed counsel, Griffin, acted ineffectively by not moving to dismiss the indictment because petitioner did not receive proper notice of the grand jury proceedings.

The facts of this case, which are undisputed by the People, and accepted by the Court in the second Report and Recommendation (dated September 2016) clearly sets forth one very important concession which is dispositive of this matter

That is that petitioner was without counsel from the time of his initial arraignment on June 23, 2003, until the indictment was filed and counsel assigned on July 18, 2003. The Report and Recommendation states, on page 14, "the only period during which he (petitioner) proceeded pro-se was the period between the date which his preliminary hearing was set (6/23/03) and his arraignment on the indictment (7/18/03).

It has been clearly established that petitioner was proceeding pro-se from the time of the arraignment and subsequent thereto, whether by choice or due to the court's improper denial of counsel. The essential point is that for all legal purposes petitioner was the "attorney" of record for the proceedings. Therefore, any Grand Jury notice to testify (CPL §190.50 [5]) was to be sent to petitioner and no one else. The People's claim that they sent the notice to Mr. Griffin supports petitioner claim that he did not receive the notice. In

14

as much as Griffin was merely and "advisor" for the preliminary hearing he was not duty bound to act as petitioner's lawyer in any capacity prior to his actual assignment which did not occur until July 18,2003.

More importantly the obligation is on the People to ensure that petitioner received "actual notice" of the grand jury presentation. **People v. Abdullah** **184 AD2d 195 (2 Dept. 1993)**. Only then can petitioner reciprocate to inform the People of his intent to testify before the grand jury. An incarcerated defendant does not have to take any affirmative steps to ensure that he receives the notice, only after he does.

The People clearly knew that petitioner was incarcerated and proceeding pro-se. Petitioner had no reason to believe that Griffin would be fielding any correspondence or notices on his behalf from the People since he was not his attorney. His last known discussion regarding assignment of counsel at the arraignment was only that an "advisor" would be available to him on June 30, 2003, at the preliminary hearing. Petitioner was not told who because the court said they "had to find someone". Therefore, once petitioner was remanded to the local jail he would have had no reason to even contact Griffin, who may or may not have taken a jail call from an inmate not even assigned to his caseload.

Furthermore, having been declared to be acting as his own attorney petitioner was expecting that any further correspondence or actions to be taken in the matter would be brought to his attention first. Otherwise, what was the point of allowing petitioner to proceed pro-se if the People were going to ignore his status and deal with an attorney. In that case Griffin should have been assigned as counsel from the start. It is rather oxymoronic to deny petitioner counsel, force him to proceed pro-se, then counter his claim that he did not receive proper notice when the notice was sent to an unassigned

attorney. The argument can be distilled to whether petitioner was denied proper actual notice of the grand jury notice, or was he denied his right to act as his own attorney once the court declared him pro-se. Either way the legal ramifications are the same: petitioner was not afforded his statutory right to receive actual notice of the grand jury to allow him to testify.

The statute is clear on this right where it states "...the District Attorney must notify the defendant...and accord the defendant a reasonable time to his right to appear". CPL §190.50 (5)(a). <u>People v. Evans</u> 79 NY2d 407 (1992).

The statute further elaborates that "...any indictment...filed in violation of the provisions of paragraph (a) or (b) is invalid...and upon a motion pursuant to CPL §210.20 must be dismissed". See, CPL §190.50 (5)(c).

Had Griffin, after being assigned as counsel at petitioner's arraignment on the indictment on July 18, 2003, made a motion pursuant to CPL §210.20 to dismiss the indictment for lack of notice, the motion would have been successful. And since petitioner was no longer proceeding pro-se he was unable to bring the motion himself as hybrid representation is not permitted. <u>People v. Rodriguez</u> 95 NY2d 497 (2000). Therefore, Griffin's failure to advance this motion and argument denied petitioner his absolute right to testify before the grand jury and constitutes ineffective assistance of counsel. Appellate counsel was also ineffective for failing to argue this point and trial counsel's ineffectiveness.

For the foregoing reasons the indictment should be dismissed and petitioner restored to his pre-indictment status. This would allow petitioner to exercise his right to testify before the grand jury. This would permit the grand jury to hear petitioner's side of the events and receive important evidence they were precluded from hearing initially. Petitioner would be able to produce

16

evidence by way of cellphone records that would constitute Brady material to discredit the false accusations of the child's mother. These records would also show that she was the one to violate the order of protection, not petitioner, which would prevent petitioner from being indicted for criminal contempt. Petitioner could have also introduced medical record that would have shown the lack of physical injury and therefore no assault second would have been indicted. Furthermore, petitioner could have presented evidence and important witnesses to demonstrate that the mother was not only unbelievable and made false accusations, but that she was the more likely perpetrator of the attempted murder.

The grand jury simply heard one side of the story, which was the People's overly prejudicial version to acquire an indictment. As a result petitioner was overcharged and had to defend against charges that should not have been before the jury. The sheer number of various charges put petitioner at a disadvantage from day one in the minds of the jury. A fair presentation of petitioner's testimony and evidence at the grand jury would have changed the ultimate outcome of the trial. The improper and insufficient notice of the grand jury proceedings deprived him of his right to testify and lead to an unfair trial which violated petitioner's 6th Amendment right to a fair trial and his 14th Amendment right to Due Process requiring dismissal of the indictment and conviction.

17

<u>POINT  7</u>

Petitioner's appellate counsel was ineffective
for failing to argue that trial counsel was
ineffective when he went on vacation during jury
deliberations and substitute counsel was unable
to protect petitioner's rights at trial.


This argument is best addressed as the Court allowing a mode of proceedings error to occur which violated CPL §310.30 and denied petitioner his 6th Amendment right to a fair trial and his right to counsel at a critical stage of the proceedings. The trial and jury deliberations are considered critical stages. <u>Perry v. Leeke</u> 488 <u>US</u> 272 (1989); People v. Martin <u>8 NY3d 129 (2007).</u> This type of fundamental error is not subject to the usual rules of preservation and is therefore reviewable in this Court. <u>People v. Woodrow</u> 19 NY3d 978 (2012); <u>People v. O'Rama</u> 78 NY2d 270 (1991); <u>People v. Kisoon</u> 8 NY3d 135 (2007).

The lower court failed to fulfill its "core responsibilities" by failing to provide a "meaningful response" to the inquiries and "meaningful notice" to defense counsel. See, <u>O'Rama</u>, supra; see also; <u>People v. Malloy</u> 55 NY2d 296, 301-302 (1982), cert. denied 459 US 847 (1982).

The <u>O'Rama</u> guidelines do not mandate strict adherence, as long as the methods employed are conducive to counsel's meaningful participation and the jury receiving a meaningful response. <u>O'Rama</u>, supra, at 278; <u>People v. Alcide</u> 21 NY3d 687, 692 (2013).

The perfunctory and dismissive reply to the jury's request for a readback did not provide the required meaningful response and was error. <u>People v. Walston</u> 23 NY3d 986 (2014). The delay of three days to provide the readback had a

18

chilling effect on the jury's deliberations. Instead of promoting a conducive atmosphere and encouraging thought processes the delay essentially pulled the plug on the jury's duties and function. This was a fundamental error that denied petitioner a fair trial.

Furthermore, the record is void of any indication that the readback was a meaningful one. The record simply states "items requested read back to jury". See Exhibit 'C' (Trial Transcript page 1273). Additionally, "a request for a reading of testimony generally is presumed to include cross examination which impeaches the testimony to be read back, and any such testimony should be read to the jury unless the jury indicates otherwise". **People v. Jones** 297 AD2d 256, 257 (2002), lv. denied 98 NY2d 769 (2002); **People v. Faulkner** 195 AD2d 384 (1993). It cannot be assumed to petitioner's prejudice that the jury received a meaningful response on a barren record. The absence of precisely what was said to the jury strips petitioner of a fair review of fundamental errors and should be resolved in his favor as a mode of proceedings error.

Additional error occurred when the Court allowed petitioner's counsel, Brendish, to go on vacation during jury deliberations. Especially in a case involving the most serious of charges and possible life incarceration. This was complete abandonment of counsel at a most critical stage knowing that the possibility of the jury requesting readbacks and additional information was so high as to be a near certainty. Counsel was clearly ineffective to treat the case as an inconvenience to his vacation schedule and the court permitting him to be absent deprived petitioner of his right to counsel and a fair trial and committed a reversible mode of proceedings error.

The error was not alleviated by the substitution of counse by having Mr.

19

Goodrich fill in. Goodrich had not been present for any of the trial and was in no position to assist in preparing a meaningful response to jury inquiries and protecting petitioner's rights. Having not sat through the trial he did not know what was going on, how to respond or whether or not the court's response was meaningful. Or even if the jury request was for relevant information or if they were asking for items they should have clarified or limited.

The mode of proceedings requirements, and the O'Rama procedures require meaningful notice to counsel. This simply cannot be done when trial counse has left the building and substitute counsel is ignorant of what has taken place during the trial. The requirement that "notice" be given to counsel is not a mere formality or a procedural device designed only to ensure counsel's presence in the courtroom when the court gives its response to the jurors request for information or instruction. People v. Ramsey 40 AD2d 837, 838. An equally important purpose is to ensure that counsel has the opportunity to be heard before the response is given. Rogers v. United States 422 US 35,39; United States v. Ronder 639 F2d 931, 934; People v. O'Rama, supra.

Such an opportunity is essential to counsel's ability to represent the petitioner's best interests, and further, to ensure the protection of petitioner's constitutional and statutory rights at these critical postsubmission proceedings. People v. Ciaccio 47 NY2d 431, 436. Thus, just as CPL §310.30's requirement that juror inquiries be answered mandates a "meaningful" response, so too does that statutes "notice" requirement mandate notice that is meaningful. That cannot be achieved when the court has permitted trial counsel to absent himself for vacation during jury deliberations and inquiries from them. This amounts to reversible error requiring vacatur of petitioner's conviction.

20

## POINT  8

Petitioner's appellate counsel was ineffective for failing to argue that petitioner was denied his right to counsel during the grand jury proceedings.

Petitioner has laid out the relevant facts and issues involving this point through the argument outlined in Point 6 and incorporates them here.

Because petitioner was denied counsel at the initial arraignment and had to proceed pro-se from that point until his arraignment on the indictment, by that virtue he was also denied counsel for the grand jury proceedings. The grand jury proceedings and petitioner's appearance at them is a critical stage requiring counsel. **Trudeau v. Cantwell** 31 AD3d 844 (3 Dept. 2006); see also, **Montejo v. Louisiana** 129 S. Ct. 2079 (2009).

Without petitioner having counsel prior to the grand jury proceedings he was denied his right to testify before the grand jury in accordance with CPL §190.50. This was a prejudicial error which denied petitioner to present his testimony and evidence to the grand jury to allow them to consider all of the evidence instead of only the prosecutors. In such a forum the prosecutor would not be inclined to advocate on behalf of petitioner thereby tipping the scales of fairness against the absent petitioner.

The denial of counsel during these proceedings prevented petitioner from having the guidance of counsel to navigate and advise petitioner through the proceedings and ensure his rights and fairness overall. **Gideon v. Wainwright** 372 US 335, 345 (1963).

Because petitioner was incarcerated during the grand jury proceedings he was unable to conduct his own investigation into matters. Had counsel been assigned as his rights require, counsel could have investigated the matter fully and further assisted in petitioner's proposed grand jury presentation. As it was petitioner was left in limbo while the People were able to do as they wished without concern of any adversarial input to hamper them. The Constitution demands more fairness than what has been provided to petitioner.

Had counsel raised this important issue the indictment would have been dismissed based upon petitioner's deprivation of counsel.See, **People v. Backman** 274 AD2d 432 (2 Dept. 2000). Therefore, petitioner's appellate counsel was likewise ineffective for failing to argue this issue. **People v. Turner** 5 NY3d 476, 485 (2005).

Moreover, its clear from the record that petitioner has been subjected to at least three occasions of denied counsel during critical stages of this action. Once at the initial arraignment, again during the grand jury proceedings and a third time during trial at the jury deliberations. A sense of fairness and justice cannot let a conviction stand on such unstable grounds. The multiple errors here are in no way harmless and go directly to the core of the Constitution and the rights of every person. To deny petitioner these rights, not once but three times, is tantamount to implying that the rights are no longer fundamental and have become optional in their applications. Under these circumstances petitioner's multiple denials of his 6th Amendment right to counsel and his 14th Amendment right to Due Process must be remedied and the conviction vacated and the indictment dismissed. This would allow him to be restored to his preindictment position to exercise his rights as required by law.

22

## POINT 10

Petitioner requests that judicial notice be taken
regarding the issue raised previously to this Court
regarding his claim that the indictment was a nullity
because it was not authenticated by the signature of
the grand jury foreman; an issue which petitioner has
not received an Order on regarding its consideration
on this writ.

Petitioner has contended that the indictment was a nulltiy because it was
not signed by the grand jury foreman. Petitioner has raised this issue in his
prior state habeas application and incorporated it in his prior applications
to this court. However, petitioner has not received any Order from this Court
whether or not it is going to be considered on this writ. Petitioner has also
made many attempts to get an authenticated copy of the indictment through the
lower court's clerk and has been unsuccessful in determining if one exists. See
Exhibit D. If the issue is before this Court please refer to Exhibit D in
support of the raised argument.


## CONCLUSION

WHEREFORE, and for all the foregoing reasons and conclusions of law,
petitioner respectfully prays that this writ be granted determining that
petitioner's rights to counsel and due process as guaranteed by the 6th and
14th Amendments were violated, requiring vacatur of the conviction.


Dated: June 27, 2017                          Respectfully Submitted,
       Elmira, N.Y. 14902

                                              Willie Williams

23

# EXHIBIT A

Point One

Appellate Counsel Was Ineffective For Failing
To Raise That Appellant Was Deprived Of The
Right To The Assistance Of Counsel During The
Period Of His Initial Arraignment And At The
Grand Jury Proceeding.

Had this issue been raised on direct appeal, the judgment would have been reversed and the indictment dismissed. It clear that a criminal defendant, regardless of wherewithal, is entitled to "'the guiding hand of counsel at every step in the proceedings against him'"(Gideon v. Wainwright, 372 U.S. 335, 345 [1963], quoting Powell v. Alabama, 287 U.S. 45, 69 [1932]). The right attaches at arraignment (see Rothgery v. Gillespie County, 554 U.S. 191 [2008]) and entails the presence of counsel at each subsequent "critical" stage of the proceedings (Montejo v. Louisiana, 129 S.Ct. 2079 [2009]). Appellant was deprived of the right to the assistance of counsel when the local court failed to assign new counsel at arraignment, and thereafter, the prosecutor presented the case to the Grand Jury and voted an indictment while the felony hearing in local court was still pending. Because of an apparent conflict of interest between appellant and counsel during the initial arraignment, appellant was forced to proceed pro se.

On June 21, 2003, appellant was arrested for Attempted murder and other related charges. On June 23, 2003, appellant was represented by Mr.J.P. Keily from the Legal Aid Society to be arraigned in Peekskill City Court on the felony complaint. Mr.Keily

21

moved to waive appellant's felony hearing but appellant refused to

waive his right to the hearing. Appellant requested for a felony

hearing and the following took place in open court:

THE COURT:  . . . Mr.Williams, do you want to say something?

THE DEFENDANT:  Yes, sir, please. I would like to ask for

180.80 felony hearing.

THE COURT:  When is the 180.80 day?

THE DEFENDANT:  I'll go by your calendar.

THE COURT:  I will schedule it for next Monday.

MR.KIELY:  That's his request, and it

(see Ex."B" arraignment

on felony complaint p. 3)


* * *

is pro se.

THE DEFENDANT:  Yes, pro se.

THE COURT:  Mr.Williams, you have an attorney, and unless

and until the Legal Aid Society is discharged, the Legal Aid

Society will be representing you.

THE DEFENDANT:  I would like him removed from my case. I

went through this with him the last time and I had to get another

attorney. Same problem with the same lawyer with another case

before. You can check the records. He is not doing what I ask him

to do. I believe he workes (sic) for me. You appointed him to

represent me?

THE COURT:  Yes.

THE DEFENDANT:  Thank you. He is not doing that. If I don't

have a lawyer on that date, I would like to proceed with my felony

hearing pro se.

THE COURT:  Mr.Kiely, what is your application?

MR.KIELY:  Judge, I am not asking for a felony hearing. I am

the attorney. He has the right to go pro se if he wants. He has

22

that as a legal right.   ( p. 4).

\* \* \*

THE COURT:  Yes, he does.

MR.KIELY:  I am not requesting a felony hearing. If I am being relieved, and he is going pro se, put it down for a felony hearing.

THE COURT:  I'll schedule the felony hearing because Mr. Williams is the one facing the charges.

MR.KIELY:  That's a legal decision, Judge.

THE COURT:  I understand that. Then he will go pro se.

MR.WHITE:  Can we approach?

THE COURT:  Step up.


( WHEREUPON, a bench conference was held off the record.)


THE COURT:  Mr.Williams, what I am going to do is grant your request to have the Legal Aid Society removed. I will schedule the felony hearing for next Monday.

THE DEFENDANT:  Will I be appointed an advisor or no?

THE COURT:  Yes. I will appoint an

( p.5)

\* \* \*

advisor, but I have to get somebody from the felony 18-B panel to do that.

THE DEFENDANT:  Is it possible, may I request somebody?

THE COURT:  No, you may not request a specific individual.

THE DEFENDANT:  Thank you.

THE COURT:  The felony hearing will be scheduled for 2 p.m. The Defendant is held remanded until June 30th for felony hearing ( p.6).


On June 30, 2003, appellant appeared in city court with Mr.Kevin Griffin for the felony hearing, his court appointed

23

advisor from the 18-b panel. The prosecutor told the Court it no longer had jurisdiction to conduct the hearing because appellant was indicted on June 27, 2003. See Ex."C" (felony hearing pp. 5-6). Thereafter, appellant was arraigned on the indictment in County Court on July 18, 2003. Mr. Griffin was then appointed by the County Court to represent appellant as his lawyer rather than his advisor, and agreement was exchanged on the record by both appellant and Mr. Griffin. See Ex."D" (arraignment on the indictment pp.1-4). The facts of this case are indistinguishable to People v. Backman, 274 A.D.2d 432 (2nd Dep't. 2000). The defendant in that case was arrested on a felony complaint. Before a preliminary hearing on the felony complaint, the charges were presented to a Grand Jury, which returned an indictment against the defendant. Thereafter, the defendant was arraigned on the indictment. At the arraignment, newly-assigned counsel for the defendant noted that the defendant, although indigent, had not been assigned counsel at the arraignment on the felony complaint, although he had not waived such right, and had been without representation from his arrest until that morning. Thus, counsel argued, although the defendant had been given notice of the impending Grand Jury proceeding while incarcerated, he had been improperly denied assistance of counsel and effectively denied his right to appear before the Grand Jury. The only difference here, is that, appellant had a conflict of interest with counsel at his initial arraignment and he was not given notice at all of the impending Grand Jury proceeding when the prosecutor was mandated to do so.

24

Appellant was without an assigned counsel between the time of the
initial arraignment and the Grand Jury proceeding when he was
compelled to have Mr.Kiely removed from the case because Mr.Kiely
did not want to conduct the felony hearing. Appellant specifically
told the court that if he did not have a lawyer on the date of the
felony hearing, he would like to proceed with the hearing pro se
( see Ex."B" p. 4). Once the court determined that appellant could
proceed pro se and granted his request to have the Legal Aid
Society removed, appellant was without representation from thereon
(Ex. "B" p. 5). The local court failed to safeguard appellant's
fundamental right to counsel in two ways during this critical stage
of the proceedings. First, the record is absent any showing that
the court was satisfied that appellant made his decision with
"knowledge of the significance thereof"; to go forward without
counsel. Secondly, the court failed to inform appellant that his
right to counsel could be effectuated at anytime necessary and that
he may exercise such rights at any stage of the action (CPL 180.10-
[5]; see also 180.10[3][c] and [4]). The record shows that appell-
ant, although protecting his rights to the hearing, was unable to
obtain counsel and was seeking some form of assistance of counsel
by expressing to the court "[w]ill I be appointed an advisor or
no?" the court replied,"[y]es, I will appoint an advisor, but I
have to get somebody from the felony 18-b panel to do that"(Ex.-
"B" pp.5-6). Although the court appointed Mr.Griffin as appellant's
advisor for the purposes of the felony hearing, Mr.Griffin did not
become appellant's assigned counsel until after appellant was

25

indicted in County Court. See Ex."D" (arraignment on the indictment at pp. 1-4). If the local court could appoint Mr.Griffin to function as appellant's advisor, he could have certainly appoint Mr.Griffin to represent appellant as guaranteed under the Sixth Amendment right to counsel, like the County Court have done. See People v. Blasingame, 65 A.D.2d 455 (2nd Dep't. 1978), once a criminal action has been commenced, the burden devolves upon the authorities to insure that the defendant's right to be represented by counsel is protected and it is their duty to ascertain whether defendant intends to obtain counsel counsel or have one assigned. Indeed, it is clear that "to deprive a person of counsel during the period prior to trial may be more damaging than denial of counsel during the trial itself" (Maine v. Moulton, 474 U.S. 159, 170 [1985]). Appellant was under the impression that if Mr.Kiely was not removed from the case, the felony hearing would have been waived. So in order to uphold the felony hearing after removing Mr.Kiely, he insisted to go pro se if a lawyer was not assigned to him on the adjourned date. Nothing in the record establishes that appellant knowingly agreed to proceed in counsel's absence (CPL 180.10[5]). The local court's failure to assign new counsel at arraignment, deprived appellant of the right to the assistance of counsel as guaranteed by both the Federal and State Constitutions (see U.S. Const., 6th Amdt; N.Y. Const., Art.I, sec 6; see, also, CPL 180.10). An advisor is not equivalent to the right to assistance of counsel that the Sixth Amendment guaranteed.

Furthermore, appellant was indicted on June 27, 2003, three

26

days before the scheduled felony hearing. Thus, since appellant was
being held on the basis of the felony hearing, the prosecutor was
required to inform appellant of the Grand Jury proceeding, Whether
it was pending, in progress or about to occur, and accord him a
reasonable time to exercise his right to appear as a witness therein
(see CPL § 190.50[5][a]). The fact that the exception to CPL 190.50
clearly illustrates that a defendant or his attorney must be
notified of the prospective Grand Jury proceeding, simplifies that
appellant is entitled to the assistance of counsel prior to, and
at that stage of the proceedings as well. However, by presenting
the case to the Grand Jury and voting an indictment while the
felony hearing was still pending in local court, deprived appellant
of the right to assistance of counsel at the Grand Jury proceeding,
and as a result, appellant was effectively precluded from exerci-
sing his right to appear and testify before the Grand Jury which
voted to indict him (see People v. Lincoln, 80 A.D.2d 877, 878
[2nd Dep't. 1981]; People v. Fields, 258 A.D. 2d 593 [2nd Dep't.
1999]).

[I]f appellate counsel had made the argument [he] should have
made, [appellant's] conviction would have been reversed. It follows
that [appellant] was deprived of his constitutional right to
effective assistance of appellate counsel. People v. Turner, 5 ·
N.Y.3d 476, 485 (2005).

### Point Two

**Appellate Counsel Was Ineffective For Failing To Raise Trial Counsel's Ineffectiveness For Failing To Move To Dismiss The Indictment In Violation Of Appellant's Right To Be Notified Of Grand Jury Action, And Denial Right Violated The Due Process And Equal Protection Clauses Of The Fourteenth Amendment.**

Had appellate counsel raise this issue on appellant's direct appeal, the conviction would have resulted in reversal and the indictment dismissed. See CPL 190.50(5)(a),(c). The facts described in Point One applies equally to the present claim as well.

The District Attorney was obligated to notify appellant that such Grand Jury proceeding against him was pending, in progress or about to occur because appellant was arraigned in local court on a currently undisposed of felony complaint charging the offense that was presented to the Grand Jury. It is well established long before appellant's trial and direct appeal that any indictment obtained in violation of the statutory notice and waiver provisions "is invalid" and "must be dismissed" upon timely motion (see People v. Smith, 87 N.Y.2d 715, 720 [1996]); This trial counsel failed to do. Trial counsel only had five days within the arraignment to move to dismiss the indictment on the grounds that the prosecutor failed to notify appellant of the Grand Jury proceeding that was in progress or about to occur. Failure to do so according to statute rendered appellant's contention to challenge the indictment on such ground waived. Trial counsel was ineffective for failing to move to dismiss the indictment because prior to the arraignment

28

on the indictment he was aware that appellant did not have an att-

orney at the time the undisposed of felony complaint was still

pending and the prosecutor was mandated to notify appellant person-

ally that it submitted the case to the Grand Jury. In order to

circumvent the scheduled felony hearing, the prosecutor presented

the case to the Grand Jury without notice to appellant that it was

doing so. Once a State has created a right, such as that of a def-

endant to appear before a grand jury, it cannot cause that right

to be forfeited in a manner which is arbitrary or fundamentally un-

fair. See Evitts v. Lucey, 469 U.S. 387 (1985). In Evitts, the

Supreme Court held that the Due Process Clause guarantees a criminal

defendant the effective assistance of counsel on his first appeal

as of right. In so holding, the Court ruled that while the Con-

stitution "does not require States to grant appeals as of right to

criminal defendants seeking to review alleged trial court errors

. . . if a State has created appellate courts . . . the procedures

used in deciding appeals must comport with the demands of the Due

Process and Equal Protection Clauses of the Constitution". Id. at

393.  A State has great discretion in setting policies governing

parole decisions, but it must nonetheless make those decisions in

accord with the Due Process Clause. See Morrissey v. Brewer, 408

U.S. 471, 481-484 (1972). In short, when a State opts to act in a

field where its action has significant discretionary elements, it

must nonetheless act in accord with the dictates of the Constit-

ution--and, in particular, in accord with the Due Process Clause.

Evitts v. Lucey, 469 U.S. at 400-01 (emphasis added). By the plain

langauge of CPL 190.50(5)(a),"The district attorney is not obliged to inform * * * a person that * * * a grand jury proceeding against him is pending, in progress or about to occur unless such person is a defendant who has been arraigned in a local criminal court upon a currently undisposed of felony complaint charging an offense which is a subject of the prospective or pending grand jury proceeding. In such case, the district attorney must notify the defendant or his attorney of the prospective or pending grand jury proceeding and accord the defendant a reasonable time to exercise his right to appear as a witness therein" (emphasis supplied). Cf., People v. Munoz, 207 A.D.2d 418, 419 (2nd Dep't. 1994), because the defendant was not arraigned in a local criminal court upon the felony complaint the prosecutor had no duty to inform the defendant of his right to testify before the Grand Jury. In People v. Legree, 176 A.D.2d 983 (3rd Dep't. 1991), the Third Department held that because there was no pending felony complaint in a local criminal court upon which defendant had been arraigned, the District Attorney was under no obligation to notify defendant that a Grand Jury was going to convene. In People v. Conde, 131 A.D.2d 586 (2nd Dep't. 1987), this Court held that since the defendant had been held for the action of the Grand Jury and since he was, therefore, no longer the subject of an undisposed of felony complaint in a local criminal court, the District Attorney was under no affirmative obligation to notify the defendant of prospective or pending Grand Jury proceedings. Here, in this case, appellant was not being held for the action of the Grand Jury, but he was held for the action of the felony hearing

on a undisposed of felony complaint in local criminal court. The Due Process and Equal Protection Clauses of the Fourteenth Amendment was violated by failing to notify appellant of the Grand Jury proceedings and accord him a reasonable time to exercise his right to appear as a witness.

On July 18, 2003, newly appointed counsel Kevin Griffin should have at least move for an extension to enlarge the time to make inquiries to have the indictment dismissed because he was well aware of the facts and circumstances of the case when he was assigned as appellant's advisor before the arraignment on the indictment. See People v. Backman, 274 A.D.2d 432 433 (2nd Dep't. 2000), failure to make motion to dismiss indictment within five days of arraignment on indictment was not fatal, where time was enlarged by arraigning court to permit newly assigned counsel time to make inquiries in support of motion. Instead, Mr.Griffin allowed the five day limitation to dismiss the indictment to expire. He unsuccessfully argued at length for a bail application at the arraigning court, rather than moving on a timely motion to dismiss the indictment. See CPL 190.50 (5) (c). When Mr.Griffin was appellant's advisor, he was aware that appellant was not given any notice at all; he was aware that the People circumvented the felony hearing by obtaining an indictment; he knew or should have known that appellant was supposed to be served personally with notice of his right to appear before the grand jury as provided by law. In light of these facts known to Mr.Griffin, there could be no reason why any competent counsel would not have move to dismiss the indictment , especially

31

since appellant was not given notice when he was defending himself without an appointed attorney. Appellate counsel was ineffective for failing to raise defense counsel's ineffectiveness on direct appeal. Appellant was deprived of the effective assistance of appellate counsel on direct appeal.

### Point Three

**Appellate Counsel Was Ineffective For Failing To Raise That Appellant Was Denied His Due Process Right To Trial By Jury And Fair Trial When The Trial Court Completely Failed To Respond, Not Once, But Twice, To Jury's Substantive Inquiries.**

It is well settled that [t]he Sixth Amendment in terms guarantees "trial by an impartial jury . . . " in federal criminal prosecutions. Because "trial by jury in criminal cases is fundamental to the American scheme of justice," the Due Process Clause of the Fourteenth Amendment guarantees the same right in state criminal prosecutions. Duncan v. Louisiana, 391 U.S. 145, 149 (1968).

"In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors . . . . 'A fair trial in a fair tribunal is a basic requirement of due process'. In re Murchison, 349 U.S. 133, 136 (1955). In the ultimate analysis, only the jury can strip a man of his liberty or his life. In the language of Lord Coke, a juror must be as 'indifferent as he stands unsworne'. Co.Litt. 155b. His verdict must be based upon the evidence developed at the trial".

Because the trial court did not have a discretion whether

or not it should answer the jury's question before it suspended deliberations, and failure to satisfy additional request following further deliberations deprived appellant of his due process rights to trial by jury and fair trial.  The excerpts of the record demonstrate that on April 23, 2004, a Friday afternoon during deliberations, the jury sent a note to the court requesting, among other things, the "testimony of mother, Virginia and Jasmine in regards to positioning of Virginia when she closed the door". The jury note was marked as Court Exhibit 6, and the court suggested to both counsel's in open court without the presence of the jury that it respond to the third request in the note and not the last request for readbacks, because it was going to take some searching of the record by the court reporter. Both counsel's agreed to the court's procedure. See Ex."A", Trial Transcripts (1264-1265). When the jury was returned to the courtroom, the court told the jury that "although the readback, although it would be very quick, it is going to take some searching by the court reporter. I'm not going to be able to do that today". . . . (1266). After the jury was shown the video and heard the audiotape, the court suspended deliberations and instructed the jury that it would complete their request the following Monday when they return to the juryroom. The court clerk insisted that there were other things to do besides the readback on Monday, and they would be unable to satisfy the jury's request. The jurors were discharged until Monday morning (1268-1270).

On the morning of April 26, 2004, the jury sent another note

33

to the court requesting, among other things, the testimony from Jasmine and Virginia regarding whether Willie was holding a knife while having the baby out the window. This note was marked as Court Exhibit 7. The court then informed the parties out of the presence of the jury that there was no testimony one way or the other regarding that request (1273-1274). When the jury returned to the courtroom, the court told the jury that there was no testimony on that point (1275).

The jury is entitled to the guidance of the court and may not be relegated to its own unfettered course of procedure (see People v. Hall, 101 A.D.2d 956, 957[3rd Dep't. 1984]). Although the court directed the jury not resume deliberations the following Monday until it completed their request and promised them that it would do so as soon as they return to the juryroom (1268-1270), this resulted in a mode of proceedings error, in that, the court failed to fullfill its responsibility. Failure of the court to retain control of deliberations will constitute a denial of the right to trial by jury. In People v. Ahmed, 66 N.Y.2d 307, 310 (1985), the Court of Appeals held that the defendant was deprived of his right to trial by jury because the judge absent himself from the courtroom for portions of the jury's deliberations and allowing his law secretary to discharge some of its duties. The Court stated that [t]he failure of a judge to retain control of deliberations, because of its impact on the constitutional guarantee of trial by jury, also implicates the organization of the court or mode of proceedings

34

prescribed by law, and such failure presents a question of law for our review even absent timely objection. The facts of this case are partially distinguishable from Ahmed, because the judge here was present and answered only some of the jury's requests as oppose to delegating his duties to his court clerk. But though the judge was physically present throughout this critical stage of the trial, his supervision when most needed was unhelpful to the jury. An integral component of a defendant's right to trial by jury is the supervision of a Judge (see People v. Hernandez, 94 N.Y.2d 552, 555 [2000]). Nor could defense counsel or the prosecutor waive appellant's right to trial by jury when they consented to the procedure employed by the court. In order for appellant to waive his right to trial by jury, it "must be in writing and must be signed by [him] in person in open court in the presence of the court, and with the approval of the court (CPL 320.10[2]); see also, People v. Gajadhar, 9 N.Y. 3d 438 (2007)(waiver of trial by jury of 12 requires compliance with constitutionally mandated procedure). Appellant did not sign any waiver in this case. The jury was entitled to hear the prosecution witnesses testimony before they were directed to suspend deliberations. The trial judge, by telling the jury "although it would be very quick, it is going to take some searching by the court reporter. I'm not going to be able to do that today"(1266), was no less than a refusal to clarify their doubts (see People v. Gonzalez, 293 N.Y.2d 259, 261 [1944]). The trial judge also erred by delaying the proceedings for as long as two complete days (see People v. Hall, supra, the trial court erred by permitting a two-

35

hour delay to take place between a jury question and court's response; see also People v. Lourido, 70 N.Y2d 428, 431 [1987], the failure of the court over a period of three hours to satify the jury's request for a readback of the victim's cross-examinati-on and the court's acceptance of a verdict without an inquiry as to whether that unsatisfied request had any continuing relevance for the jury was also reversible error). The court's actions influenced the jury to rescind its request to hear testimony again (People v. Arcarola, 96 A.D.2d 1081, 1082 [2nd Dep't. 1983]). When the jury returned the following Monday, they requested a readback for additional testimony of Jasmine and Virginia which were compl-etely different from their initial request (1273-1274), but the court did not respond to any of them. Not every failure to comply with a jury's request for information during deliberation is reversible error (People v. Miller, 6 N.Y.2d 152, 156 [1959]). The test is whether the failure to respond seriously prejudiced the defendant (People v. Jackson, 20 N.Y.2d 440, 454-455 [1967]). Appellant was seriously prejudiced when the court did not comply to either of the jury's request. The first request dealt soley with Virginia's and Jasmine's testimony regarding the positioning of virginia when she closed the door. Virginia's positioning at the door was a critical issue for the jury. Virginia's actions at the time of the incident and her testimony at trial was heavily relied on by the prosecutor to convict appellant of attempted murder in the second degree. Her testimony was a key component to determine appellant's guilt or innocence to the attempt murder

36

charge. During the prosecutor's opening statement, the jury were specifically told that Virginia witnessed appellant forcibly threw her granddaughter out of an eight-story window of her apartment to what she believed could only be certain death (39-40). The prosecutor further stated, "[f]or this despicable criminal act, the defendant is charged with attempted murder in the second degree". On April 21, 2004, Virginia stated on direct examination that when she heard Jasmine yelling and crying by her bedroom door she ran to her aid only to find appellant holding his daughter out of the window. After witnessing this act, she ran for her phone (936-938). While Virginia was trying to call the cops she heard appellant say "[i]ts too late, she called the cops". So she ran back to Jasmine's door. When she arrived, appellant had the baby by her foot and her hand and looked her dead in the face and threw her granddaughter out the window. When asked where was Jasmine at the time she witnessed this tragedy, she said Jasmine was in the kitchen somewhere (941-942).

On April 22, 2004, Virginia's direct testimony continued. It was completely different from the day before. Now, Virginia testifies that after appellant threw the baby out the window, Jasmine was next to her coming up the hallway, she then flung the phone at him and slammed the door so Jasmine would not see her baby out the window (947- 948). On cross-examination, Virginia's testimony is that Jasmine was in the livingroom somewhere while she was calling the cops (1000), but consistent with her direct testimony she said Jasmine was coming up the hallway when she flung the phone and

37

slammed the door (1000-1004). It should be noted that Virginia clearly testified on cross-examination that appellant was holding the baby out the window with his right hand (994-995).

However, none of the events that was stated by Virginia regarding her positioning when she closed the door, was ever asserted by Jasmine. Jasmine's recollection of the events were completely different from Virginia's. On direct examination, Jasmine testified that when her mother (Virginia) ran to her aid, as soon as she arrived, she stepped in front of her and closed the door. When Virginia opened the door, the baby was gone (455-457). Jasmine's cross-examination was essentially the same as her direct testimony, except for the fact that appellant was holding the baby with his left hand out the window, and may have had the knife in his right hand. See Ex"A" (579-580).

In light of the above facts, had this jury been provided with the readbacks of Virginia and Jasmine's testimony regarding the positioning of Virginia when she closed the door, Virginia's story would fail. Resolution of issues of credibility, as well as the weight to be accorded to the evidence presented, are primarily questions to be determined by the jury, which saw and heard the witnesses (People v. Avilla, 212 A.D.2d 800 [2nd Dep't. 1995]). According to Jasmine, if Virginia stepped in front of her and closed the door when she arrived at Jasmine's bedroom, it would have been impossible for Jasmine to have been anywhere else other than standing in back of Virginia at the time Virginia closed the door. But, according to Virginia's testimony, Jasmine was some-

where in the kitchen, the livingroom,or coming up the hallway when she closed the door (941-942, 1000-1004). Virginia's testimony that appellant looked her dead in the face while throwing his daughter through the window, only occurred after Virginia ran to get her phone and thereafter flung the phone at appellant and slammed the door so Jasmine would not see her daughter going out the window 941, 947-948). Jasmine testified to none of these activities, much less that her mother threw the phone at appellant then slammed the door.  The jury was very skeptical of these two stories; this is why they requested readbacks for both Jasmine and Virginia's testimony regarding the positioning of Virginia when she closed the door. The jury would have found it hard to believe that two witnesses who were both present at the same time and place these events unfolded, each to have a complete different version of what actually happened. With that being said, since the issue of Virginia closing the door after witnessing appellant throw her granddaughter through the window was so important to this jury to convict appellant of attempted murder in the second degree, appellant was seriously prejudiced when the jury was deprived of hearing this testimony again. The prosecutor emphasized the importance of Virginia's testimony to these events through opening statements and summation to secure a verdict of the attempt murder charge (39-40, 1164-1165). Furthermore, since it is clear that the witnesses testimony was conflicting and contained many discrepancies, careful consideration by the jury of the testimon[ies] was necessary to reach a verdict (see People v. Andino, 113 A.D.2d 944, 945

[2nd Dep't. 1985]).

Additionally, appellant was seriously prejudiced by the jury being deprived of another request to hear testimony from Jasmine and Virginia regarding whether appellant had a knife while hanging the baby out the window. The court reporter could not find this testimony, the court told the parties there was none at all regarding that request. The court informed the jury that there was no testimony on that point (1274-1275). It is impossible that all 12 juror's would have all been wrong about hearing this testimony at trial. Unfortunately, it existed through Jasmine's testimony, and not Virginia's (579). This testimony was also a crucial factual determination of the jury's deliberation, because Jasmine testified that while appellant grabbed the baby and held her out the window with his left hand, he may have had the knife he had previously threatened her with in his right hand. But when Virginia testified about her encounter with appellant, she stated that appellant was holding the baby out the window with his right hand (994-995). If appellant had the baby in his left hand, he could not have also had the baby in his right hand, especially if he may have had a knife in that hand.

While CPL 310.30 allows the court discretion in responding to a jury request, the court "must respond meaningfully to the jury's inquiries" (People v. Almodovar, 62 N.Y.2d 126, 131 [1984] citing People v. Malloy, 55 N.Y.2d 296, 301 [1982]). It goes without saying that the court's refusal to respond in any meaningful way to the jury's request for the readback of the testimony of

40

two witnesses constituted reversible error. "[T]he court's response was not meaningful because it was no response at all" (see People v. Smith, 248 A.D.2d 413, 414 [2nd Dep't. 1998]). [W]hile a failure to respond meaningfully to a jury note is not reversible in the absence of serious prejudice, here serious prejudice is established because if the jury determined that [Virginia's complete testimony was untrue as to witnessing appellant throwing his little girl through the window], the remaining evidence of [appellant's] guilt would have been insufficient (People v. Woods, 290 A.D.2d 346, 348 [1st Dep't. 2002]) to the attempt murder charge.

Had appellate counsel raise that appellant was denied his due process rights to trial by jury and fair trial because the trial court failed to respond to more than one jury notes, appellant's conviction would have been reversed on the law (see People v. Smith, 68 A.D.3d 1021 [2nd Dep't. 2009]).


Point Four


Appellate Counsel Was Ineffective For Failing To Raise On Direct Appeal That The Evidence At Trial Was Insufficient As A Matter Of Law To Sustain A Conviction Of Assault In The Second Degree.


The insufficiency claim is clearly preserved for appellate review (CPL 470.05[2]), and had appellate counsel argue on direct appeal that the evidence failed to establish that appellant caused "physical injury" to sustain a conviction of assault in the second degree, appellant's judgment of conviction would have been reversed on the law and that count of the indictment dismissed.

41

Appellant's conviction for assault in the second degree
(PL 120.05[6]) violated his right to Due Process, under the State
and Federal Constitutions, as the evidence at trial was insuffici-
ient as a matter of law to prove beyond a reasonable doubt that
appellant caused "physical injury" under assault in the second
degree, an essential element of the assault charge. The United
States Supreme Court has held that "the Due Process Clause of the
Fourteenth Amendment forbids a State to convict a person of a
crime without proving the elements of that crime beyond a reason-
able doubt". Fiore v. White, 531 U.S. 255, 228-29 (2001); see -
Jackson v. Virginia, 443 U.S. 307, 316 (1979); In re Winship, 397-
U.S. 358, 364 (1970). Thus, a defendant's conviction of a partic-
ular crime must be reversed if no rational juror could have found
the defendant guilty of that crime beyond a reasonable doubt. See
Jackson, 443 U.S. at 324.

The evidence at trial established that the acts committed by
appellant that took place at the cemetery were not all related to
the assault in the second degree charge. And even if they were,
there was still insufficient evidence to sustain a conviction. The
People relied on the bitting of appellant to substantiate the acts
of "physical injury" to the victim. See Ex."A" (1076). That
incident took place at a parking lot one block away from the
victim's home (421-422). Although the alleged black eye was not
mentioned as part of the incident at the cemetery, this act occur-
red at the victim's apartment long after the incident at the
cemetery (457-458).

42

On direct-examination, the victim (Jasmine Gilleo) testified that while at the cemetery she found a knife that she had carried with her. She then tried to open it and appellant seen her open it and grabbed the handle pulling it away from her. She said her finger's was cut a little bit. Jasmine further testified that she jumped out of the car and ran down the street, appellant grabbed her by the hair, dragged her back into the cemetery and kicked her in the face. she was screaming and for some strange reason appell- ant stopped, told her to get up and gave her the knife and said "kill me" (436). On cross-examination, Jasmine testified that it was hardly a cut and there were no scars. She don't recall bleeding (555-556).

Doctor Isaac Sapoznikow, testified on direct that when he teated Jasmine at Phelps Memorial Hospital he discovered that Jas- mine had proof of physical trauma in her face. That there were bruises to the left eye and right side of her face; contusions and bite marks (701). She was sent for an x-ray and prescribed oral antibiotics for the bite marks (702). Dr.Sapoznikow was asked to describe to the jury what the injuries represent by looking at several photos (703).

At the end of the People's case or at the close of all the evidence, defense counsel moved for a trial order of dismissal to dismiss the entire indictment that the People have failed to meet their burden of proof to each and every count, and that he would like to specifically address individual accounts [sic](1048- 1049). Defense counsel clearly stated: "Now, going to new count 11

43

assault in the second degree[1] which is in the Bill of Particulars

is referring to the kicking and alleged kicking and bruising in

the face, I don't believe that the injuries themselves rise to the

level of felony and my argument is that it is not in the commiss-

ion of a felony, so that it would not qualify as assault in the

second degree" (1058-1059). Defense counsel further stated, "[n]ew

count 12 is the one that's been reduced to attempted assault in

the second degree. [A]ccording to the bill of particulars, it

says that the defendant grabbed the knife from the victim's hand,

pulling the blade across her palm causing lacerations and bleeding.

I don't think there is any evidence of her suffering lacerations

from the knife being pulled out of her hand"(1059)."She said she

didn't have any cut, she didn't have any bleeding and I think she

used the word incidental"(1060). In concluding that there was no

evidence for the specific counts, trial counsel said,"I think I

have covered every count. I don't know whether I numbered them

right, old or new, but I think I covered every count" (1061). The

   The People's position was that appellant caused the victim

"physical injury" because he was kicking her, bitting, pulling

her hair and caused injuries to her face" (1076). According to

the People , these acts all occurred at the cemetery (1076-1077).

---

   [1]It should be noted that the counts were renumbered prior to
defense counsel moving to dismiss the assault in the second degree
charge.

The court found that there was legal sufficient evidence to support

the charges and denied counsel's application for a trial order of

dismissal (1083).

Prior to summation and final charging to the jury, a number

of counts was dismissed and the remaining counts were renumbered

once again. Assault in the second degree was now count 10.(1088).

The court charged the jury the following in pertinent part:

"[n]ow, we turn to the 10th count which also charges assault in the

second degree. In order for the Defendant to be found guilty of

this crime of assault in the second degree, the People are required

to prove from all the evidence in the case beyond a reasonable

doubt both of the following elements.

One, that on or before June 21, 2003, in the County of West-

chester, in the cemetery, the Defendant Willie Williams committed

criminal contempt in the first degree and/or unlawful imprisonment

in the first degree and that in the course of and in furtherance

of the criminal contempt in the first degree or the unlawful

imprisonment in the first degree or immediate flight therefrom,

the Defendant caused physical injury to Jasmine Gilleo and that

Jasmine Gilleo was not a participant in the felony.

Therefore, if you feel that the People have proven both

these elements, you must find the Defendant guilty of the crime

of assault in the second degree charged in the 10th count (1236).

. . . . .

Appellant was convicted of assault in the second degree

under the 10th count of the indictment (1293).

45

According to the penal law, "A person is guilty of assault in the second degree when . . . 6. In the course of and in furtherance of the commission or attempted commission of a felony . . . or of immediate flight therefrom, he, or another participant if there be any, causes physical injury to a person other than one of the participants. Penal Law § 120.05(6). By definition, "physical injury" means impairment of physical condition or substantial pain. See Penal Law § 10.00(9).

The evidence adduced at trial was legally insufficient to establish that the complainant suffered "physical impairment" (see People v. Mc Dowell, 28 N.Y.2d 373 [1971]), or "substantial pain" ( Matter of Philip A., 49 N.Y.2d 198, 200[1980]). There was no testimony or medical records stating whether she was in any sort of pain from the alleged incident. Although Jasmine testified that she was kicked in the face, she did not elaborate on her injuries (see People v. Holden, 148 A.D.2d 635, 635 [2nd Dep't. 1989]). [T]he fact that [she] "was examined at a hospital sheds no light on the nature of the pain" (id.). Assuming arguendo, that the incident of the bitting and the black eye did occur at the cemetery with the alleged kicking and bruising in the face of Jasmine; it wouldn't have made a difference because the People have failed to establish that Jasmine sustained physical injury, a necessary element of the instant second degree assault charge. In People v. Baum, 143 A.D. 2d 1024 (2nd Dep't. 1988), the victim sustained several punches to the eye as a result of his encounter with the defendant who was therefore charged with assault in the third degree. This Court

46

held that the People did not adduce the minimum threshold level of proof of substantial pain . . . , in that they failed to develop with particularity the degree and duration of the pain sustained by the complainant and also failed to offer the hospital record in evidence (id. at 1025). Here, in this case, since there was no evidence to support or even reduce assault in the second degree to assault in the third degree, the trial court was required to grant defense counsel's application pursuant to CPL § 290.10 (1)(a), at a time when the error complained of could readily have been corrected.

Appellant's conviction of assault in the second degree is a violation of his rights to due process, as no rational juror could have concluded on the evidence presented at trial that he was guilty of that crime beyond a reasonable doubt. Appellate counsel was ineffective for omitting this claim on direct appeal (see People v. Turner, 5 N.Y.3d 476 [2005]).

CONCLUSION

WHEREFORE, Defendant-Appellant prays that this Court grant the Writ of Error Coram Nobis to have Appellant brought before it to the end that he may be discharged from his unconstitutional confinement and restraint and to grant such other relief as may be appropriate and to dispose of the matter as law and justice require.

47

# EXHIBIT B

Case 7:12-cv-08164-KMK-LMS   Document 94   Filed 07/06/17   Page 56 of 87
Case 7:12-cv-08164-KMK-LMS   Document 87   Filed 05/18/17   Page 1 of 3
Case 7:12-cv-08164-KMK-LMS   Document 86   Filed 04/27/17   Page 1 of 5

MEMO ENDORSED    of 3

DOCKET
ELECTRONICALLY FILED
DOC#:

Willie Williams 04-A-3775
P.O.Box 2001 Upstate CF
Malone NY, 12953

DATE: 4/21/17
12-CIV- 8164 (KMK)(LMS)

TO: CHIEF COURT CLERK USDCSD
SOUTHERN DISTRICT OF NEW YORK
DANIEL PATRICK MOYNIHAN,
U.S. COURTHOUSE
500 PEARL ST.
NEW YORK, NY 10007-1312

RECEIVED
APR 27 2017
U.S.D.C.
WP

RE: C.P.L. 440.20 CONSIDERATION

CLERK OF THE COURT,
        Odello Ann How ARE you. PLEASE

BE AS SO KIND AS TO ACCEPT THIS

LETTER LIEU OF A FORMER MOTION ON

THE PROCEEDING AS THIS LETTER IS NOT

ONLY TO REMIND THE COURT OF THE

C.P.L. 440.20 MOTION THAT THIS PETITIONER

SUBMITTED TO THE LOWER COURT SOME

TIME AGO WHICH WAS DENIED, THEN

APPEALED TO THE SECOND JUDICIAL APPELLATE

DEPT WHERE MOTION WAS ALSO DENIED

THEN SUBMITTED TO STATE COURT OF APPEALS

Case 7:12-cv-08164-KMK-LMS  Document 94  Filed 07/06/17  Page 57 of 87
Case 7:12-cv-08164-KMK-LMS  Document 87  Filed 05/18/17  Page 2 of 3
Case 7:12-cv-08164-KMK-LMS  Document 86  Filed 04/27/17  Page 2 of 5

2 of 3

WHERE-UPON DECISION AND ANSWER IS ATTACHED HEREWITH

THIS PETITIONER WOULD LIKE TO INFORM THIS COURT OF THE FACT THAT THE DISTRICT ATTORNEY'S OPPOSITION TO PETITIONER'S REQUEST FOR PERMISSION OF CONSOLIDATION/CONSIDERATION OF SAID C.P.L. 440.20 IN ITS ENTIRETY WITH ALREADY PENDING PETITION/PAPERS BEFORE YOUR COURT IS THE ONLY RESPONSE THIS PETITIONER RECEIVED IN REGARDS TO SUCH A REQUEST. EVEN AS THIS PETITIONER SOUGHT PERMISSION TO REBUT/OPPOSE THE OPPOSITION, THERE HAS STILL BEEN NO REPLY TO GRANT OR DENY ANY OF THE ABOVE MENTIONED FROM THIS COURT. (THIS PETITIONER HAS BEEN BROUGHT TO DOWNSTATE 2 OR 3 TIMES WITH OTHER RELATED MATTERS BUT ANY AND ALL MAIL RECEIVED WAS HELD UNTIL HIS RETURN.)

Case 7:12-cv-08164-KMK-LMS   Document 94   Filed 07/06/17   Page 58 of 87
Case 7:12-cv-08164-KMK-LMS   Document 87   Filed 05/18/17   Page 3 of 3
Case 7:12-cv-08164-KMK-LMS   Document 86   Filed 04/27/17   Page 3 of 5

3 of 3

So Now That The State Court of Appeals Has Made The Enclosed Determination This Petitioner Wants To Know If His C.P.L. 440.20, (With All Replies, Responses etc.) Can Either Be Consolidated With Already pending papers Before This Court, Or Reviewed separately And Decided On With Out Disrupting Already existing papers/petition In Front Of This Court While At The Stage We Are At? Please Let Me Know At Your Earliest Convenience As I Humbly Await Your Reply And Thank You So Very Much For Your Time And Assistance In The Matter. Until Then, I Remain

Respectfully

OCi FILE
8/22/was

Petitioner may file a motion to Amend the Petition by June 14, 2017. Respondent's opposition is due by July 14, 2017. Respondent is further directed to respond to Petitioner's objections (Dkt. No. 77) by June 14, 2017.

So Ordered,

5/17/17

# AFFIDAVIT OF SERVICE

STATE OF NEW YORK   )

                             ) ss.:

COUNTY OF SULLIVAN  )

I, __WILLIE WILLIAMS_____, swears under penalty of perjury that:

I am the _____DEFENDANT_____ in the enclosed action.

I have on this __14__ day of __March_____ 20_16_, Placed and submitted within the

institutional mailbox located at Sullivan Correctional Facility, P.O. Box – 116, 325 Riverside

Drive, Fallsburg, N.Y. 12733 the following:

         Motion to set aside sentence (440.20)
         and supporting documents

       To be duly mailed and delivered by via the United States Postal Service upon the

following party[s]:   Hon. Kenneth H. Lange
                  Westchester County Supreme Court
                  111 Dr. Martin Luther king Jr. BLVD.
                  White Plains NY 10601

D.A Janet Defiore
Westchester County Supreme Court
111 Dr. Martin Luther King Jr. Blvd.
White Plains NY 10601

                                       Sullivan Correctional Facility
                                       P.O. Box – 116
                                       Fallsburg, N.Y. 12733-0116

Sworn to before me this

_8_ day of March_____, 20_16_

Raymond J. Fernekes
N O T A R Y – P U B L I C

RAYMOND J. FERNEKES
NOTARY PUBLIC STATE OF N.Y.
#01FE6057626
QUALIFIED IN ORANGE COUNTY
COMMISSION EXPIRES 04/23/19

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF WESTCHESTER

_____

THE PEOPLE OF THE STATE OF NEW YORK

     -AGAINST-

    WILLIE WILLIAMS,

         Defendant

_____

AFFIDAVIT IN SUPPORT

MOTION TO SET ASIDE

SENTENCE PURSUANT TO

C.P.L 440.20

Indictment # 00870-D-2003

STATE OF NEW YORK)

COUNTY OF WESTCHESTER) SS:

WILLIE WILLIAMS, being duly sworn, deposes and says:

1. I am the defendant herein and I am fully aware with all the facts and circumstances of the case.

2. On June 25th 2004, defendant was sentenced to 25 years as a determinate term and an additional 5 years of post-release supervision and also sentenced to a consecutive term of 7 years determinate with 5 years of post-release supervision. (See Exhibit A)

3. Defendant herby respectfully submits this affidavit in support of a motion to set aside sentence pursuant to C.P.L 440.20, upon the grounds that the sentence is unauthorized, illegally imposed and otherwise invalid as a matter of law.

4. Penal Law 70.02 (3) (a) clearly states in part:
   "For a class B felony, the term must be at least five years and [must] not exceed twenty-five years"

5. When post-release supervision was added together with the maximum of the term imposed, the resulting sentence exceeded the maximum authorized term of punishment which is twenty-five years.

6. The imposition of the five years post-release supervision, in addition with the maximum term of 25 years of imprisonment is unauthorized, illegally imposed, and otherwise invalid as a matter of law, and is in direct violation of defendant's State and Federal right to Due Process of law.

7. The current sentence exceeding the statutory maximum of 25 years has exposed defendant to greater and additional punishment without Due Process of Law.

8. The United States Constitution requires that any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt.

9. In **People V. Vigo,** 100 A.D. 2d 823 (1st Dept. 1984), the first department modified a sentence for manslaughter in the first degree where it was held that the resulting sentence exceeded the maximum authorized term of imprisonment for the crime, which is 25 years. Mckinney Penal Law 70.02 (3) (a) 125.20.

10. In **People V. Trojan,** 73 A.D. 3d 818 (2nd Dept. 2010), the second department modified a sentence and held that the sentence for attempted murder in the second degree was improper to the extent that it exceeded a determinate term of 20 years of imprisonment to be followed by a period of 5 years of post-release supervision.

11. Defendant avers that the sentence imposed upon him is illegal to the extent that it exceeds a determinate term of 25 years as well as the determinate tem of 7 years imprisonment.

12. Unlawfully increasing the penal consequences and subjecting the defendant to illegal, exorbitant punishment is where the court erred in failing to adhere to the statutory direction which precludes a trial court from having the authority to sentence a defendant beyond the scope of which the law will allow; but also, violating the defendant's Constitutional right to Due Process of law, and the right to be free from unusual punishment.

13. **Furthermore,** at the time of sentencing, defendant had a **"legitimate expectation"** that the period of post-release supervision would be included with in and concurrent with the imposed punishment of 25 years. (See Exhibit ₿)

14. As substantiated by the record, defendant was provided with a **"legitimate expectation"** that the 5 years of post-release supervision would be imposed with in the term of punishment of 25 years, not consecutive.

15. Not once during the entire sentencing procedure did the court express that the term of post-release supervision would be consecutive to the 25 years in prison. In fact, it is clearly reflected by the record that the period of post-release supervision was to be concurrent with the tem of punishment, subjecting the defendant to a sentence that did not exceed 25 years. (See Exhibit ₿)

WHEREFORE, defendant respectfully prays that this Honorable court enter a judgement to set aside his sentence as unauthorized and invalid, and resentence the defendant to a determinate tem of 20 years imprisonment followed by 5 years of post-release supervision and 4 years imprisonment with 3 years of post-release supervision and that as a matter of law both terms be united concurrently.

Respectfully submitted,

Willie Williams
Defendant, Pro -Se

Dated: 3 / 8 2016
Fallsburg NY

Sworn to me this ___8___ Day

Of ___March___ 2016

Notary Public

RAYMOND J. FERNEKES
NOTARY PUBLIC STATE OF N.Y.
#01FE6057626
QUALIFIED IN ORANGE COUNTY
COMMISSION EXPIRES 04 / 23 / 19

# EXHIBIT A

(of 440.20)

itation/Title
1998 Sess. Law News of N.Y. Legis. Memo Ch. 1, EXECUTIVE, PENAL--VIOLENT FELONY
OFFENDERS--SENTENCING, SUPERVISION

**\*50277 McKINNEY'S 1998 SESSION LAW NEWS OF NEW YORK**

Legislative Memorandum relating to Ch. 1
EXECUTIVE, PENAL--VIOLENT FELONY OFFENDERS--SENTENCING, SUPERVISION

**Memorandum in Support, New York State Senate**

PURPOSE:

 The bill establishes determinate sentences for first-time violent felony offenders and requires their incarceration for longer periods by mandating that they serve at least six-sevenths of their determinate sentences.  By requiring that first-time violent felony offenders receive determinate sentences, the bill eliminates discretionary release from prison.  For class B, C and D violent felony offenses, the bill also increases the minimum sentence of imprisonment that a court can impose.  To provide greater protection to the public, the bill also specifies that all violent felony offenders must serve a period of post-release supervision.  In this regard, the bill creates the methods for calculating periods of post-release supervision and establishes guidelines for the administration of post-release supervision.  The bill also expands victim notification when persons convicted of violent felonies and other offenses are released, abscond or escape from prison or are released to the supervision of the Division of Parole.

SUMMARY OF PROVISIONS:

 Section 1 adds a new section 60.12 to the Criminal Procedure Law to provide that a court may impose an indeterminate sentence on a defendant who was the subject of physical, sexual or psychological abuse by the victim or the intended victim of the crime.  If a determination of abuse is made, after a hearing, the court may impose an indeterminate, rather than a determinate sentence.

 Sections 2, 3 and 4 amend section 70.00 of the Penal Law.  These amendments:

 * eliminate indeterminate sentences for first violent felony offenders;

 * authorize determinate sentences for first violent felony offenders;

 * require that all determinate sentences be followed by an independent period of post-release supervision that is a distinct but integral part of the determinate sentence;

 * continue the provisions of existing law authorizing definite sentences of imprisonment for class D, E and certain class C felonies.

 Sections 5 through 9 amend section 70.02 of the Penal Law.  These amendments:

 * eliminate references to indeterminate sentences for violent felony offenders;

 **\*50278** * require that determinate sentences for violent felony offenders be imposed in whole or half year increments;

 * establish the following ranges for determinate sentences:  for Class B felonies a minimum of 5 years and a maximum of 25 years;  for Class C felonies a minimum of 3 1/2 years and a maximum of 15 years;  for Class D felonies a minimum of 2 years and a

© 2010 Thomson Reuters. No claim to original U.S. Govt. works.

1998 Sess. Law News of N.Y. Legis. Memo Ch. 1, EXECUTIVE, PENAL--VIOLENT FELONY FFENDERS--SENTENCING, SUPERVISION

maximum of 7 years;  for Class E felonies a minimum of 1  1/2 years and a maximum of 4 years, and

    * continue the narrow authority under existing law for a definite sentence of one year upon conviction of certain class D and E felonies involving weapons, and the similar authority to impose a definite sentence for other class D and E felonies.

    Sections 10 and 11 amend section 70.30 of the Penal Law to deny credit against a new sentence for any time spent in custody that is credited against a period of post-release supervision, and to credit served post-release supervision time from a vacated sentence against a new period of post-release supervision or a new sentence from the same offense or act.

    Sections 12, 13 and 14 of the bill amend section 70.40 of the Penal Law.  These amendments include post-release supervision in the types of release and after-incarceration programming, amend references to alleged parole violations, and extend provisions related declarations of delinquency to violations of conditions of post-release supervision.  In addition, Parole Board authority is conferred over offenders sentenced to post-lease supervision, but the Parole Board is not authorized to release these offenders from their determinate prison terms.

    Section 15 adds a new section, 70.45, to the Panel Law.  This section establishes the terms of post-release supervision and the methods for calculating periods of post-release supervision.  Under section 70.45:

    * a term of post-release supervision must be part of every determinate sentence;

    * violations of post-release supervision may result in reincarceration for a fixed term between six months and the unserved balance of the post-release supervision term, not to exceed 5 years;

    * the period of post-release supervision for first time Class B or C violent felony offenders is 2  1/2 years to 5 years;

    * the period of post-release supervision for first time Class D or E violent felony offenders is 1  1/2 years to 3 years;

© 2010 Thomson Reuters. No claim to original U.S. Govt. works.

itation/Title
1998 Sess. Law News of N.Y. Legis. Memo Ch. 1, EXECUTIVE, PENAL--VIOLENT FELONY
OFFENDERS--SENTENCING, SUPERVISION

## *50277 McKINNEY'S 1998 SESSION LAW NEWS OF NEW YORK

### Legislative Memorandum relating to Ch. 1
### EXECUTIVE, PENAL--VIOLENT FELONY OFFENDERS--SENTENCING, SUPERVISION

### Memorandum in Support, New York State Senate

PURPOSE:

   The bill establishes determinate sentences for first-time violent felony offenders and requires their incarceration for longer periods by mandating that they serve at least six-sevenths of their determinate sentences.  By requiring that first-time violent felony offenders receive determinate sentences, the bill eliminates discretionary release from prison.  For class B, C and D violent felony offenses, the bill also increases the minimum sentence of imprisonment that a court can impose.  To provide greater protection to the public, the bill also specifies that all violent felony offenders must serve a period of post-release supervision.  In this regard, the bill creates the methods for calculating periods of post-release supervision and establishes guidelines for the administration of post-release supervision.  The bill also expands victim notification when persons convicted of violent felonies and other offenses are released, abscond or escape from prison or are released to the supervision of the Division of Parole.

SUMMARY OF PROVISIONS:

   Section 1 adds a new section 60.12 to the Criminal Procedure Law to provide that a court may impose an indeterminate sentence on a defendant who was the subject of physical, sexual or psychological abuse by the victim or the intended victim of the crime.  If a determination of abuse is made, after a hearing, the court may impose an indeterminate, rather than a determinate sentence.

   Sections 2, 3 and 4 amend section 70.00 of the Penal Law.  These amendments:

   * eliminate indeterminate sentences for first violent felony offenders;

   * authorize determinate sentences for first violent felony offenders;

   * require that all determinate sentences be followed by an independent period of post-release supervision that is a distinct but integral part of the determinate sentence;

   * continue the provisions of existing law authorizing definite sentences of imprisonment for class D, E and certain class C felonies.

   Sections 5 through 9 amend section 70.02 of the Penal Law.  These amendments:

   * eliminate references to indeterminate sentences for violent felony offenders;

   *50278 * require that determinate sentences for violent felony offenders be imposed in whole or half year increments;

   * establish the following ranges for determinate sentences:  for Class B felonies a minimum of 5 years and a maximum of 25 years;  for Class C felonies a minimum of 3 1/2 years and a maximum of 15 years;  for Class D felonies a minimum of 2 years and a

© 2010 Thomson Reuters. No claim to original U.S. Govt. works.

1998 Sess. Law News of N.Y. Legis. Memo Ch. 1, EXECUTIVE, PENAL--VIOLENT FELONY
FFENDERS--SENTENCING, SUPERVISION

maximum of 7 years; for Class E felonies a minimum of 1 1/2 years and a maximum of 4 years, and

    * continue the narrow authority under existing law for a definite sentence of one year upon conviction of certain class D and E felonies involving weapons, and the similar authority to impose a definite sentence for other class D and E felonies.

    Sections 10 and 11 amend section 70.30 of the Penal Law to deny credit against a new sentence for any time spent in custody that is credited against a period of post-release supervision, and to credit served post-release supervision time from a vacated sentence against a new period of post-release supervision or a new sentence from the same offense or act.

    Sections 12, 13 and 14 of the bill amend section 70.40 of the Penal Law. These amendments include post-release supervision in e types of release and after-incarceration programming, amend references to alleged parole violations, and extend provisions related declarations of delinquency to violations of conditions of post-release supervision. In addition, Parole Board authority is conferred over offenders sentenced to post-lease supervision, but the Parole Board is not authorized to release these offenders from their eterminate prison terms.

    Section 15 adds a new section, 70.45, to the Panel Law. This section establishes the-terms of post-release supervision and the ethods for calculating periods of post-release supervision. Under section 70.45:

    * a term of post-release supervision must be part of every determinate sentence;

    * violations of post-release supervision may result in reincarceration for a fixed term between six months and the unserved balance of the post-release supervision term, not to exceed 5 years;

    * the period of post-release supervision for first time Class B or C violent felony offenders is 2 1/2 years to 5 years;

    * the period of post-release supervision for first time Class D or E violent felony offenders is 1 1/2 years to 3 years;

© 2010 Thomson Reuters. No claim to original U.S. Govt. works.

SENTENCE AND COMMITMENT

E OF NEW YORK
SU~REME /COUNTY COURT, COUNTY OF ___Westchester___
HON _____

The Westchester County Jail
certifies that time in the amount
days for the
INDICTMENT #/SCI # ___870 D/03___

THE PEOPLE OF THE STATE OF NEW YORK

VS

___Willie Williams___

INDICTED FOR: ___04/1377G___

SEX _M_   DOB _1/22/74_   NYSID # _66??80K_   DATE CRIME COMMITTED _6/2/63_

THE ABOVE NAMED DEFENDANT HAVING BEEN CONVICTED OF A (FELONY) (MSDR) BY (PLEA) (VERDICT) FOR:

| | CRIME and # OF COUNTS | LAW | SECTION | MIN.TERM(YRS) | MAX.TERM(YRS) | DEF.TERM |
|---|---|---|---|---|---|---|
| 1. | Att Murder | PL | 110 125.25 | | | 25 +5 PRS |
| 2. | Rob | | 150.25 | 3 1/2 | 7 | |
| 3. | Crim Contempt | | 215.51 | 2 | 4 | |
| 4. | Asst 2 | | 120.05 | | | |

* these Cts run concurrent to each other *   2 +5 PRS

___ Hate Crime   ___ Convicted as an Armed Felon   ___ Convicted as a Juvenile Offender   ___ Age at time crime committed   ✓ Other (see remarks)

___ Probation ___ Years   ___ License revoked   ___ A Fine of ___   Drug Type: _____
✓ Mandatory surcharge $ _300_   ✓ Victim's Assistance Fee $ _10_   Weapon Type: _____

_____ THE SENTENCE (S) IMPOSED HEREIN ON _____ SHALL RUN:

CONCURRENTLY with _____

CONSECUTIVELY with _____

_____ Found to be a YOUTHFUL OFFENDER

✓ Found to be a (SECOND) (PERSISTENT) (VIOLENT) Felony Offender

_____ Found to be a Second Child Sexual Assault Felony Offender

AND THAT SAID DEFENDANT BE AND HEREBY IS COMMITTED TO THE CUSTODY OF THE

✓ Department of Correctional Services of the State of New York until release in accordance with the law, and being a male/female person sixteen or older the NYS Dept. of Correctional Services is directed to deliver him/her to the custody of the NYS Department of Correctional Services as provided in 7 NYCRR part 103.

_____ Execute as a sentence of parole supervision pursuant to Section 410.91 of the C.P.L.

_____ Division for Youth of the State of New York in accordance with the law being a person LESS than sixteen (16) years of age at the time the crime was committed.

_____ TO BE HELD UNTIL THE JUDGMENT OF THE COURT IS SATISFIED

✓ TO THE NEW YORK STATE DEPT. OF CORRECTIONAL SERVICES PURSUANT TO SECTION 60.35 OF THE PENAL LAW OF THE STATE OF NEW YORK, A MANDATORY SURCHARGE AND VICTIM'S ASSISTANCE FEE IN THE AMOUNT OF $ _310_ HAS BEEN IMPOSED AND, TO DATE, THE DEFENDANT HAS FAILED TO PAY SAID AMOUNT.

REMARKS Sentences run consecutively to the others
Att 2   PL 120.05   7yrs +5 Pres / Att Murder PL 135.10  2-4yrs /
Agg Crim Contempt PL 215.53  3 1/2 - 7yrs   Att Asst 2  PL 110/120.05  2-4yrs/
Rob + DOP (4yrs) Att   Crim Con'l  PL 215.51  2-4yrs  Ny

DEFENDANT'S ADDRESS: _____

✓ AMENDED COMMITMENT   _____ ORIGINAL COMMITMENT

A TRUE EXTRACT OF THE MINUTES

_6/25/04_   ___Conway___
DATE   CLERK

___Conway___
SIGNATURE

___Sec___
TITLE   COURT CLERK

CERTIFIED JAIL TIME CREDIT ___387___

_____
SIGNATURE

___Records Officer___
TITLE

# EXHIBIT B

( of 440.20 )

Proceedings

1   going do rehash the trial.  I think the Court is

2   fully capable of remembering all the facts of the

3   trial without going into the intricate details as

4   counsel did.  The thing I want to point out is that

5   he does have a large criminal history, there's no

6   question.  We can't dispute that.  This is the first

7   crime of violence that he had been associated with.

8   That is not --

9        THE COURT:  There was a resisting arrest, wasn't

10   there?

11       MR. BENDISH:  I think that was a plea, Judge, to

12   accommodate.  It's his first violent, in my opinion,

13   first violent crime he'd been associated with.  He

14   does have the support of a large number of family

15   members who have been present during all of the

16   aspects of this case and are still present, some of

17   which have, as previously mentioned, written the

18   Court in support of him.

19       Basically, prior to the trial the District

20   Attorney was asking my client to plead guilty to the

21   indictment, and recommending 25 years to life.  He

22   went to trial -- not 25 to life, I misspoke; 25 years

23   determinate.  I don't suggest that he be punished for

24   going to trial, and I don't suggest that he be given

25   a badge of courage because of the numerous not guilty

Proceedings

26

1   not an accident; a deliberate act on your part, and

2   the jury found it to be such.

3       So, upon your conviction under count one, and

4   these are the counts that appear on the calendar, and

5   on the indictment, we renumbered them for the

6   convenience of the jury, I think, in the verdict

7   sheet.  These are back to the original indictment

8   counts.

9       Count number one, Attempted Murder in the Second

10   Degree, it is the judgment and sentence of this Court

11   that you receive a determinate sentence of

12   incarceration of 25 years.  There is a punitive

13   post-release supervision of five years; I'm imposing

14   that.

15       Count number four -- count number five, Reckless

16   Endangerment in the First Degree, which is a D

17   felony, I'm imposing an indeterminate sentence, the

18   minimum of which shall be three and a half years, and

19   the maximum which shall be seven years.  This

20   sentence is to be served concurrently with the

21   sentence imposed on count number one.

22       Count number seven, Criminal Contempt in the First

23   Degree, which is an Class E felony, it's the judgment

24   and sentence of this Court that you receive an

25   indeterminate term of incarceration, the minimum of

Proceedings                                                27

which shall be two years, and the maximum which shall
be four years.   This sentence shall be served
concurrently with the sentence I imposed on counts
one and five.   These sentences are as a second felony
offender.

Count number nine, Assault in the Second Degree,
the judgment and sentence of the Court is that you
receive a determinate sentence of seven years, and a
period of five years post-release supervision.   This
sentence is to be served concurrently with the
sentences imposed under counts one, five, seven.

Count number twelve, Unlawful Imprisonment in the
First Degree, an E felony, and in this group of
sentences I am making them consecutive to the
sentence that I imposed on the counts that I just
sentenced you on.   Why?   Because if there weren't the
acts against Jasmine, if it wasn't the violation of
the order of protection, if it wasn't the remarks
today that indicate that you still are willing to
inflict pain on Jasmine and the mother we wouldn't be
here.   So these are going to be consecutive as a
group to the sentence that I imposed under the first
counts that I've sentenced you on.

So, Unlawful Imprisonment in the First Degree
under count twelve is an E felony, and it is the

1   judgment and sentence of this Court that you receive

2   an indeterminate sentence of incarceration, a minimum

3   of which is two years, maximum of which is four

4   years. This sentence is to be served consecutively

5   to the sentences that I imposed on the initial

6   counts.

7       Count number thirteen, Assault in the Second

8   Degree; it is the judgment and sentence of this Court

9   that you receive a determinate sentence of seven

10  years, plus a period of five years post-release

11  supervision. This sentence is to be concurrent with

12  the sentence imposed under count twelve, and

13  consecutive to the first group of sentences that I

14  imposed.

15      Count number fourteen, Attempted Assault in the

16  Second Degree, an E felony, it is the judgment and

17  sentence of this Court that you receive an

18  indeterminate term of incarceration, the minimum of

19  which is two years, the maximum of which is four

20  years. This is to be concurrent with the sentences

21  under 12 and 13, and consecutive to the sentences as

22  imposed on the first counts.

23      Count number fifteen, Aggravated Criminal

24  Contempt, a D felony, it's the judgment and sentence

25  of the Court that you receive an indeterminate term

1   sentence of incarceration, the minimum of which shall

2   be three and a half years, the maximum shall be seven

3   years.  This sentence is to be concurrent with the

4   sentences imposed under counts twelve, thirteen, and

5   fourteen, and consecutive to the sentences on the

6   first counts.

7       The final count on which you were convicted and

8   sentenced was count number sixteen, Criminal Contempt

9   in the First Degree, an E felony, and it's the

10  judgment and sentence of this Court that you receive

11  an indeterminate term of incarceration, the minimum

12  of which is two years, maximum of which is four

13  years.  This sentence to be served concurrently with

14  the sentences under twelve, thirteen, fourteen and

15  fifteen, and consecutive to the first sentences

16  imposed.

17      The total of the sentences I've imposed are

18  twenty-five years and seven, and that equals, by my

19  count, thirty-two years.  There is a surcharge in the

20  amount of $210 which I'm required to impose.  Those

21  people who love you and support you, if they want to

22  make your life a little more pleasant, they can pay

23  the $210, otherwise every penny that comes to you in

24  the prison, the state will take half of it until this

25  $210 is paid.

# EXHIBIT C

1　April 26, 2004
2　COUNTY COURT : WESTCHESTER COUNTY
3　THE PEOPLE OF THE STATE OF NEW YORK
4　　　　　against
5　WILLIE M. WILLIAMS, Defendant.
6　INDICTMENT NUMBER: 870-03
7　CONTINUATION OF JURY TRIAL
8　BEFORE:　HON. KENNETH H. LANGE,
9　　　　　　County Court Judge
10　APPEARANCES:　Same as previously noted.
11　　　　　　　　******
12　　　　　(Items requested read back to the jury.)
13　　　　　THE COURT:　We are back in open court.　The
14　parties are here.　We have a message from the jury.
15　It has been marked as Court Exhibit Number 7.
16　　　　　"We would like to hear the elements only,
17　attempted murder Count 1, aggravated criminal
18　contempt Count Number 4, assault -- attempted
19　assault, Count 6 and 11, criminal contempt, Count
20　Number 5."
21　　　　　I plan to just repeat the elements only of
22　what I gave to the jury in the final instructions.
23　　　　　Is that satisfactory to the People?
24　　　　　MR. STEIN:　Yes.
25　　　　　THE COURT:　To the defense?

1274

1　　　　　MR. GOODRICH:　Yes, your Honor.
2　　　　　THE COURT:　The second part of it is testimony
3　of Jasmine and Virginia regarding whether Willie
4　was holding a knife while handing the baby out the
5　window.
6　　　　　The consensus of the participants and the
7　court reporter who read through Jasmine's and
8　Virginia's testimony in preparation for the
9　readback this morning is that there was no
10　testimony one way or the other whether he did or
11　did not have a knife in his hand at the time he
12　allegedly held the baby out the window and I would
13　propose to simply say what I have just said to the
14　jury.
15　　　　　Is that satisfactory to the People?
16　　　　　MR. STEIN:　Yes.
17　　　　　MR. GOODRICH:　Judge, I would request that it
18　you not couch it, there is no testimony on that
19　point.　I don't know just in the back of my mind,
20　when you said it, it gives me the implication that
21　it could be read as missing something if you say
22　one way or the other, there is just no testimony on
23　that point.
24　　　　　THE COURT:　Satisfactory to the People?
25　　　　　MR. STEIN:　Yes.

1　　　　　THE COURT:　That's the way I will do it.
2　Thank you for your constructive suggestion.
3　　　　　We will get the jury in.
4　　　　　(Jury enters courtroom.)
5　　　　　THE COURT:　All members of the jury panel are
6　in place.　The parties are here.　We are in open
7　court and we are continuing the jury trial of the
8　People of the State of New York against Willie
9　Williams, Indictment 870-03.
10　　　　　I have a message from the jury foreman which
11　he dated June 26, 2004.　I know it has been quite a
12　while, but okay if I redate?
13　　　　　JUROR:　You could do that, okay.
14　　　　　THE COURT:　It reads as follows.　We marked it
15　as Court Exhibit 7.
16　　　　　"We would like to have the elements only,
17　attempted murder, Count Number 1.　Aggravated
18　criminal contempt, Count Number 4.　Assault and
19　attempted assault, Count 6, Count 11, criminal
20　contempt, Count 5.　Also, testimony of Jasmine and
21　Virginia regarding whether Willie was holding a
22　knife while hanging the baby out the window."
23　　　　　As to the last request about the read back of
24　testimony, there was no testimony on that point.
25　　　　　Now, I'm going to comply with the request with

1276

1　regard to the elements of the crime.　I'm going to
2　give you them in the order in which you have them
3　on your verdict sheet, the ones that you requested.
4　　　　　I will start with Count Number 1.　In order
5　for you to find the Defendant guilty of an attempt
6　to commit the crime of murder in the second degree,
7　under the first count, the People are required to
8　prove from all the evidence in the case, beyond a
9　reasonable doubt both of the following two
10　elements; one, that on or before June 21, 2003, in
11　the County of Westchester, the Defendant Willie
12　Williams intended to commit the crime of murder in
13　the second degree and, two, that the Defendant
14　engaged in conduct which tended to effect the
15　commission of that crime.
16　　　　　I will go next to Count Number 4 which is
17　aggravated criminal contempt.　In order for you to
18　find the Defendant guilty of this crime of
19　aggravated criminal contempt as charged in the
20　fourth count, the People are required to prove from
21　all the evidence in the case beyond a reasonable
22　doubt each of the following four elements.
23　　　　　One, that on or before May 19, 2003 the
24　Westchester County Family Court issued an Order of
25　Protection that was duly served or such order of

# EXHIBIT D



**OFFICE OF THE DISTRICT ATTORNEY**
**WESTCHESTER COUNTY**

WESTCHESTER COUNTY COURTHOUSE
111 Dr. Martin Luther King, Jr. Blvd.
White Plains, New York 10601
(914) 995-2000

**JANET DiFIORE**
DISTRICT ATTORNEY

September 14, 2013

William Williams 04A-3775
Clinton Correctional Facility
P.O. Box 2000-1
Dannemora, New York 12929

    Re:  FOIL Request:  *People v Williams*: 03-870

Dear Mr. Williams:

    We are in receipt of your letter dated August 20, 2013 in which you request a certified copy of the indictment, along with a check.  We do not certify indictments in this office and accordingly we are returning your check herewith.  You may wish to contact the County Clerk's Office in Westchester County to ascertain if they will certify it.

            Very truly yours,

            JANET DiFIORE
            DISTRICT ATTORNEY

            Susan L. Pollet
            Assistant District Attorney
            Records Access Officer

WILLIE WILLIAMS 04-A-3775
P.O.BOX 116
FALLSBERG NY, 12733-0116

9/26/2013

TO: Nancy J. Barry, Cheif court clerk
    111 Dr. Martin Luther King Jr BLVD
    White Plains  NY 10601

RE: To Notify you of my Address change.

Dear Ms. Barry,
     I recently wrote to you requesting acopy of my Indictment,
A complete and accurate copy of of my Indictment with it's cover,
backer and or packets attached to it. My Indictment number is
03-0870. Thank you so very much for your time and assistance in
the matter.,

                              Respectfully

                              Willie Williams

CC; File
WW/ww



SUPREME COURT OF THE STATE OF NEW YORK
RICHARD J. DARONCO
WESTCHESTER COUNTY COURTHOUSE
111 DR. MARTIN LUTHER KING, JR. BOULEVARD
WHITE PLAINS, NEW YORK 10601

DATE: October 17, 2013

Mr. Willie Williams #04A3775
Sullivan Correctional Facility
P.O. Box 116
Fallsburg, NY 12733-0116

We are in receipt of your request for a copy of the Indictment under Case Number 870d-2003, that was received on October 1, 2013, please note the following;

_____ A Request for Judicial Intervention is necessary in order to process your request. Complete and sign the enclosed RJI.

_____ To waive the index number fee of ($210.00) and RJI fee of ($95.00) and to proceed as a Poor Person, **complete** the **notice of motion with dates** and sign the enclosed affidavit. Page **2** **MUST** be **signed** and **notarized**. An affidavit of service to the Westchester County Attorney is required.
**FOR TRANSCRIPTS; PLEASE STATE THE REASON FOR YOUR REQUEST**

_____ For uncontested matrimonial filings; submit the poor person application, RJI, summons and complaint and summons with notice. An affidavit of service to the Westchester County Attorney is required.
**DO NOT SUBMIT THE COMPLETE DIVORCE PACKET**

_____ All court records and files are maintained by the County Clerk, who is by statute: "The Clerk of the Court." Please make your request to: **Westchester County Clerk, 110 Dr. Martin Luther King Jr. Blvd., Room L330, White Plains, NY 10601.**

_____ If you would like a judge to review this matter, put your request in the form of a motion stating what relief you are seeking from the court. When you file, be sure to include an affidavit of service to the District Attorney.

___X___ OTHER: As requested, please see the attached copy of your indictment. The Westchester County Clerk did not charge you for the copy.

The Court will process your request after **all** the necessary forms have been completed and signed. Be sure to include the paperwork previously sent. It is advisable to keep copies of everything for your own records.

**Please note that this office cannot answer procedural questions or provide assistance with the completion of forms.**

*Supreme Court*
*Office of the Calendar Clerk*

Ajm

WILLIE WILLIAMS 04-A-3775
P.O.BOX 116
Fallsberg NY, 12733

10/25/2013

To: Chief court Clerk, Westchester County
    111 Dr. Martin Luther King Jr. BLVD
    White Plains NY, 10601

RE:

Dear Sir/ Madam,
    I just receieved a copy of the Indictement that your office
sent me, (IND # 03-0870). However, there's still no backer por
packet with this Indictment, No foremand or acting foreman's
signature or District Attorney's signature. Is this one the only
INDICTMENT regarding this IND # that you have in your office?
Please be as so kind as to send me a TRUE BILL with all of the
above requested enclosed. Thank you so much for your time and
assistance in ther matter.

                                        Respectfully

                                        Willie Williams

CC: file
WW/ww

PS: I had also requested a copy of my
    Bill Of Particulars?

Willie Williams 04-A-3775
P O BOX 116
Fallsberg NY 12733

11/15/2013

TO: Chief Court Clerk,
    Westchester County, criminal division
    111 Dr  Martin Luther King Jr  BLVD
    White Plians NY 10601

RE  To request certified documents under F.O.I L./CPLR 80.19(f)(2)(3)

Dear Court Clerk  Miss Nancy J. Barry;

     I am writing to your office to request under F.O.I.L. A
certified copy of my Indictment. (# 03- 0270)  This request is
also extended by CPLR 80.19 (f)(2)(3) So if these documents are
obtainable under foil please be as so kind as to forward a bill
for the above requested documents  Also, Please be as so kind as
to enclose any and all PACKETS AND OR BACKERS PERTAINING TO THE
ABOVE MENTIONED AS WELL.  Thank you for your time and assistance
in the matter, and as always I remain,

                                    Respectfully.

CC: U.S. District Court,(KMK)(LMS)

CC;file                             Willie Williams

WW/ww

OFFICE OF THE DISTRICT ATTORNEY
WESTCHESTER COUNTY

WESTCHESTER COUNTY COURTHOUSE
111 Dr. Martin Luther King, Jr. Blvd.
White Plains, New York 10601
(914) 995-3414

ANTHONY A. SCARPINO, JR.
DISTRICT ATTORNEY

May 24, 2017

The Honorable Kenneth M. Karas, U.S.D.J.
The Hon. Charles L. Brieant Jr. Federal Building and United States Courthouse
300 Quarropas St.
White Plains, NY 10601-4150

Re: *Williams v. LeVally*, 12 CV 8164 (KMK)(LMS)

Dear Judge Karas:

Respondent is in receipt of this Court's memo endorsement of Petitioner's letter, wherein the Court has directed respondent to "respond to Petitioner's objections" to Magistrate Judge Lisa M. Smith's Report and Recommendation, issued September 14, 2016.  Document #87, Memo Endorsed Letter.  While respondent *has no objections* to the Report and Recommendation, respondent will obey this Court's directive and provide a response to petitioner's 98 page, handwritten objections, filed November 21, 2016.

Petitioner begins his lengthy tirade with a general contention that any appellate counsel who would raise claims that are both unpreserved and meritless must be constitutionally deficient. Document #77, Objections, at 4-5.  The standard for proving ineffective assistance of appellate counsel is that a petitioner must show that "that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir.1994).  Petitioner fails to meet his burden in that he merely takes issue with the four claims that his appellate counsel raised, making a blanket statement that these issues were weak simply because they were ultimately denied by the court.  He does not specify what other stronger, more substantive issues appellate counsel should have raised instead.  Because of this, petitioner has failed to show that appellate counsel's performance was deficient.

Petitioner then goes point by point through his petition. Pivotally, he fails to present any case law to show that Judge Smith's decision was incorrect.  Indeed, in his first point, petitioner focuses his diatribe on an entirely new line of argument—that it was unlawful for the Assistant District Attorney to present this case to the grand jury before the date that petitioner's felony hearing was scheduled to take place.  Document #77 at 7-29.  Defendant's original claim in his amended habeas petition was that he was without the assistance of counsel during the time between his arraignment, when he asked the court to relieve assigned counsel and he insisted on proceeding *pro se*, and the time of the grand jury presentment.  Document # 48, Application for Habeas Relief, at 6-8, 18-25.  A petitioner cannot raise new claims in his objections to a report and recommendation.  *Davis v. Herbert*, No. 00-CV-6691, 2008 WL 495316, at *1 (S.D.N.Y. Feb. 25, 2008)("[U]pon review of a habeas petitioner's objections to a magistrate judge's report and recommendation, the Court may not consider claims raised for the first time in the

2

petitioner's objections"). Therefore, petitioner's objection in this regard cannot be considered by this Court. In any event, petitioner's argument is meritless. There is nothing improper in an Assistant District Attorney submitting a matter to the grand jury for their determination before a scheduled felony hearing; in fact, it is statutorily authorized. *See* N.Y. Crim. Proc. Law 180.80(2)(a)(a defendant must be released within a certain amount of time pending a felony hearing "unless prior to the application the district attorney files with the court a written certification that an indictment has been voted"). Thus, petitioner's first point of objection is both unreviewable by this Court and also contradicted by statute.

Petitioner's second objection involves his contention that he was improperly denied his right to appear before the grand jury. Document #77 at 32-50. Judge Smith correctly determined that counsel's failure to ensure that a defendant testifies before a grand jury does not amount to ineffectiveness and, therefore, was not an issue that appellate counsel should have raised on appeal. *See Davis v. Mantello*, 42 Fed. Appx. 488, 491, n. 1 (2d Cir. 2002), *cert. denied* 538 U.S. 986 (2003). Because petitioner merely reiterates his original claim, providing no case law that would signal that Judge Smith's decision was improper, his objection to this point falls flat.

Petitioner's third objection centers on his claim that appellate counsel should have raised the issue of trial counsel's alleged ineffectiveness during the jury's requests for read-backs. Document #77 at 52-78. In the first instance, petitioner now attempts to expand his claim regarding trial counsel's alleged deficient performance during the read-backs by stating in his instant objections that "they [the jury] were not giving [sic] the whole testimony, only the bits and pieces that did not conflict." Document #77 at 59. Besides failing to note this in his original amended petition, petitioner has not produced any evidence other than his own self-serving allegation that the court reporter failed to read back all of the requested testimony. Secondly, petitioner provides an excerpt from the transcript showing that there was brief testimony by a witness stating that he possibly was holding a knife while dangling his child out of the window. Document #77 at 70. This completely astonishing admission, dug up by petitioner of his own accord, merely shows that he was guilty of the criminal possession of a weapon charge of which he was acquitted. It is mind-boggling that he asserts this in an effort to prove that his counsel was ineffective for failing to ensure that the jury had this fact when they deliberated. Indeed, counsel's actions inured to his advantage and his claim of ineffectiveness on this point is utterly outlandish.

Petitioner's fourth objection contains new allegations that the District Attorney's Office manufactured a new indictment after it was determined that the charge would not be depraved indifference murder but second degree murder. Document #77 at 79-87. Petitioner's original claim was that the indictment was unsigned by the jury foreman. Respondent has submitted, as documentary proof, a fully executed copy of the indictment. Document #61, Exhibit 2. Additionally, petitioner refers to his previous request for the victim's phone records in an attempt to show that the victim improperly attempted to communicate with him in violation of an order of protection. Judge Smith correctly advised petitioner during a conference that it was inappropriate for the federal court to review records that were not before the state court. Document #72 at 15, n. 4.

3

Finally, petitioner objects to Judge Smith's determination that the evidence was legally sufficient to sustain the assault in the second degree. Document #77 at 88-98. Here, petitioner merely reiterates the arguments put forth in his original petition; thus, no further response from respondent is required.

*[handwritten: pg 43 of Dec wrt]*

*[handwritten: 2/28/11 writ PAGE 18 19]*

*[handwritten: 911 TAPE / transcript PAGE 22 - 24]*

Very truly yours,

ANTHONY A. SCARPINO
DISTRICT ATTORNEY
WESTCHESTER COUNTY

LISA M. DENIG
Assistant District Attorney

CC:    Willie Williams, #04-A-3775
       Upstate Correctional Facility
       P. O. Box 2001
       Malone, New York  12953

## VERIFICATION

STATE OF NEW YORK   )
                    )ss:
COUNTY OF CHEMUNG)

                          04.A.3775
I, WILLIE WILLIAMS , being duly sworn, deposes and says:

I am the Petitioner in this action. I have read, and I am familiar with, the contents of the foregoing AMENDED PETITION FOR HABEAS CORPUS RELIEF, 12-CIV-8164 (KMK) (LMS) and the content thereof is true to my own knowledge, except as to matters therein stated on information and belief and as to those matters I believe them to be true.

Dated: 29 June 2017

Respectfully Submitted,

WILLIE WILLIAMS 04.A.3775
Elmira Corr. Fac.
P.O. Box 500
Elmira, N.Y. 14902.

Sworn to and subscribed before me this

29 day of June , 20 17

_____
Notary Public

Scott E. McMindes
Notary Public State of New York
Chemung County  No. 01MC6332482
Commission Expires Nov 2 2019

AFFIDAVIT OF SERVICE

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF CHEMUNG      )

   I, Willie Williams 04-A-3775, being duly sworn, deposes and
says that:

   1. I am a party to this action, 18 years or older, and an
inmate at Elmira Correctional Facility, P.O. Box 500, Elmira, New
York.

   2. On the 29 day of June, 2017, I served the
folling described paper(s): AMENDED PETITION FOR HABEAS
CORPUS RELIEF, 12-CIV-8164 (KMK)(LMS)
by mailing the paper(s) to the person at the address designated by
him or her for that purpose by depositing the same in a first
class, postpaid, properly addressed wrapper, in an official
depository under the excusive care and custody of the above-mentioned
facility for the United States Postal Office within the State of
New York. The name of the person or names of the persons served
and the address or addresses at which service was made are as
follows:

CHIEF COURT CLERK, U.S.D.C.S.D. of NEW YORK
DANIEL PATRICK MOYNIHAN U.S. COURT HOUSE
500 PEARL STREET
NEW YORK CITY 10007-1312

JOHN JAMES & LISA M. DENIG ESQr
111 DR. MARTIN LUTHER KING JR. BLVD
DISTRICT ATTORNEY'S OFFICE
WHITE PLAINS NEW YORK 10601

Dated: 29 June, 2017
       Chemung County, New York

                                    Respectfully submitted,

                                    _____
                                    WILLIE WILLIAMS
                                    04-A-3775

Sworn to Before me this 29

day of June, 2017.

_____
NOTARY PUBLIC

**Scott E. McMindes**
Notary Public State of New York
Chemung County  No. 01MC6332482
Commission Expires Nov 2 2019