UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLIE M. WILLIAMS,

Petitioner,

-v-

SUPERINTENDENT THOMAS
LEVALLY,

Respondent.

12-CV-8164 (KMK) (LMS)

ORDER

KENNETH M. KARAS, District Judge:

Willie Williams ("Petitioner"), proceeding pro se, filed a petition, and later, an amended petition (the "Amended Petition"), for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his 2004 judgment of conviction in New York state court for attempted murder in the second degree, reckless endangerment in the first degree, two counts of criminal contempt in the first degree, two counts of assault in the second degree, unlawful imprisonment in the first degree, attempted assault in the second degree, and aggravated criminal contempt. (*See* Am. Pet. for Writ of Habeas Corpus ("Am. Pet.") (Dkt. No. 48); *see* also Pet. for Writ of Habeas Corpus ("Pet.") (Dkt. 2).)[1]

The case was referred to Magistrate Judge Lisa Margaret Smith, (*see* Order Referring Case to Magistrate Judge (Dkt. No. 7)), who issued a Report and Recommendation (the "R&R"), recommending that the Court deny the Petition, (*see* Report & Recommendation ("R&R") 15 (Dkt. No. 72)). For the reasons set forth below, the Court adopts the result recommended in the R&R.

---

[1] Pursuant to an August 26, 2015 order by Magistrate Judge Lisa Margaret Smith, Point 1(B)(3) of the Amended Petition was stricken. (*See* Dkt. No. 59.)

I. Discussion

The factual and procedural background of this case is set forth, in part, in the R&R, as well as in a previous R&R and several Orders of the Court. (*See* R&R 1–3; Report & Recommendation 1–14 (Dkt No. 39); Order Adopting Report & Recommendation 1–2 (Dkt. No. 42); Order Denying Motion for Reconsideration 1–2 (Dkt. No. 55).) The Court will not repeat that background here.

The R&R was issued on September 15, 2016, (*see* Dkt. No. 72), and Petitioner's objections were therefore due by October 2, 2016, (*see id.*). On November 3, 2016, Petitioner requested an extension of time in which to submit his objections, (*see* Dkt. No. 75), and the Court granted a 30 day extension, (*see* Dkt. No. 76). On November 21, 2016, Petitioner timely filed his objections to the R&R. (*See* Dkt. No. 77.)

A. Standard of Review

1. Review of a Magistrate Judge's Report & Recommendation

A district court reviewing a report and recommendation addressing a dispositive motion "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), a party may submit objections to the magistrate judge's report and recommendation. The objections must be "specific" and "written," Fed. R. Civ. P. 72(b)(2), and must be made "[w]ithin 14 days after being served with a copy of the recommended disposition," id.; *see also* 28 U.S.C. § 636(b)(1), plus an additional three days when service is made pursuant to Federal Rule of Civil Procedure 5(b)(2)(C), (D), or (F), *see* Fed. R. Civ. P. 6(d), for a total of seventeen days, *see* Fed. R. Civ. P. 6(a)(1).

"A district court evaluating a magistrate judge's report may adopt those portions of the report [and recommendation] to which no 'specific, written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Adams v. N.Y. State Dep't of Educ.*, 855 F. Supp. 2d 205, 206 (S.D.N.Y. 2012), *aff'd sub nom. Hochstadt v. N.Y. State Educ. Dep't*, 547 F. App'x 9 (2d Cir. 2013). However, where a party timely objects to a report and recommendation, as Petitioner has done here, the district court reviews de novo the parts of the report and recommendation to which the party objected. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). "When a [petitioner] simply rehashes the same arguments set forth in [his] original petition, however, such objections do not suffice to invoke de novo review of the [r]eport." *Aponte v. Cunningham*, No. 08-CV-6748, 2011 WL 1432037, at *1 (S.D.N.Y. Apr. 11, 2011) (italics omitted); *see also Hall v. Herbert*, Nos. 02-CV-2299, 02-CV-2300, 2004 WL 287115, at *1 (S.D.N.Y. Feb. 11, 2004) ("[T]o the extent that a party simply reiterates his original arguments, the [c]ourt reviews the report and recommendation only for clear error.").

Finally, pleadings submitted by pro se litigants are held to a less strict standard than those drafted by attorneys. *See Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) ("Even in the formal litigation context, pro se litigants are held to a lesser pleading standard than other parties." (italics omitted)). Because Petitioner is proceeding pro se, the Court construes his pleadings "to raise the strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006) (per curiam) (internal quotation marks omitted).

### 2. Habeas Corpus Review

Petitions for a writ of habeas corpus are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides that "[t]he writ may not issue for any

3

claim adjudicated on the merits by a state court unless the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States,' or was 'based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.'" *Epps v. Poole*, 687 F.3d 46, 50 (2d Cir. 2012) (quoting 28 U.S.C. § 2254(d)(1)–(2)). In this context, "it is the habeas applicant's burden to show that the state court applied [federal law] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam). "[A]n unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (internal quotation marks omitted). Consequently, a federal court must deny a habeas petition in some circumstances even if the court would have reached a conclusion different than the one reached by the state court, because "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102; *see also Cullen v. Pinholster*, 563 U.S. 170, 202–03 (2011) ("Even if the [federal] Court of Appeals might have reached a different conclusion as an initial matter, it was not an unreasonable application of our precedent for the [state court] to conclude that [the petitioner] did not establish prejudice."); *Hawthorne v. Schneiderman*, 695 F.3d 192, 197 (2d Cir. 2012) ("Although we might not have decided the issue in the way that the [New York State]

4

Appellate Division did—and indeed we are troubled by the outcome we are constrained to reach—we . . . . must defer to the determination made by the state court . . . ." (citation omitted)).

Under AEDPA, the factual findings of state courts are presumed to be correct. *See* 28 U.S.C. § 2254(e)(1); *Nelson v. Walker*, 121 F.3d 828, 833 (2d Cir. 1997). A petitioner can rebut this presumption only by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Cotto v. Herbert*, 331 F.3d 217, 233 (2d Cir. 2003) (same). Finally, only federal law claims are cognizable in habeas proceedings. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *see also* 28 U.S.C. § 2254(a) ("The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.").

Moreover, "[b]efore seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citation and internal quotation marks omitted); *see also* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . ."). Accordingly, "the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of

discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin*, 541 U.S. at 29 (internal quotation marks omitted).

There are two components to the exhaustion requirement. *See McCray v. Bennet*, No. 02-CV-839, 2005 WL 3182051, at *7 (S.D.N.Y. Nov. 22, 2005) ("A two-step analysis is used to determine whether a claim has been exhausted . . . ."). "First, the petitioner must have fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts." *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981), *overruled on other grounds by Daye v. Att'y Gen.*, 696 F.2d 186, 195 (2d Cir. 1982) (en banc); *see also Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (same). This requirement is satisfied if the claim is presented in a way that is "likely to alert the court to the claim's federal nature," *Daye*, 696 F.2d at 192, and the state courts are "apprised of both the factual and the legal premises of the claim [the petitioner] asserts in federal court," *Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 1997) (alteration in original) (internal quotation marks omitted).

"Second, having presented his federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all available mechanisms to secure [state] appellate review of the denial of that claim." *Klein*, 667 F.2d at 282; *see also Pettaway v. Brown*, No. 09-CV-3587, 2010 WL 7800939, at *9 (S.D.N.Y. May 3, 2010) (same), *adopted by* 2011 WL 5104623 (S.D.N.Y. Oct. 26, 2011). In New York, "a criminal defendant must first appeal his or her conviction to the Appellate Division, and then must seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal." *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005). If the petitioner fails to exhaust his or her state remedies through this entire appeal process, he or she may still fulfill the exhaustion requirement by collaterally attacking the conviction via available state methods. *See*

6

*Klein*, 667 F.2d at 282–83; *West v. Sheahan*, No. 12-CV-8270, 2014 WL 5088101, at \*3 (S.D.N.Y. Sept. 18, 2014) (report and recommendation); *Torres v. McGrath*, 407 F. Supp. 2d 551, 557 (S.D.N.Y. 2006).

### B. Analysis

Petitioner raises a number of specific objections to the R&R. *(See* Obj. to R&R ("Obj.") (Dkt. No. 77).) The Court will address each in turn.

#### 1. General Ineffective Assistance of Appellate Counsel

Petitioner first broadly contends that his appellate counsel was constitutionally deficient for raising "unpreserved" and "meritless" claims on direct appeal. (Obj. 3–5.) To demonstrate ineffective assistance of appellate counsel, a petitioner must show that (1) his counsel's performance was objectively deficient, and (2) there is a reasonable probability that, but for counsel's errors, the result of the appeal would have been different. *Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001). "[A] petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994). However, Petitioner does not identify any such "significant and obvious issues," nor does he explain how the state court's rejection of certain arguments made them "clearly and significantly weaker." *Id.* Petitioner asserts only that "[c]learly there could have been . . . stronger points raised." (Obj. 4–5.) But, as the R&R correctly noted, *(see* R&R 8), appellate counsel need not press every possible argument to provide effective assistance, and indeed, counsel may be more effective by focusing on only those arguments counsel deems most compelling. *Jones v. Barnes*, 463 U.S. 745, 751 (1983) (emphasizing "the importance of winnowing out weaker arguments on

7

appeal and focusing on one central issue if possible"). The Court therefore rejects Petitioner's general objection regarding ineffective assistance of appellate counsel.

## 2. Preliminary Hearing Under N.Y. Crim. Proc. Law § 180.10

Petitioner next contends that appellate counsel was ineffective for failing to argue that he was denied his right to a preliminary hearing under New York Criminal Procedure Law § 180.10. (Obj. 7–31.) Specifically, Petitioner argues that once he requested a preliminary hearing on the felony complaint and such a hearing was scheduled, the Assistant District Attorney ("A.D.A.") was not permitted to circumvent that hearing by obtaining an indictment. (E.g., Obj. 8–10, 13–17.)

This argument, however, was not raised in either Petitioner's original habeas petition or the Amended Petition. (*See* Pet. 25–6 (Dkt. 2) (citing N.Y. Crim. Proc. Law § 180.10 only in the context of the court's failure to inform Petitioner of his ongoing right to counsel and to obtain a knowing waiver); Am. Pet. 6–7, 22, 24 (mentioning preliminary hearing only to argue that counsel's "[r]efusal [t]o [h]old [a] [p]reliminary [h]earing [w]as [a] [c]onstructive [d]enial [o]f [c]ounsel" pre-indictment, and citing § 180.10 only with respect to the court's failure to ensure Petitioner knowingly waived his right to counsel).) Nor does Petitioner attempt to show that he exhausted this claim in state court. *See Baldwin*, 541 U.S. at 29 (requiring the state courts be given "the opportunity to pass upon and correct alleged violations of its prisoners' federal rights" (internal quotation marks omitted)). Rather, Petitioner is reiterating an argument raised for the first time in his reply to Respondent's opposition to the Amended Petition. (*See* Traverse 8–11 (Dkt. No. 66).) Therefore, as the R&R correctly notes, (*see* R&R 12–13 n.3), the Court need not address this claim. *See Ennis v. Artus*, No. 09-CV-10157, 2011 WL 3585954, at \*19 (S.D.N.Y.

8

Aug. 12, 2011), *adopted by* 2012 WL 3957046 (S.D.N.Y. Sept. 10, 2012) (rejecting two claims because they were first raised in the petitioner's reply brief).

In any event, the claim fails on the merits. Section 180.10 provides a defendant, upon arraignment on a felony complaint, with "a right to a prompt hearing upon the issue of whether there is sufficient evidence to warrant the court in holding him for the action of a grand jury." N.Y. Crim. Proc. Law § 180.10(2). However, as the Practice Commentaries to § 180.10 note:

> Subdivision two provides that the defendant has the right to a prompt hearing, but that "right" is illusory, as the People can (and frequently do) avoid the hearing by presenting the charge to a Grand Jury. Indictment by a Grand Jury terminates proceedings in the local criminal court -- including the "right" to a hearing -- and thus once an indictment has been voted the right to a hearing is moot. If however a hearing was in fact held in violation of defendant's right to counsel, there will be a post-indictment issue as to its effect on evidence at the trial.

*Id.* (citations omitted). To put it differently, "once [the People] pursue[] the path of the preliminary hearing, the defendant becomes entitled to have it conducted" in compliance with § 180.10; however, "the State, by presenting the case to a Grand Jury in the first instance, may bypass the preliminary hearing stage entirely." *People v. Hodge*, 423 N.E.2d 1060, 1063 (N.Y. 1981). And, contrary to Petitioner's assertions, (*see* Obj. 8, 13–14, 26, 29–31), "the filing of an indictment . . . by a Grand Jury is not precluded by the filing of the felony complaint in the local criminal court." *People v. Heredia*, 367 N.Y.S.2d 925, 932 (Dist. Ct. 1975) (citing N.Y. Crim. Proc. Law § 180.80(2)(a)). Indeed, it is only "[i]n the absence of an indictment" that "the right of the accused to a felony hearing continues," and "the [A.D.A.] may not deliberately avoid conducting the hearing." *Id.* at 933–34; *see also id.* at 932 (explaining that "the District Attorney has a statutory obligation to be prepared for and proceed with the felony hearing" under § 180.80(2), but "[t]his does not preclude an interim presentment and indictment" (citing N.Y. Crim. Proc. Law § 190.50(5)(a))).

The R&R therefore correctly concluded that "[t]he People's obtaining of an indictment obviated the need for a preliminary hearing under NYCPL § 18.80." (R&R 13.) Petitioner cites no law suggesting a contrary result merely because a preliminary hearing was scheduled—but not yet held—before the A.D.A. obtained the indictment. (*See* Obj. 7–31.) *See Hodge*, 423 N.E.2d at 1063–64 (describing the right to counsel at the preliminary hearing); *Heredia*, 367 N.Y.S.2d at 934 (holding that, *absent* an indictment, "the District Attorney may not deliberately avoid conducting the hearing" through "a program of delay," and "the court must take the affirmative action that is necessary to assure the accused his right"). Petitioner's claim that his counsel—appellate or otherwise—was ineffective for failing to raise an § 180.10 claim thus fails. (*See* Obj. 17.) *See Aparicio*, 269 F.3d at 95 (requiring a petitioner to prove objectively deficient performance and prejudice).[2]

To the extent that, construing his objection liberally, Petitioner is arguing that his initial counsel was ineffective for refusing to conduct a preliminary hearing, that he received ineffective assistance of counsel between the initial hearing and his arraignment, or that he did not receive counsel at a preliminary hearing, he has merely repeated the same arguments made in the Amended Petition and therefore has not shown that the R&R erred, clearly or otherwise, in its treatment of those arguments. (*See* R&R 13–14.) *See Aponte*, 2011 WL 1432037, at *1

---

[2] Petitioner also claims that the A.D.A. committed "prosecutorial misconduct at a constitutional level" by circumventing the preliminary hearing. This argument also was not raised in the Amended Petition, and the Court need not consider it. *Ennis*, 2011 WL 3585954, at *19. In any event, Petitioner cites no law, constitutional or otherwise, prohibiting the A.D.A.'s conduct, and indeed, it was statutorily authorized. (*See* R&R 12–13 n.3; Traverse Ex. A (June 30, 2003 hearing transcript showing the A.D.A. provided a Certificate of Indictment from June 27, 2003).) *See* N.Y. Crim. Proc. Law § 180.80(2)(a) (requiring a court to release a defendant within a specified amount of time pending a preliminary hearing "unless . . . [p]rior to the application . . . [t]he district attorney files with the court a written certification that an indictment has been voted").

10

(requiring only clear error review "[w]hen a [petitioner] simply rehashes the same arguments set forth in [his] original petition").[3] Therefore, the Court rejects Petitioner's objection regarding his right to a preliminary hearing under § 180.10.

### 3. Grand Jury Notice & Proceedings Under N.Y. Crim. Proc. Law § 190.50

Petitioner argues that "all attorneys involved in the instant matter" were ineffective in failing to argue that he was not provided with notice of, and thereby denied his right to be a witness in, the grand jury, in violation of New York Criminal Procedure Law § 190.50. (*See* Obj. 32–50.) Section 190.50 states that if a defendant

> has been arraigned in a local criminal court upon a currently undisposed of felony complaint charging an offense which is a subject of the prospective or pending grand jury proceeding . . . the district attorney must notify the defendant or his attorney of the prospective or pending grand jury proceeding and accord the defendant a reasonable time to exercise his right to appear as a witness therein.

N.Y. Crim. Proc. Law § 190.50(5)(a). Indictments "obtained . . . in violation of the provisions of paragraph (a) . . . [are] invalid and . . . must be dismissed; provided that a motion based upon such ground must be made" within a prescribed timeframe. *Id.* § 190.50(5)(c).

However, the R&R concluded that counsel's failure to ensure that a defendant testifies before the grand jury does not constitute ineffective assistance, and consequently, appellate counsel cannot be deemed ineffective for failing to raise this argument. (R&R 12.) *See Dickens v. Filion*, 02-CV-3450, 2002 WL 31477701, at *15 (S.D.N.Y. Nov. 6, 2002) (collecting cases) (noting that "there is no federally-cognizable ineffective assistance claim concerning advice

---

[3] In any event, the claim fails on the merits. Petitioner requested to proceed pro se, (*see* Dkt. No. 61 Ex. 1), and, to the extent he was improperly unrepresented, there was no prejudice, because the claim of inability to testify in the grand jury is neutered by the subsequent conviction, *see United States v. Mechanik*, 475 U.S. 66, 73 (1986) (holding that "the petit jury's verdict rendered harmless any conceivable error in" the grand jury). Also, Plaintiff's claim that the indictment was defective because it was unsigned is belied by the record. (*Dee* Dkt. No. 61 Ex. 2.)

regarding the state grand jury process"), *adopted by* 2003 WL 1621702 (S.D.N.Y. Mar. 28,

2003). Petitioner does not cite any contrary law, but instead relies on the same arguments and

statute he did in the Amended Petition. (*Compare* Am. Pet. 8, 24–25 (citing § 190.50) *with* Obj.

32–50 (same).)[4] Moreover, Petitioner does not contest that, because he was convicted after a

jury trial, his ineffective assistance claims relating to grand jury proceedings necessarily fail.

(*See* R&R 11–12.) *See, e.g., United States v. Mechanik*, 475 U.S. 66, 69, 73 (1986) (holding

that, even assuming the trial court "would have been justified in dismissing . . . the indictment on

[the] basis [of an error in the grand jury proceeding] . . . the petit jury's verdict rendered

harmless any conceivable error in the charging decision that might have flowed from the

violation"); *see also Lemons v. Parrott*, No. 01-CIV-9366, 2002 WL 850028, at *6 (S.D.N.Y.

May 2, 2002) (denying petitioner's "ineffective assistance claim" because he was convicted at

trial, and thus "his failure to testify in front of the grand jury did not prejudice his defense").

Because Petitioner identifies no error in the R&R on these points—and, he would be hard-

pressed to, in light of the caselaw, *see People v. Hogan*, 48 N.E.3d 58, 63–64 (N.Y. 2016)

(explaining that "a prospective defendant has no constitutional right to testify before the grand

---

[4] To the extent that Petitioner's claim is "not limited to" his inability to testify before the grand jury, he fails to identify any other right of which he was deprived. (Obj. 33.) Construing his objection liberally, Petitioner may be arguing that the R&R did not address counsel's failure to timely move to dismiss the indictment on § 190.50 grounds. (*Id.*) First, the record belies Petitioner's contention that he, through counsel, did not receive notice of the grand jury proceedings. (*See* Dkt. No. 11 Ex. 1.) However, even assuming that he did not receive notice and that pre-trial counsel provided objectively deficient assistance, it is unclear what additional prejudice occurred separate from the indictment that resulted in a guilty verdict that, as explained above, renders any supposed errors in the grand jury proceedings harmless. *See Saldana v. State of New York*, 850 F.2d 117, 119 (2d Cir. 1988) ("[The petitioner] is not entitled to relief in the federal courts because the State's failure to allow him to testify before the grand jury could not have made any constitutional difference because he suffered no prejudice."). In any event, the state court's determination that Petitioner was not denied effective assistance of appellate counsel on this point was neither contrary to nor an unreasonable application of Supreme Court precedent. *Epps*, 687 F.3d at 50 (explaining when a writ of habeas corpus may issue).

jury," emphasizing that "even when it is due to an attorney error . . . a defense counsel's failure to timely facilitate defendant's intention to testify before the grand jury does not, per se, amount to a denial of effective assistance of counsel," and concluding that a defendant cannot "show prejudice" from failure to testify in the grand jury when a jury found him guilty after trial (citations, alterations, and internal quotation marks omitted))—the Court rejects Petitioner's objection regarding his rights under § 190.50(5).

### 4. Jury Requested Read-Backs Under N.Y. Crim. Proc. Law § 310.30

Petitioner also argues that the state court did not adequately respond to the jury's requests for read-backs of certain trial testimony as required by New York Criminal Procedure Law § 310.30. (*See* Obj. 51–78.) Construing his objection liberally, he argues that: (1) the trial court failed to read back the entirety of the requested testimony of two witnesses, Jasmine and Virginia Gilleo, instead omitting earlier conflicting portions in order to "synchronize[]" their testimony, (*see* Obj. 59–66); and (2) the trial court incorrectly informed the jury that there was no testimony to read back regarding whether Petitioner was holding a knife while he held his child out of the window, (*see* Obj. 67–78).[5] Although Petitioner alleges that these are independent due process violations that denied him the right to a fair trial, (*see, e.g.*, Obj. 74–8), the Court will also construe them liberally as additional ineffective assistance of appellate counsel claims, (Obj. 74).

Petitioner's first argument—that the jury was not given "the whole testimony" of Jasmine and Virginia, but rather "only the bits and pieces that did not conflict," (Obj. 59)—was not raised in the Amended Petition. Although he argued that his substitute trial counsel, Mr. Goodrich, was ineffective because he did not demand "critical testimony be read back" or "object to the court's

---

[5] Additionally, Petitioner asserts that jury requests for read-backs must be responded to within 24 hours, but cites no law establishing this requirement. (Obj. 53–4.) *See* N.Y. Crim. Proc. Law § 310.30 (setting no time limitation).

13

failure to provide the requested read back," the Amended Petition does not suggest that the read-back was actually given but was incomplete or deliberately misleading. (Am. Pet. 16 (citing Trial Tr. 1266).) The Court therefore may not consider this claim, raised for the first time in Petitioner's objections to the R&R. *Davis v. Herbert*, No. 00-CV-6691, 2008 WL 495316, at *1 (S.D.N.Y. Feb. 25, 2008) ("[U]pon review of a habeas petitioner's objections to a magistrate judge's report and recommendation, the Court may not consider claims raised for the first time in the petitioner's objections . . ."). In any event, the claim fails on the merits, because, as the R&R noted, the record shows that the "items requested [were] read back to the jury." (R&R 10 (quoting Trial Tr. 1273.)).[6] Although he cites portions of Jasmine's and Virginia's testimony that he deems inconsistent, Petitioner provides no evidence that the trial court did not read back the entirety of the requested testimony. (Obj. 54–59.) The R&R's conclusion, supported by the record, therefore survives Petitioner's objection that the jury did not receive a requested read-back, and by extension, that appellate counsel was ineffective for failing to raise this argument.[7] To the extent that Petitioner is also accusing the court of "withholding of evidence" or any other impropriety relating to interfering with the witnesses' testimony, (*see* Obj. 58, 66), this allegation was also not raised in the Amended Petition, and in any event, is not supported by any evidence.

---

[6] On April 23, 2004, the jury requested a read-back of the "testimony of mother, Virginia and Jasmine in regards to positioning of Virginia when she closed the door." (Trial Tr. 1264; *see also id.* at 1266). The court noted that this request would "take some searching by the court reporter," (Trial Tr. 1266), and noted that the read-back would be done at 9:30 a.m. the following Monday, "before [the jury] commence[s] the deliberations" again, (*id.* at 1269–70). On Monday, April 26, the transcript begins by noting that the requested items were "read back to the jury." (*Id.* at 1273). No cited portion of the transcript shows otherwise.

[7] The Court declines Petitioner's request to create a "new law/rule" or "an addendum to [§] 310.30" requiring a second stenographer to participate in all jury requested read-backs. (Obj. 60.)

14

Petitioner's second argument—that the jury was erroneously told that there was no testimony about Petitioner holding a knife while dangling his child out of the window—was raised in the Amended Petition. (*See* Am. Pet. 16–17.) The jury requested a read-back of "testimony of Jasmine and Virginia regarding whether [Petitioner] was holding a knife while handing [sic] the baby out the window." (Trial Tr. 1274). After the participants and court reporter agreed "there was no testimony one way or the other whether he did or did not have a knife in his hand at the time," both parties consented to the court telling the jury "there was no testimony on that point." (Trial Tr. 1274–75.)

In response to the Amended Petition's assertion to the contrary, Judge Smith stated that Petitioner "failed to point to any such testimony." (R&R 11.) However, upon review of the transcript, the Court concludes that this finding was incorrect. (*See* Am. Pet. 16; Obj. 69–70.) Specifically, Petitioner noted, both in the Amended Petition and now again in his objection to the R&R, Jasmine's testimony on cross-examination:

> Q: You see him, you say, holding the baby?
> A: Holding her foot, yes, she was outside the window.
> [. . .]
> Q: Do you remember what hand that was?
> A: That he used, his left hand.
> Q: What's in his right hand?
> A: Maybe it was the knife, I don't know. I was too busy worrying about my daughter.

(Trial Tr. 579; *see also* Am. Pet. 16; Obj. 69–70.)[8] And, the Amended Petition cited Jasmine's testimony on direct examination that Petitioner came into the bathroom and "had a knife in his

---

[8] The Court recognizes that this testimony, and some of Jasmine's other testimony on this point cited in the Amended Petition, (*see* Am. Pet. 16), is equivocal about whether the knife was actually in Petitioner's hand. (*See* Trial Tr. 575 ("I don't know exactly what [Petitioner] did with [the knife]. I mean once he grabbed my daughter by her leg, I think that's all I was concerned with."); *id.* 577 ("Q: You don't know what he did with the knife, correct? A: Correct.").)

hand," shortly before he went into the bedroom and held the baby out the window. (*See* Am. Pet. 16 (citing Trial Tr. 455, 468).)

However, even assuming that the trial court erred in failing to read back this testimony, and a concomitant ineffectiveness by trial and appellate counsel for failing to raise this argument, Petitioner does not explain how he was prejudiced by this error. As the R&R noted, this testimony "would have been highly incriminatory." (R&R 11.) Indeed, it is evidence that Petitioner was guilty of the criminal possession of a weapon charge of which he was acquitted. (*See* Trial Tr. 1293.) However, Petitioner now asserts, for the first time, that the jury actually requested a read-back of this testimony because the jurors noticed inconsistencies between Jasmine's and Virginia's testimony regarding the hand in which Petitioner allegedly held the knife, not because they wanted to hear incriminating evidence against him. (*See* Obj. 68–73.) And therefore, Petitioner's argument goes, failure to read back this conflicting testimony "was highly prejudicial in [a] circumstantial case resting solely on eye witness testimony." (Obj. 73.)

The jury's actual read-back request belies Petitioner's suspicions. (*See* Trial Tr. 1274 (jury requesting testimony "regarding whether [Petitioner] was holding a knife," not what hand the knife was in).) And, although Petitioner cites excerpts of testimony that he finds conflicting, (*compare* Trial Tr. 579 (knife "maybe" in right hand) *with* Trial Tr. 937 ("holding the baby out the window by her foot" in right hand) *and* Trial Tr. 994–95 (holding baby out the window "with his right hand")), he does not explain why this particular inconsistency—which hand the baby was in—would have changed the jury's verdict on the other counts he was convicted of, such as attempted murder, when both witnesses testified to the same underlying conduct—holding the baby out of the window. And, Petitioner's assertion that the "jury was leaning towards a not guilty verdict on the top two counts of assault and [] attempted murder," (Obj. 75), is pure

16

speculation. Absent such an explanation of prejudice to Petitioner, and in light of the highly inculpatory nature of this testimony, the R&R did not err in concluding that appellate counsel cannot be deemed ineffective for failing to assert an ineffective assistance of trial counsel argument on these grounds. (R&R 11) *See Mayo*, 13 F.3d at 534 (asking "whether, absent counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different"). The Court therefore rejects Petitioner's § 310.30 objections to the R&R.

### 5. Grand Jury Signatures & Indictment

Petitioner argues that he was actually indicted for attempted depraved indifference murder by the grand jury, but the District Attorney's Office "manufactured" a new, "bogus indictment" for attempted second degree murder, the charge on which he was tried, convicted, and sentenced. (*See* Obj. 79–87.) Because this claim was not raised in the Amended Petition, or even in the original petition, the Court will not address it. (*See* Am. Pet. 8 (arguing only that "unsigned indictment" is void); *see generally* Pet.) *See Davis*, 2008 WL 495316, at *1. And, even if Plaintiff's objection is, liberally construed, a renewed request for a copy of the grand jury minutes, (*see* Obj. 80), the R&R correctly found that the minutes would not support any of the claims raised in the Amended Petition, nor would they "serve as the basis for habeas relief" because Petitioner was convicted after trial, (R&R 15 n.4). *See Mechanik*, 475 U.S. at 73 (concluding that jury verdict "rendered harmless any conceivable error in the charging decision that might have flowed from" an error in the grand jury).

However, construing his objection liberally, Petitioner also contends that the indictment is invalid because it has three signature lines typed ("District Attorney, Foreperson of Grand Jury, and Acting Foreperson of Grand Jury'), but only two actual signatures. (Obj. 84; Dkt. No.

17

61 Ex. 2.) Petitioner cites no authority requiring an acting foreperson to sign the indictment when the foreperson signed it, (*see* Obj. 84), and indeed, this argument appears foreclosed by statute, *see* N.Y. Crim. Proc. Law § 200.50(8) ("An indictment must contain . . . [t]he signature of the foreman *or* acting foreman of the grand jury." (emphasis added)). To the extent Petitioner is reiterating his argument from the Amended Petition that the indictment did not contain the foreman's signature, (Am. Pet. 8), the R&R correctly concluded that the record, containing the signed, original indictment, (Dkt. No. 61 Ex. 2), belies this claim, (R&R 14).[9] And, even assuming these allegations somehow establish a violation of state law, however, they do not show a violation of Petitioner's federal rights. *See Estelle*, 502 U.S. at 68 ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

Petitioner also renews his request for a copy of Jasmine's phone records, which he alleges will show she perjured herself. (Obj. at 85.) However, the R&R correctly noted that these records, which were not before the state court, are not appropriate for review in the context of a federal habeas petition. (R&R 15 n.4.) *See Jackson v. Conway*, 763 F.3d 115, 132 (2d Cir. 2014) ("[W]hen conducting its review under § 2254(d), the federal court is generally confined to the record before the state court that adjudicated the claim.") To the extent Petitioner alleges that the District Attorney withheld evidence, (*see* Obj. 85–6), this claim was not raised in the

---

[9] Petitioner also asserts that "the law says that the original [indictment] has to mirror that of the conformed copy," but cites no such law. (Obj. 84.) To the extent that Petitioner is arguing that his conformed copy was not a real copy because of a discrepancy in the clerk's stamps, he provides no record citations to his copy (or copies) permitting a comparison of said stamps, nor does he explain why different stamps on a conformed copy would render the original indictment void. (Obj. 82–84.) And, needless to say, Petitioner offers no authority suggesting any such ministerial irregularity in the filing of the indictment raises a federal claim. *See Estelle*, 502 U.S. at 67–68 (requiring habeas petition to raise federal claims).

Amended Petition and the Court therefore will not consider it, (*see* Dkt. No. 59 at 5 (striking Point 1(B)(3) of Amended Petition); Am. Pet. 9). The Court therefore rejects Petitioner's objections to the R&R relating to the grand jury and the indictment.

### 6. Sufficiency of the Evidence for Assault in the Second Degree Conviction

Petitioner argues that appellate counsel was ineffective for failing to raise the argument that the evidence was insufficient to sustain a conviction for assault in the second degree under New York Penal Law § 120.05(6), because Jasmine did not suffer "physical injury." (Obj. 88–96.) However, Petitioner merely reiterates the arguments made in the Amended Petition on this point: that the evidence failed to establish the degree and duration of Jasmine's pain, through both testimony and medical records, and that her pain was not "substantial." (*Compare* Obj. 88–96 *with* Am. Pet. 10–15.) Therefore, reviewing for clear error, *see Aponte*, 2011 WL 1432037, at *1, and in light of the "high bar" this claim faces "in federal habeas proceedings," *Coleman v. Johnson,* 132 S. Ct. 2060, 2062 (2012) (per curiam), the Court finds that the R&R correctly concluded that appellate counsel was not ineffective for failing to raise an insufficiency of the evidence claim. (R&R 8–10.)

The Court, having conducted a thorough review of the remainder of the R&R, finds no error, clear or otherwise, and therefore adopts it.

### C. Petitioner's Motion to Amend

Also before the Court is Petitioner's motion to amend his habeas petition ("Motion to Amend"). (Am. Pet. For Writ of Habeas Corpus ("Mot. to Am.") (Dkt. No. 94).) On February 10, 2017, after the R&R and Petitioner's objections were filed, Petitioner filed a letter to the Court asking if it was "to[o] late to bring an exhausted [N.Y. Crim. Proc. Law §] 440.20 issue[]" to this Court's attention for review." (Dkt. No. 83.) Respondent objected to this request. (*See*

Dkt. No. 84.)[10] Petitioner filed another letter to the Court, reiterating his request that his

§ 440.20 motion "be consolidated with already pending papers before this Court, or reviewed

separately." (Dkt. No. 86.) Pursuant to a memo endorsement, the Court granted Petitioner leave

to file a motion to amend the petition by June 14, 2017. (Dkt. No. 87.) Petitioner requested an

extension, (Dkt. No. 89), which the Court granted until July 1, 2017, (Dkt. No. 90). Petitioner

then requested another extension (Dkt. No. 91), which the Court denied, (Dkt. No. 92). Finally,

on July 6, 2017, Petitioner filed a new amended petition, thereby expanding his petition to ten

claims. (Mot. to Am.)[11] Respondent objected, noting that Petitioner was permitted to file a

*motion* to amend, not an amended petition. (Dkt. No. 95). Construing Petitioner's submission as

a motion to amend the petition, Petitioner's Motion is denied for the reasons that follow.

 "A motion to amend a habeas petition is analyzed under the standards set forth in Federal

Rule of Civil Procedure 15(a)," and thus should be granted "when justice so requires." *Thaler v.*

*United States*, 706 F. Supp. 2d 361, 367 (S.D.N.Y. 2009) (internal quotation marks omitted).

However, such motions "should generally be denied in instances of futility." *Id.* (quoting *Burch*

*v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008)). Here, the Motion to Amend

lists 10 points which Petitioner would include in an amended petition. (Mot. to Am. i–ii.)

However, all of these points except point 9—a claim regarding Petitioner's sentence—were

---

[10] Specifically, Respondent objected to Petitioner filing a new motion to amend on the grounds that Petitioner has already filed (1) a motion to stay to include grounds raised in a § 440 motion, (Dkt. No. 35); (2) a motion to amend his petition that was granted in part and denied in part, (Dkt. Nos. 39, 42); (3) a motion for reconsideration of the partial denial to amend, (Dkt. No. 46); (4) a motion for summary judgment on issues not included in Respondent's opposition, (Dkt. No. 28); (5) an amended petition that included claims not sanctioned by the Court, resulting in an Order striking certain claims from the Amended Petition, (Dkt. No. 59); and (6) objections to the first R&R, (Dkt. 40).

[11] Petitioner's motion was technically filed 5 days late. However, the Court deems it timely for purposes of this Order.

20

raised in the Amended Petition and, consequently, disposed of by the R&R and this Order. (*See* Am. Pet.; R&R 13–14 (point 1), 12 (point 2), 10–11 (point 3), 8–10 (point 4), 13–14 (point 5), 12 (point 6), 10–11 (point 7), 12–14 (point 8), 14–15 (point 10); *see* also Mot. to Am. 1 (explaining that all points but point 9 were included in previous petitions).) Thus, amendment on these points would be futile.

However, the Motion to Amend raises one new claim (point 9): whether Petitioner's § 440.20 motion, which claimed that he was "improperly sentenced beyond the statutory guidelines" in light of the "imposition of post release supervision," was improperly denied. (Mot. to Am. ii.)[12] Curiously, Petitioner did not brief this argument, but instead "attached a copy of his § 440.20 argument as Exhibit 'B'" to the Motion to Amend. (Mot. to Am. 1.) Exhibit B contains (1) a copy of Petitioner's letter to the Court claiming that his § 440.20 motion was exhausted and inquiring whether the Court can entertain the motion, and (2) his § 440.20 motion to set aside his sentence ("the § 440.20 motion"), filed in New York state court. (Mot. to Am. Ex. B.)

Section 440.20 permits the state court in which the judgment was entered, "upon motion of the defendant, [to] set aside the [defendant's] sentence upon the ground that it was unauthorized, illegally imposed or otherwise invalid as a matter of law." N.Y. Crim. Pro. Law § 440.20(1). Petitioner's § 440.20 motion contends that his sentence for attempted murder in the

---

[12] The Court notes that this claim does not relate back to either the original habeas petition or the Amended Petition, which alleged only various forms of ineffective assistance of counsel and no claims relating to Petitioner's sentence. (*See* Am. Pet.; Pet.) Because this claim does not relate back to the original petition and Petitioner seeks to amend his petition outside the AEDPA one-year statute of limitations, the Court could deny the Motion to Amend on this ground. *Mayle v. Felix*, 545 U.S. 644, 664 (2005) (finding "relation back" only when original and amended claims "are tied to a common core of operative facts," not merely the "same trial, conviction, or sentence" (internal quotation marks omitted)). However, even assuming the claim relates back to the Amended Petition, it fails on the merits.

second degree for a determinate term of 25 years imprisonment with 5 years of post-release supervision—totaling 30 years—violated the statutory maximum of 25 years. (Mot. to Am. Ex. B ("§ 440.20 Mot.").) *See* N.Y. Penal Law § 70.02(1)(a), (3)(a) (requiring that the determinate sentence "term must be at least five years and must not exceed twenty-five years"). Therefore, the § 440.20 motion argues, the sentence violated Petitioner's "[s]tate and [f]ederal right to [d]ue [p]rocess of law" and his "[c]onstitutional right . . . to be free from unusual punishment." (§ 440.20 Mot.)

On May 12, 2016, the New York County Court for the County of Westchester denied the § 440.20 motion. (Letter from Pet. to Court (Aug. 1, 2017) Ex. B ("County Court Decision") (Dkt. No. 96).) The court concluded that Petitioner's determinate sentence of 25 years was "both legal and authorized by law," because "the period of post-release supervision mandated by Penal Law § 70.45 is 'served' separate and apart from the determinate sentences mandated by Penal Law § 70.03." (*Id.* at 3–4.) The court noted that the cited cases in the § 440.20 motion involved *excessive* determinate sentences, but Petitioner's sentence "was not excessive given the factual circumstances underlying his convictions." (*Id.*) On December 7, 2016, the Second Department denied Petitioner's application for leave to appeal the decision denying the § 440.20 motion. *See People v. Williams*, Ind. No. 03-00870, Decision & Order on Application (App. Div. Dec. 27, 2016), *available at* http://www.courts.state.ny.us/courts/ad2/calendar/webcal/motions/2016/M223441.pdf. The Court of Appeals then dismissed his appeal of that order on the ground of non-appealability on April 6, 2017. ("Order Dismissing Leave" (Dkt. No. 86).)[13]

_____

[13] The Court will assume, for purposes of deciding the Motion to Amend, that this process sufficiently exhausted Petitioner's federal claims. *See Baldwin*, 541 U.S. at 29 (requiring petitioner to "exhaust available state remedies").

Construing his motion liberally, Petitioner argues that his sentence for attempted murder in the second degree violated his federal constitutional rights under the Eighth Amendment and the Due Process Clause. (Mot. to Am.; § 440.20 Mot.) However, "[n]o federal constitutional issue is presented [for habeas corpus review] where . . . the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) (per curiam); *see also Estelle*, 502 U.S. at 67–68 ("It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") Attempted murder in the second degree is a Class B violent felony offense, for which the authorized sentence "must be a determinate sentence of imprisonment." N.Y. Penal Law § 70.02(1)(a), (2)(a). The term of that determinate sentence "must be at least five years and must not exceed twenty-five years." *Id.* § 70.02(3)(a). Additionally, "[w]hen a court imposes a determinate sentence it shall in each case state not only the term of imprisonment, but also an additional period of post-release supervision." *Id.* § 70.45(1). That period of post-release supervision "shall be five years," and "shall commence upon the person's release from imprisonment." *Id.* § 70.45(2), (5). The state court thus correctly concluded that Petitioner's sentence of a 25 year determinate term, with an additional 5 years of post-release supervision, was within the range prescribed by New York law. (County Court Decision 3–4.)

Because Petitioner does not attempt to explain why this conclusion is wrong, and does not argue that his sentence violates his constitutional rights even if it does not violate New York law, he has presented no constitutional claims cognizable on habeas review. *See White*, 969 F.2d at 1383; *Dorsey v. Irvin*, 56 F.3d 425, 427 (2d Cir. 1995) (finding "no due process violation" where the "state sentence is within the range allowed by state law"); *Martinez v. Superintendent of E. Corr. Facility*, 11-CV-4330, 2016 WL 6462123, at *6 (E.D.N.Y. Oct. 31, 2016) (finding

petitioner's "claims that his sentence as a whole and the supervised release component specifically are excessive in violation of his 8th and 14th amendment rights are without merit" because they were "within the range prescribed by state law, and so do[] not present a federal constitutional issue"); *Diaz v. Herbert*, 317 F. Supp. 2d 462, 480 (S.D.N.Y. 2004) (finding no federal due process violation "because the sentences do not violate state law"); *Mayo v. Burge*, 02-CV-10192, 2003 WL 21767767, at *6 (S.D.N.Y. July 30, 2003) ("As petitioner's sentence was within the range prescribed by New York law . . . we again find no basis for federal habeas review." (citation omitted)); *Sheppard v. Filon*, 01-CV-9992, 2002 WL 1313332, at *1 (S.D.N.Y. June 13, 2002) ("Sentencing decisions are not cognizable on habeas corpus review unless the sentence imposed falls outside the range prescribed by state law.").[14] Therefore, amending Petitioner's habeas petition to include this claim would be futile. *Thaler*, 706 F. Supp. at 367.

## II. Conclusion

The Court adopts Judge Smith's R&R as modified herein. Petitioner's writ of habeas corpus, (Dkt. No. 48), is accordingly dismissed with prejudice. The Court also denies Petitioner's Motion to Amend. (Dkt. No. 94.)

As Petitioner has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability shall not be issued, *see* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111–12 (2d Cir. 2000), and the Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the merits would not be

---

[14] Petitioner apparently made an additional argument "that the period of post-release supervision is [itself] unconstitutional" in state court, but the court found it "not properly before" it because it was raised "for the first time in his reply papers," and concluded that "[i]n any event . . . . [it] is without merit." (County Court Decision 4 (citing *People v. Smith*, 863 N.Y.S.2d 612 (App. Div. 2008)).) Petitioner does not argue that either of these conclusions is incorrect.

taken in good faith, *see Coppedge v. United States*, 369 U.S. 438, 445 (1962) ("We consider a defendant's good faith . . . demonstrated when he seeks appellate review of any issue not frivolous."); *Burda Media Inc. v. Blumenberg*, 731 F. Supp. 2d 321, 322–23 (S.D.N.Y. 2010) (citing *Coppedge* and noting that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith).

The Clerk of the Court is respectfully directed to enter judgment in favor of Respondent, close the case, and mail a copy of this Order to Plaintiff.

SO ORDERED.

DATED:     October 16, 2017
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE